## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ICM REGISTRY, LLC,<br>1097 Jupiter Park Lane<br>Suite #3<br>Jupiter, FL 33458<br><br>                    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT<br>OF COMMERCE,<br>1401 Constitution Ave., N.W.<br>Washington, D.C. 20230,<br><br>UNITED STATES DEPARTMENT<br>OF STATE,<br>2201 C Street., N.W.<br>Washington, D.C. 20520,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
## THE FREEDOM OF INFORMATION ACT

Plaintiff, the ICM Registry, LLC ("ICM"), for its complaint against defendants the United

States Departments of Commerce and State, states as follows:

1.    This is an action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, as

amended ("FOIA"), to require the disclosure of agency records, and for other relief, in response

to three FOIA requests. Specifically, ICM seeks an order requiring the defendant United States

Department of State to provide documents responsive to a FOIA request submitted by ICM on

October 18, 2005 (copy attached as Appendix A) as to which the agency has yet to provide <u>any</u>

responsive documents or otherwise respond substantively to ICM's request. ICM also seeks an

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 1

order requiring defendant United States Department of Commerce to provide documents it with-held, and portions of other documents it redacted, when it responded to two FOIA requests ICM submitted on, respectively, October 18, 2005 (copy attached as Appendix B) and December 2, 2005 (copy attached as Appendix C). ICM's administrative appeals to the State Department and to the Commerce Department with respect to each of the FOIA requests are attached as, respec-tively, Appendices D, E and F.

2.      All three FOIA requests seek documents that will shed light on what role the United States government played in the Internet Corporation for Assigned Names and Numbers' ("ICANN") consideration of ICM's proposal to create and operate a new .xxx domain on the global Internet.  Documents released so far reveal that the United States government exerted undue political influence on ICANN's consideration of the .xxx domain application, treating an independent corporation as a client agency of the United States government despite a lack of any legitimate authority to do so.  For this reason, the government's withholding of the documents requested is contrary to law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), as the agency records to which plaintiff seeks access are located in Washington, D.C.

## PARTIES

5.      Plaintiff ICM is a limited liability corporation incorporated in the State of Dela-ware.  ICM is the applicant to ICANN for a new ".xxx" sponsored top-level domain ("sTLD") and has been in the process of negotiating a contract with ICANN for operation of the new .xxx

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 2

sTLD.  ICM is a technology company with no former or current affiliation with the adult entertainment industry.  It conceived the .xxx sTLD as a clearly identifiable area of the Internet that will empower families and help protect children and others from unwanted or inappropriate content, by facilitating meaningful, voluntary self-organization and self-regulation by responsible adult entertainment website operators.  It also proposed the .xxx sTLD to promote freedom of expression as a voluntary alternative to regulatory efforts, and as a way of organizing industry efforts to address the privacy, security and consumer protection concerns of Internet users.

6.    Defendant the United States Department of Commerce ("Commerce" or the "Commerce Department") is an agency of the United States within the meaning of the FOIA, which has possession and control over records described herein that have been and are sought by plaintiff.  The agency is a proper party under the FOIA, 5 U.S.C. §§ 552(a)(4)(B) and 552(f)(1).

7.    Defendant the United States Department of State ("State" or the "State Department") is an agency of the United States within the meaning of the FOIA, which has possession and control over records described herein that have been and are sought by plaintiff.  The agency is a proper party under the FOIA, 5 U.S.C. §§ 552(a)(4)(B) and 552(f)(1).

## BACKGROUND

8.    ICANN is an internationally organized, non-profit corporation serving a variety of functions necessary to operation of the Internet as a global network.  These include Internet Protocol address space allocation, protocol identifier assignment, and management of the domain name system ("DNS") for generic and country-code top level domain names.  It also includes root server system management functions previously performed by ICANN predecessors under U.S. government contracts.  ICANN was conceived and created in order to privatize the

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 3

administration of the DNS, so as to increase competition and international participation in DNS management and development, and to remove those functions from U.S. government control.

9.    ICANN's relationship with the Commerce Department is defined by a Memorandum of Understanding ("MoU") as well as various contracts. Specifically, ICANN signed the MoU with Commerce to transfer management of the DNS from the U.S. government to the global community. Among other things, under the MoU, the Commerce Department provides expertise and advice to ICANN, and ICANN must send Commerce periodic status reports about its performance. The MoU also prohibits ICANN from acting arbitrarily or unjustifiably to injure any person or entity, or from singling out particular parties for disparate treatment.

10.    Despite this contractual relationship between the Commerce Department and ICANN, the Department does not have regulatory authority over ICANN. ICANN was conceived as an independent international organization that is not under the control of the U.S. government, or any national government. It is intended to be free of administrative control and political influence.

11.    In July 2000, ICANN's Board of Directors adopted a policy for introduction of new top-level domains ("TLDs"), calling for submission of proposals to sponsor or operate new TLDs by interested persons or organizations. The application fee for each new TLD application was $50,000.00, which was nonrefundable. Applicants could apply to sponsor or operate either an sTLD (*i.e.*, one having a sponsoring organization which would have responsibility for policy formulation with respect to the TLD) or an unsponsored TLD (*i.e.*, one for which ICANN would have sole policy-formulating responsibility). ICANN required applicants for either sTLDs or unsponsored TLDs to submit detailed applications, and applicants for sTLDs also were required to submit a proposal from its prospective sponsoring organization. In October 2000, ICANN

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 4

announced it had received 47 TLD applications, including applications from ICM for new ".kids"

and ".xxx" TLDs.  On November 16, 2000, ICANN's Board selected 7 new TLDs (.aero, .biz,

.coop, .info, .museum, .name, and .pro), but ICM's proposals were not selected.

12.    Throughout 2001 and 2002, ICANN refined its process for considering new

TLDs.  This included chartering a New TLD Evaluation Process Planning Task Force, extended

public discussions and public fora on new TLD proposals, and issuance of an action plan calling

for a new round of sTLD applications.  In October 2003, ICANN launched a new initiative to

promote adoption of new TLDs, in conjunction with which it announced an expedited process for

a round of new sTLDs to serve specific communities of interest, and on December 15, 2003, it

issued a Request for Proposals ("RFP") to solicit new sTLD applications.  The RFP required

respondents to complete an application and to pay a non-refundable $45,000 fee.  It also set forth

criteria for approving new sTLDs, including requiring each applicant to show the proposed sTLD

would serve a clearly-defined Internet community, that it had a sound business plan, and that it

had a sufficient technical plan and the expertise to ensure stable registry operation.

13.    On March 16, 2004, ICM submitted a new proposal for a .xxx sTLD, in which,

among other things, it noted extensive outreach it had conducted to develop a strategy for identi-

fying an sTLD for the responsible online adult entertainment community that would transcend

geographic and language divides while having high recognition and lasting value for registrants

and users.  The application satisfied all the criteria ICANN had established for new sTLDs.

14.    ICANN opened a public comment period on the new TLD applications, including

the .xxx sTLD, and twice extended the period to handle the volume of commentary.  Beginning

summer of 2004 and throughout the ensuing months, ICM's proposal went through an extensive

vetting process that included multiple meetings by ICANN, its Board, and its Government

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 5

Advisory Committee ("GAC"), as well as extensive review by independent evaluation teams. In April 2005, in response to inquiries from ICANN's staff regarding ICM's willingness to address the ICANN Board directly, ICM representatives, including outside experts on legal and industry issues, met with the Board at ICANN's meeting in Argentina to discuss the .xxx proposal. During the meeting, ICM answered in full all questions posed to it.

15.    On June 1, 2005, the ICANN Board voted that ICM's .xxx application satisfied all eligibility criteria for new sTLDs. Upon approval, ICANN's Board authorized its staff to move forward to technical and contractual negotiations with ICM, and on June 12, 2005, ICM trans-mitted to ICANN a draft Registry Agreement, which it based on agreements ICANN previously approved for other domains. During the latter half of July 2005, ICM and ICANN's staff resolved all open issues in the agreement for operation of the .xxx sTLD, and ICANN's counsel approved the final text August 1, 2005. Accordingly, on August 9, 2005, ICANN issued its agenda for its monthly Board meeting to be held August 16, 2005, during which ICANN's Board was to review and agree to the final .xxx sTLD agreement.

16.    The impending approval of ICM's contract to operate the .xxx sTLD was derailed shortly before the final approval scheduled for August 16, 2005. Although the comments filed in ICANN's evaluation period regarding ICM's .xxx sTLD proposal were overwhelmingly favor-able, a negative lobbying campaign was initiated by a few U.S.-based activist groups in response to ICANN's June 1, 2005 vote in support of the ICM application. One group provided a website to allow those so inclined to fill out and transmit to ICANN and the Commerce Department a form email stating:

<u>Stop the Establishment of the .xxx Domain</u>

> I oppose the establishment of the .xxx domain. I do not want to give pornographers more opportunities to distribute smut on the Internet. By establishing this new .xxx domain, you would be giving false hope to parents who want to protect their families from pornography. You would also be lending legitimacy to the hardcore pornography industry. Please stop this effort now.

*See* www.frc.org/get.cfm?i=AL05F04&track=0. It appears this website and others like it resulted in mass transmission of identical emails opposing the .xxx sTLD. *See also* www.conservativepetitions.com/petitions.php?id=306.

17.    On August 11, 2005, just days before ICANN was to approve the agreement with ICM to operate the .xxx sTLD, Michael D. Gallagher, who was then Commerce's Assistant Secretary for Communications and Information, sent a letter to Dr. Vinton Cerf, a member of ICANN's Board of Directors, to "urge the Board to ensure" that purported "concerns of the Internet community" were "adequately heard and resolved before the Board takes action on" ICM's application. App. E, Ex. 21. Although the letter did not take issue with any specific step ICANN took in evaluating proposals for new sTLDs generally or .xxx specifically, nor did it address the fact that whether to approve an adult domain had been before ICANN for five years and was actively and publicly debated for the 18 months before approval, the letter urged the Board to delay finalizing the .xxx sTLD.

18.    On August 12, 2005, GAC Chairman Mohamed Sharil Tarmizi sent a letter to the ICANN Board regarding the .xxx sTLD (copy attached as Appendix G), in which, after months of discussion on the new domain had passed with multiple opportunities for GAC to express concerns, he requested "further debate" and "time for additional governmental and public policy concerns to be expressed before reaching a final decision on this TLD." The letter claimed additional time was necessary even though the .xxx sTLD already had been discussed "during the

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 7

session between the GAC and the Board in Luxembourg" and "in other GAC sessions." In fact, according to the minutes of the ICANN Board meetings while the .xxx sTLD application was pending, Chairman Tarmizi participated in virtually all of the Board meetings at which the sTLD was discussed. Nevertheless, the Chairman requested additional time even though he admitted that whatever concern may have existed was "not necessarily well articulated" at prior meetings.

19. In the wake of these letters, ICANN did not approve the contract to operate the .xxx sTLD at the August 16, 2005 meeting. ICANN's Board held eight meetings in the nine months that followed, during which approval of the .xxx sTLD agreement initially appeared on the agendas but was deleted before the meeting, and/or in which the Board discussed but failed to approve the contract. On May 10, 2006, ICANN's Board finally brought up the .xxx sTLD agreement for action, but a 9-5 majority of the Board voted against approving the contract.

## FACTS

20. On October 18, 2005, ICM submitted requests under the FOIA to the Commerce Department (and to all its bureaus and components, including the National Telecommunications and Information Administration ("NTIA")) and to the State Department, both of which asked the agencies to provide ICM with copies of the following records:

> All records, correspondence, memoranda, transcripts, notes, documents, reports, emails or audiovisual or other materials consisting of or reflecting, representing, recording or otherwise disclosing communications, written or oral, between March 1, 2005 and the present, regarding approval by [ICANN], and/or by its Board of Directors, of the new ".xxx" sponsored top-level domain ("sTLD"), and/or ICANN's or its Board's approval of ICM Registry's contract to operate the .xxx sTLD [other than] documents submitted to the agency by the general public as part of any mass mailing campaign(s) or similarly duplicative emails/documents.

> All records, correspondence, memoranda, transcripts, notes, documents, reports, emails or audiovisual or other materials consisting of or reflecting, representing, recording or otherwise disclosing

communications, written or oral, between March 1, 2005 and the
present, between any personnel at the Department of Commerce, or
any Bureau or other component thereof, and the ICANN Board of
Directors and its staff, [the GAC], any GAC member country, or
any individuals or agency in a GAC member country, regarding the
.xxx sTLD.

*See* Apps. A & B. ICM also asked that it receive, if any of the foregoing information was with-

held, copies of all non-exempt, reasonably segregable portions of such material, as well as a

detailed statement of the statutory basis and reasons for each instance of withholding, and an

index or similar statement of the nature of any withheld materials. The Commerce Department

designated the FOIA request it received from ICM as CRRIF No. 06-068 (hereafter "DoC

Request 06-608"), while ICM's request to the State Department was designated as Request

200504606 (hereafter "State Request 04606").

 21. On December 2, 2005, ICM submitted a second FOIA request asking that the

Department of Commerce and any bureau or component thereof, including but not limited to

NTIA, provide ICM with copies of records "pertaining to Deputy Assistant Secretary for Com-

munications and Information John Kneuer's plans to attend, and/or his participation in," the

ICANN meeting held November 30 through December 4, 2005, in Vancouver, Canada. *See* App.

C. As with the earlier requests, ICM asked for all non-exempt reasonably segregable portions of

any records withheld, and a detailed justification and index for the withholding. The Commerce

Department designated this request CRRIF No. 06-127 (hereafter "DoC Request 06-127").

 22. On December 13, 2005, the State Department sent a letter stating it would "begin

processing [the FOIA] request." App. D, Ex. 2. However, notwithstanding that it previously had

received a fax providing evidence that State possessed records responsive to the request, it to

date has never produced any records or stated a refusal to do so, App. D, Ex. 6, and in fact

dismissed an administrative appeal by letter (copy attached as Appendix H) on grounds that "no specific material has been denied."

23.     With respect to Commerce, NTIA initially responded to DoC Request 06-608 by letter of November 18, 2004, which transmitted approximately 1,600 pages of documents and claimed an exemption to withhold "certain documents in whole or in part under 5 U.S.C. § 552(b)(5) as predecisional or privileged." App. E, Ex. 2.  Of the 1,600 pages, 120 contained redactions obscuring parts of the document with a notation to Section 552(b)(5), and 98 consisted solely of pages that were blank except for a reference to Section 552(b)(5), indicating that records consisting of one or more pages were withheld in full.  This necessitated an administrative appeal by ICM (App. E).  Copies of the redacted and/or withheld documents (with page numbers added for ease of reference after receipt by ICM) are attached as Exhibit 3 to Appendix E.

24.     Other than the statement in its FOIA response and handwritten notations on the documents, NTIA provided no explanation of the statutory basis and reasons for redacting/withholding the documents, nor did it provide any index or other statement indicating the nature of the materials withheld.  In virtually all cases of redaction, it is impossible to determine from context the nature of the material withheld.  In cases where a document was withheld in full, it is not possible to determine its nature or the specific reasons that might have lead to its nondisclosure.

25.     On December 19 and 21, 2005, ICM received from NTIA two supplemental FOIA responses to DoC Request 06-068 (copies attached as Appendix I), to provide additional records responsive to the request as to which NTIA claimed coordination with other agencies was necessary before they could be released. As with the initial response, the supplemental responses included documents with notations to Section 552(b)(5) that indicate records that were redacted and/or withheld in full.

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 10

26.    ICM filed an administrative appeal with Commerce (App. E) of NTIA's November 18 initial response to DoC Request No. 06-068 (and later incorporated into the appeal NTIA's supplemental FOIA responses as well). In the appeal, ICM noted the records released to that point offered key insight into the nature of activities that took place within DoC after the ICANN Board announced it had approved the proposal for a sponsored .xxx domain. The records suggested that the Commerce Department immediately focused on political reactions to ICANN's announcement – not on any regulatory activity – and it confirmed that while in the agency's view it lacked any official decisional role in approving new domain names, it nevertheless decided to intervene in the ICANN process. ICM noted that the records further indicated the United States government consulted with foreign representatives in an attempt to solicit foreign intervention to achieve Commerce's domestic political goals.

27.    ICM accordingly disputed on both procedural and substantive grounds NTIA's redaction and withholding of records responsive to DoC Request 06-068 under FOIA Exemption 5, which exempts from disclosure records that are "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." ICM first noted that, because NTIA failed to provide any detailed explanation of how the records it redacted and withheld satisfy Exemption 5, or any insight into the nature of those documents, it is impossible to assess the validity of its claims of exemption. Next, ICM pointed out that NTIA's invocation of Exemption 5 was impermissible because it applies only to records that relate to the creation of governmental decisions and policies, yet NTIA failed to indicate to what agency action the redacted/withheld records pertain, nor is there any plausible governmental "decision" that would suffice.

28.     In this regard, ICM cited records in the released material reflecting that it was not evident <u>any</u> policy decision was discussed within NTIA, and in fact, that some records reflect the <u>absence</u> of a legitimate U.S. government role in ICANN's processes.  For example, this fact was underscored in an email that explained:

> The relationship between DoC and ICANN is defined by two separate agreements and is not one of regulator and regulated.  One agreement is a joint partnership agreement in the form of [an MoU] which outlines a transition to private sector-led technical management of the Internet Domain Name System.  The second agreement is the IANA functions contract which includes performance of the administrative functions associated with root management.  Under the terms of the MOU, DoC reviews ICANN's performance to ensure the completion of tasks set forth by the MOU.  *DoC does not exercise oversight in the traditional context of regulation and plays no role in the internal governance or day-to-day operations of the organization.*

App. E, at Ex. 5 (email from M. Attwell to C. Handley, *et al.*, June 16, 2005) (emphasis added).

29.     Other records indicated that, while Assistant Secretary Gallagher's letter claimed "other countries have significant reservations" about the .xxx proposal, *see* App. E, Ex. 21, NTIA actively orchestrated a GAC reaction to the ICANN Board decision on .xxx.  For example, one email from August 16, 2005, written by GAC Chairman Mohamed Sharil Tarmizi and forwarded by NTIA staff contains the following discussion

> I am just wondering if you could share with me how far the USG is going to take this issue.  For example, if the Board decides to go ahead in October or November before the Vancouver meeting, what would be USG's reaction?
>
> Is the concern over the content side or the process/procedure side?  For example, would governments (and I do not mean just the USG) want to go down the path of "auditing" the contract and make sure that the contract has followed the appropriate process and procedures?
>
> You can well imagine that there are those on the Board not very happy with this.  I need to know what the acceptable future course of action might be so that we can do some strategizing.

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 12

App. E at Ex. 25 (email from F. Alexander to C. Ensslin, *et al.*, June 16, 2005.

30.    In view of these statements and similar material cited in the ICM administrative appeal, ICM challenged that it was incumbent upon the Commerce Department to provide clarification regarding the U.S. role in the ICANN process, as Commerce's actions with respect to .xxx clearly raised questions whether the U.S. government exerts regulatory control over the DNS, thus contradicting its official position that the domain name system is a private system not under control of any government. As one document released by NTIA noted:

> Because ICANN's role is dependent upon its contract with Commerce, the Department maintains the ultimate control of the IANA. This gives the U.S. the ability to implement any decision made by the international community regarding the internet. For example, if the international community decides to develop an .XXX domain [*sic*] for adult material, it will not go on the Top Level Domain (TLD) registry if the U.S. does not wish for that to happen.

App. E, Ex. 26 (United States Control of the Domain Name System, attached to email from M. Attwell to R. Layton, August 5, 2005). As ICM's administrative appeal demonstrated, the only way for NTIA to claim predecisional action of any sort sufficient to satisfy FOIA Exemption 5 would be if its position rests on DoC intentions to take action with respect to the .xxx sTLD or ICANN approval processes. If that is the case, the agency must declare as much and identify the action to be taken, or at the very least describe the nature of action under deliberation. ICM also pointed out that, to the extent records the Commerce Department redacted or withheld were disclosed to persons outside the agency, such action waives any claim of Exemption 5 statute. ICM also reiterated many of these points when it expanded its administrative appeal per letters exchanged with Commerce (copies attached as Appendices J and K), to encompass NTIA's supplements to its original response to DoC Request 06-168. *See also* App. F.

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 13

31.    Notwithstanding that FOIA Section 552(a)(6)(A)(ii) provides a twenty-working-day deadline for agencies to decide administrative appeals of their decisions on FOIA requests, the Commerce Department has not rendered a decision on ICM's appeal with respect to DoC Request 06-068.    Counsel for ICM and Commerce exchanged letters discussing both the substance and tardiness of a decision on appeal (Apps. J and K), and the parties maintained phone contact on the case (though Commerce counsel's updates have become less frequent, while delays in telephonic responsiveness have increased, as the matter has dragged on).

32.    A similar pattern played out with respect to DoC Request 06-127, which involved records relating to John Kneuer's trip to the ICANN's Board meeting in Vancouver.    NITA responded to that request by letter of January 19, 2006 (copy attached as Appendix L), by which it transmitted approximately 250 pages of records and claimed an exemption to withhold portions "in whole or in part under ... 5 U.S.C. § 552(b)(5) as ... contain[ing] predecisional, deliberative process, and/or attorney client privileged information."    Of these, many contained redactions obscuring parts of the document with a notation to Section 552(b)(5), and/or consisted solely of pages that were blank save for a reference to Section 552(b)(5) that indicated records consisting of one or more pages were withheld in full.    ICM filed an administrative appeal of the redactions and withholdings (App. F), on essentially the same grounds cited in its prior administrative appeal.    As with the prior administrative appeal of DoC Request 06-068, ICM's administrative appeal of DoC Request 06-127 has never been resolved, though the statutory deadline for doing so has long since passed.

33.    The records that ICM seeks are critical to ongoing ICANN activity directly affecting ICM as to which it requires the records to protect its legal interests.    Specifically, ICANN preliminarily approved ICM's application for the new .xxx domain on June 1, 2005, but

since then has rejected the contract for operation thereof, as part of a decision-making process that has not yet reached finality, because ICANN's decision remains subject to reconsideration. ICM is filing a reconsideration request concurrently with the instant Complaint. In it, ICM urges reconsideration on grounds of, among other things, the impropriety of U.S. government influence over ICANN's decision-making process relating to the .xxx domain. This assertion rests heavily on documents ICM received from the Commerce Department in partial satisfaction of ICM's FOIA requests. Accordingly, access to the records that the Commerce Department has unlawfully redacted and withheld, and as to which the State Department has failed to grant or deny access, are vital to ICM supporting its case for reconsideration before ICANN.

34.    Access to the records is vital in that, ICM argues, reconsideration is required because members of ICANN's Board were either unaware of inappropriate involvement of the United States government as documented in materials provided to ICANN, or they failed to appreciate the significance of that involvement. Intrusion into ICANN's processes by the U.S. government included a letter in response to conservative public interest groups by from Michael D. Gallagher, then the Commerce Department's Assistant Secretary for Communications and Information, to Dr. Vinton Cerf, a member of ICANN's Board of Directors, urging ICANN to delay a scheduled vote on .xxx approval. Thereafter, the U.S. government began a concerted campaign to persuade foreign governments to write to ICANN to criticize or seek delay of the .xxx domain's approval. The reconsideration request asserts that records ICM has received thus far indicate beyond a doubt that various parts of the U.S. government were stating that "if the international community decides to develop a .xxx domain ... it will not go on the Top Level Domain (TLD) registry if the U.S. does not wish for that to happen."

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 15

35.    Prompt judicial resolution will be necessary to ensure that agency records that support ICM's showing of improper and misleading U.S. involvement in the ICANN domain approval process deprived ICM of its legal rights.  Both the Commerce and State Departments have failed to abide by FOIA requirements regarding the time in which decisions on records requests must be rendered and the grounds on which access may be denied.  To date, the State Department has not taken _any_ action on the FOIA request ICM filed with it, despite an obligation under 5 U.S.C. § 552552(a)(6)(A)(i) to comply with or otherwise respond to the request within twenty working days, with at most one ten-working-day extension of time where "unusual circumstances" (which are not present here) so warrant.  The Commerce Department has released some records to ICM responsive to its FOIA requests, but redacted information from many documents and withheld others in full under "Exemption 5" to the FOIA, 5 U.S.C. § 552(b)(5), which applies only to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  ICM has challenged that determination in an administrative appeal process commenced December 2, 2005 before the Commerce Department, but the agency has allowed the appeal to languish for six months notwithstanding its obligation under 5 U.S.C. §552(a)(6)(A)(ii) to decide such matters within twenty working days, with at most one ten-working-day extension in "unusual circumstances" (which are not present here).

### FIRST CLAIM FOR RELIEF

36.    Plaintiff restates and reincorporates above paragraphs 1 through 35 as if fully set forth herein.

37.    ICM filed State Request 04606 with the State Department under the FOIA on October 18, 2005, seeking access to records relating to U.S. government contacts regarding the

.xxx sTLD with ICANN, its Board of Directors and the staff thereof, ICANN's GAC, any GAC member country, or any individuals or agency in a GAC member country.

38.    Though 5 U.S.C. § 552(a)(6)(A)(i) requires the State Department to issue a deter-mination on ICM's FOIA request within twenty working days after receipt, with at most one ten-working-day extension under 5 U.S.C. § 552(a)(6)(B), the State Department has not yet made any determination on whether or how it will comply with ICM's request.

39.    ICM has a statutory right to the agency records it requested of the State Depart-ment under the FOIA, and there is no legal basis for the defendant State Department to withhold the records.

40.    Under the doctrine of constructive exhaustion, if the State Department has not responded within the statutory time limits, ICM may bring suit under 5 U.S.C. § 552(a)(6)(C).

41.    The State Department's failure to act on ICM's FOIA request violates the statu-tory obligation to make agency records available under 5 U.S.C. § 552(a)(6).

42.    The State Department failure to act on ICM's FOIA request violates the statutory time limits set forth in 5 U.S.C. § 552(a)(6) for responding to ICM's FOIA request.

43.    As a result of the actions complained of herein, ICM was denied access to records which it was entitled to review in violation of the FOIA.

### SECOND CLAIM FOR RELIEF

44.    Plaintiff restates and reincorporates above paragraphs 1 through 35 as if fully set forth herein.

45.    ICM filed DoC Request 06-068 with the Commerce Department under the FOIA on October 18, 2005, seeking access to records relating to U.S. government contacts regarding

the .xxx sTLD with ICANN, its Board of Directors and the staff thereof, ICANN's GAC, any GAC member country, or any individuals or agency in a GAC member country.

46.    The Commerce Department provided some agency records sought in ICM's FOIA request but failed to fully comply with it in that the Commerce Department redacted information from the records it produced and withheld other records in full.

47.    ICM has a statutory right to the agency documents requested under the FOIA, and there is no legal basis for the defendant Commerce Department's redaction of records it disclosed or its withholding of records it has refused to disclose.

48.    The Commerce Department's invocation of 5 U.S.C. § 552(b)(5), *i.e.*, FOIA Exemption 5, is unlawful with respect to the documents it has redacted and withheld.

49.    Though 5 U.S.C. § 552(a)(6)(A)(ii) specifies that the Commerce Department must resolve administrative appeals of FOIA actions within twenty working days, with at most one ten-working-day extension under 5 U.S.C. § 552(a)(6)(B), the Commerce Department has to date not acted upon ICM's administrative appeal of FOIA action filed December 2, 2005, as supplemented January 3, 2006.

50.    Under the doctrine of constructive exhaustion, if the Commerce Department has not responded within statutory time limits, ICM may bring suit under 5 U.S.C. § 552(a)(6)(C).

51.    The Commerce Department's failure to act on ICM's administrative appeal has resulted in a violation of the statutory obligation to make agency records available under 5 U.S.C. § 552(a)(6) with respect to the records the Commerce Department redacted and/or withheld.

52.    The Commerce Department's failure to act on ICM's administrative appeal of FOIA action violates statutory time limits set forth in 5 U.S.C. § 552(a)(6)(A)(ii) for responding to ICM's FOIA request.

53.    As a result of the actions complained of herein, ICM was denied access to records which it was entitled to review in violation of the FOIA.

### THIRD CLAIM FOR RELIEF

54.    Plaintiff restates and reincorporates above paragraphs 1 through 35 as if fully set forth herein.

55.    ICM filed DoC Request 06-127 with the Commerce Department under the FOIA on December 2, 2005, seeking access to records relating to NTIA's Deputy Assistant Secretary for Communications and Information's plans to attend, and/or participation in, ICANN meetings held November 30 through December 4, 2005, in Vancouver, Canada.

56.    The Commerce Department provided some agency records sought in ICM's FOIA request but failed to fully comply with it in that the Commerce Department redacted information from the records it produced and withheld other records in full.

57.    ICM has a statutory right to the agency documents requested under the FOIA, and there is no legal basis for the defendant Commerce Department's redaction of records it disclosed or its withholding of records it has refused to disclose.

58.    The Commerce Department's invocation of 5 U.S.C. § 552(b)(5), *i.e.*, FOIA Exemption 5, is unlawful with respect to the documents it has redacted and withheld.

59.    Though 5 U.S.C. § 552(a)(6)(A)(ii) specifies that the Commerce Department must resolve administrative appeals of FOIA actions within twenty working days, with at most one ten-working-day extension under 5 U.S.C. § 552(a)(6)(B), the Commerce Department has to date not acted upon ICM's administrative appeal of FOIA action filed February 21, 2006.

60.    Under the doctrine of constructive exhaustion, if the Commerce Department has not responded within statutory time limits, ICM may bring suit under 5 U.S.C. § 552(a)(6)(C).

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 19

61.    The Commerce Department failure to act on ICM's administrative appeal has resulted in a violation of the statutory obligation to make agency records available under 5 U.S.C. § 552(a)(6) with respect to the records the Commerce Department redacted and/or withheld.

62.    The Commerce Department's failure to act on ICM's administrative appeal of FOIA action violates statutory time limits set forth in 5 U.S.C. § 552(a)(6)(A)(ii) for responding to ICM's FOIA request.

63.    As a result of the actions complained of herein, ICM was denied access to records which it was entitled to review in violation of the FOIA.

## **RELIEF**

WHEREFORE, Plaintiff prays for an order expediting proceedings on this Complaint and for judgment:

1.    Declaring that the respective failures to disclose the records requested by plaintiff by the defendants United States Department of Commerce and United States Department of State is unlawful;

2.    Enjoining the agencies from withholding the requested records;

3.    Ordering the agencies to make the requested records available forthwith to plaintiff;

4.    Awarding plaintiff costs and reasonable attorneys' fees in this action; and

5.    Granting such other and further relief as is just and proper.

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 20

Dated this 19th day of May, 2006.

Respectfully submitted,

DAVIS WRIGHT TREMAINE L.L.P.

Robert Corn-Revere – Bar No. 375415
Ronald G. London – Bar No. 456284
Amber L. Husbands – Bar No. 481565
Davis Wright Tremaine LLP
1500 K Street, N.W., Suite 450
Washington, D.C.  20005
(202) 508-6600

ATTORNEYS FOR PLAINTIFF

Address of Plaintiff:

ICM Registry, LLC
1097 Jupiter Park Lane
Suite #3
Jupiter, FL  33458

COMPLAINT FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT - 21