# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ICM REGISTRY, LLC, ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. 06-0949 (JR) |
| ) | |
| **v.** ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| COMMERCE and ) | |
| UNITED STATES DEPARTMENT OF ) | |
| STATE, ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff brings this suit pursuant to the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552. Defendant, United States Department of Commerce, by and through counsel, and pursuant to Rule 12(b)(1) or, alternatively pursuant to Rule 12(b)(6), hereby respectfully moves to dismiss a portion of plaintiff's Complaint because plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by FOIA. In support of this motion, defendant respectfully refers the court to the attached declaration of Andrew W. McCready, Senior Counsel, Office of Assistant General Counsel for Administration, United States Department of Commerce (Exhibit A attached hereto)

Further, Defendants, United States Department of Commerce and United States Department of State, pursuant to Fed. R. Civ. P. 56, respectfully move this Court for an order granting summary judgment with respect to the remainder of the Complaint on the grounds that there are no material facts in dispute and that Defendants are entitled to judgment as a matter of law. In support of this motion, Defendants respectfully refer the Court to the attached Statement

of Material Facts Not in Genuine Dispute; the attached Memorandum of Points and Authorities;

and the attached declarations of Kathy Smith, Chief Counsel, National Telecommunications

Information Administration, United States Department of Commerce (Exhibit B attached hereto),

and Margaret P. Grafeld, Information and Privacy Coordinator and Director of Office of

Information Programs and Services, United States Department of State (Exhibit C attached

hereto), as well as a proposed Order.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____

MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ICM REGISTRY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 06-0949 (JR)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF COMMERCE and** | ) | |
| **UNITED STATES DEPARTMENT OF STATE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to LCvR 7.1(h), Defendants respectfully submit this statement of material facts as to which there is no genuine dispute. The attached declarations of: (1) Andrew W. McCready, Senior Counsel, Office of Assistant General Counsel, United States Department of Commerce ("McCready Dec.") (Exhibit A attached hereto); (2) Kathy Smith, Chief Counsel, National Telecommunications Information Administration, United States Department of Commerce ("Smith Dec.") (Exhibit B attached hereto); and (3) Margaret P. Grafeld, Information and Privacy Coordinator and Director of Office of Information Programs and Services, United States Department of State ("Grafeld Dec.") (Exhibit C attached hereto) support this statement.

I. Department of Commerce - Freedom of Information Act Request CRRIF No. 06-127

1. By letter dated December 2, 2005, plaintiff filed a FOIA request with the Department of Commerce ("Commerce"). This request was assigned Department of Commerce tracking number CRRIF 06-127. McCready Dec. ¶ 4 and Exhibit 1.

2.  By letter dated January 19, 2006, National Telecommunications Information Administration ("NTIA") responded to this FOIA request by providing certain information requested, and denying the remaining information based on exemptions under 5 U.S.C. § 552(b)(2), (b)(5), and (b)(6) of FOIA. McCready Dec. ¶5 and Exhibit 2.  The letter informed plaintiff that an appeal must be received by the Assistant General Counsel for Administration within 30 calendar days of the date of the letter.

3.  By letter dated February 21, 2006, plaintiff appealed the initial determination regarding CRRIF 06-127.  McCready Dec. ¶6 and Exhibit 3.

4.  By letter dated March 2, 2006, Commerce's Assistant General Counsel for Administration informed plaintiff that the appeal would not be considered because it was untimely.  Specifically, plaintiff's appeal was received 34 days after the date of the written denial, instead of 30 days as required by 15 C.F.R. § 4.10(a), and as plaintiff was informed in the letter of January 19, 2006.  McCready Dec. ¶ 7 and Exhibit 4.

II.  <u>Department of Commerce - Freedom of Information Act Request CRRIF No. 06-068</u>

1.  By letter dated October 18, 2005, addressed to the Department of Commerce Freedom of Information Act ("FOIA") Office, plaintiff filed a FOIA request for all records from March 1, 2005, to the present:[1]

> . . . consisting of or reflecting, representing, recording or otherwise disclosing communications, written or oral . . . regarding approval by the Internet Corporation for Assigned Names and Numbers ("ICANN"), and/or by its Board of Directors, of the new ".xxx" sponsored top-level domain ("sTLD"), and/or ICANN's or its Board's approval of ICM Registry's contract to operate the .xxx

---

[1] Under Commerce regulations in effect at the time ICM's request was received, records responsive to a request shall include only those records within the Department's possession and control as of the date the proper component receives the request.  15 C.F.R. § 4.5(a).

> sTLD . . . .
>
> . . . consisting of or reflecting, representing, recording or otherwise
> disclosing communications, written or oral . . . between any personnel at
> the Department of Commerce, or any Bureau or other component thereof,
> and the ICANN Board of Directors and its staff, ICANN's Governmental
> Advisory Committee ("GAC"), any GAC member country, or any
> individuals or agency in a GAC member country, regarding the .xxx
> sTLD.

Smith Dec. ¶ 5 and  Exhibit 1.

2.  In accordance with standard Commerce policies, the FOIA Office logged the request

and assigned it Department of Commerce tracking number CRRIF No. 06-068.  Smith Dec. ¶ 6.

On October 19, 2004, in accordance with 15 C.F.R. § 4.5(a) and based on a determination that

the National Telecommunications Information Administration would be likely to have the

majority of the documents responsive to the request, lead responsibility for responding to the

request was assigned to NTIA.  Id.

3.  Commerce's Immediate Office of the Secretary was tasked to determine whether it

possessed any records responsive to the request.  This Office located responsive documents and

provided them to NTIA.  Id.

4.  NTIA conducted a search for additional responsive records in every location where

documents could reasonably be expected to be located, including NTIA electronic and hard copy

files, computers, computer disks, desks, filing cabinets, storage areas and common areas.  Smith

Dec. ¶7.

5.  By letter dated November 18, 2005, NTIA disclosed certain responsive records to

plaintiff.  Smith Dec. ¶ 8 and Exhibit 2.  Plaintiff was informed that certain documents were

being withheld in full or in part based on the deliberative process privilege, 5 U.S.C. § 552(b)(5)

3

("Exemption b(5)").  Id.  Plaintiff also was informed that NTIA had identified documents from other agencies which might be responsive to the request.  Id.  NTIA indicated that it would respond to plaintiff regarding those records after coordinating with the other agencies.  Id. Finally, the November 18, 2005 letter informed plaintiff of the right to appeal the partial denial of records under 15 C.F.R. § 4.9.  Id.

6.  By letter dated December 2, 2005, plaintiff appealed the initial partial denial.  Smith Dec. ¶ 9 and Exhibit 3.

7.  By letter dated December 19, 2005, NTIA disclosed to plaintiff additional responsive records.  Smith Dec. ¶ 10 and Exhibit 4.  NTIA informed plaintiff that it was withholding other documents, in full or in part, based upon the deliberative process privilege, Exemption b(5).  Id.

8.  By letter dated December 21, 2005, NTIA informed plaintiff that NTIA was disclosing the final set of documents responsive to the initial request, and that certain portions of the documents were being withheld under the deliberative process privilege, Exemption b(5).  Smith Dec. ¶ 11 and Exhibit 5.

9.  By letter dated January 3, 2006, plaintiff confirmed a telephone conversation with Commerce's Office of General Counsel, in which plaintiff agreed to treat NTIA's November 18, December 19 and December 21, 2005 decisions as one appeal.  Smith Dec. ¶ 12 and Exhibit 6. The letter also mentioned the possibility of holding the appeal in abeyance for 2 weeks.  Id.

10.  By letter dated January 4, 2006, Commerce's Office of General Counsel confirmed the aforementioned telephone conversation regarding the appeals as well as a January 4, 2006 telephone conversation in which plaintiff indicated that it agreed to grant Commerce a two-week extension in responding to the appeal.  Smith Dec. ¶12 and Exhibit 7.

4

11.  On May 19, 2006, plaintiff filed the instant Complaint.  Smith Dec. ¶12

12.  By letter dated July 13, 2006, Commerce responded to the appeal.  Smith Dec. ¶13 and Exhibit 8.

III.  Department of State- Freedom of Information Act Request, Case Control No. 200504606

1.  By letter dated October 18, 2005 sent via facsimile to the Department of State Office of Information Programs and Services ("IPS"), plaintiff requested copies of records relating to the following:

> (1)    All records, correspondence, memoranda, transcripts, notes, documents, reports, emails or audiovisual or other materials consisting of or reflecting, representing, recording, or otherwise disclosing communications, written or oral, between March 1, 2005 and the present, regarding approval by the Internet Corporation for Assigned Names and Numbers ("ICANN"), and/or by its Board of Directors, of the new ".xxx" sponsored top-level domain ("STLD"), and/or ICANN's or its Board's approval of ICM Registry contract to operate the .xxx Stld. This request does not encompass documents submitted to the agency by the general public as part of any mass mailing campaign(s) or similarly duplicative emails/documents.

> (2)    All records, correspondence, memoranda, transcripts, notes, documents, reports, emails, or audiovisual or other materials consisting of or reflecting, representing, recording or otherwise disclosing communications, written or oral, between March 1, 2005 and the present, between any personnel at the State Department and the ICANN Board of Directors and its staff, ICANN's Governmental Advisory Committee ("GAC"), any GAC member country, or any individuals or agency in a GAC member country, regarding the .xxx Stld.

Grafeld Dec. ¶ 4 and Exhibit 1.  Plaintiff indicated its willingness to pay up to $5,000 for search and duplication costs.  Id.

2.    On November 28, 2005, IPS contacted plaintiff's counsel by telephone and explained that the Department of State may not have responsive documents.  It was suggested that it was more likely that the Department of Commerce had responsive documents.  Grafeld

Dec. ¶5.

      3.     By facsimile dated November 29, 2005, plaintiff's counsel provided a copy of the Department of Commerce's response to an identical FOIA request.  Grafeld Dec. ¶ 6 and Exhibit 2.  Plaintiff also provided documentation which indicated that the Department of Commerce may have coordinated on the subject matter of plaintiff's FOIA request with individuals at the Department of State.  Id.

      4.     By letter dated December 13, 2005, IPS acknowledged plaintiff's request and assigned it Case Control No. 200504606.  Grafeld Dec. ¶ 7 and Exhibit 3.  In the letter, plaintiff was informed that the Department of State would begin processing its request and that the cut-off date for retrieving records was either the date that was specified in the FOIA request or (if no date were specified) the date the search was initiated.  Id. Plaintiff was informed that this FOIA request had been placed in the "other" requester category for fee purposes.  Plaintiff also was advised that while IPS would make every effort to meet the time limits cited in FOIA, unusual circumstances could arise for extending the time limit.  Id.

      5.     By letter dated December 22, 2005, plaintiff appealed the Department of State's lack of response to plaintiff's FOIA request.  Grafeld Dec. ¶ 8 and Exhibit 4.

      6.     By letter dated January 3, 2006, IPS confirmed that the request was being processed.  Grafeld Dec. ¶ 9 and Exhibit 5.  IPS also advised plaintiff that, because no specific material had been denied in response to the request, the request was not yet subject to administrative appeal.  Id.

      7.     In a series of telephone calls and emails between June 12 and June 22, 2006, IPS and plaintiff agreed that a file of approximately 1,100 pages of potentially relevant press

clippings from the Bureau of Economic and Business Affairs would be produced in its entirety without a document-by-document review for responsiveness. Grafeld Dec. ¶ 10.

8.     By letter dated July 5, 2006, IPS advised plaintiff that searches had been initiated of the following records systems:  the Central Foreign Policy Records (the Department's principal records system), the Bureau of Economic and Business Affairs, and the Office of the Legal Adviser. Grafeld Dec. ¶ 11 and Exhibit 6.  With the letter, IPS enclosed a copy of the file of press clippings retrieved by the Bureau of Economic and Business Affairs. Id.  Plaintiff was informed that IPS had not reviewed these documents for responsiveness to its request, and that the total number of pages duplicated was 1,155. Id.  No charge was to be made for the first one hundred pages of duplication. Id.  Therefore, the total fees incurred for this release were $158.25, which represented 1055 pages duplicated at $.15 per page. Id.  IPS informed plaintiff that no fees were to be paid at this time, but IPS would inform plaintiff of the final fee total when the processing of the request was completed. Id.  Plaintiff also was informed that the search of the Central Foreign Policy Records had been completed, and resulted in the retrieval of no responsive documents. Id.  Finally, plaintiff was informed that the review of other material returned from the Bureau of Economic and Business Affairs and the Office of the Legal Adviser was in progress. Id.

9.     By letter dated July 14, 2006, IPS informed plaintiff that the search of the records of the Office of the Legal Adviser had been completed. Grafeld Dec. ¶ 12 and Exhibit 7.  This search resulted in the retrieval of 10 documents responsive to the request. Id.  Of these documents, 4 were being released in full and 6 were being denied in full. Id.  IPS also informed plaintiff that the search of the records of the Bureau of Economic and Business Affairs had been

completed.  Id.  This search resulted in the retrieval of 64 documents responsive to the request.

Id.[2]  Of these documents, 26 were being released in full, 6 were being released in part, and 27

were being denied in full.  Id.  Plaintiff was informed that the remaining 5 documents required

interagency coordination, and were referred for review and direct reply to plaintiff.[3]  Id.  Plaintiff

was advised that FOIA provided for the recovery of the direct costs of duplicating records

requested for non-commercial use.  Id.  No charge was made for the first two hours of search

time or the first one hundred pages of duplication.  However, the total fees due in this case were

$549.60, representing: 12.5 hours of executive search time at 30.00 per hour ($375) and 1,164

pages duplicated at $0.15 per page ($174.60).  IPS informed plaintiff that it had completed the

processing of its request.  Id.

     10.     By letter dated August 17, 2006, IPS informed plaintiff that after re-review of the

documents, 1 document (E67) initially withheld in full was released in full, 5 documents (E24,

E36, E68, E69, and E70) initially withheld in full were released in part, and 1 document (L2)

initially withheld in full had been referred to Commerce for inclusion in its Vaughn declaration.

Grafeld Dec. ¶ 13 and Exhibit 8.

---

[2]This was in addition to the 1,155 pages of documents that were released to plaintiff by letter dated July 5, 2006.  Id.

[3]The Department of Defense responded to plaintiff by letter dated August 15, 2006.  Grafeld Dec. ¶ 12 n.1 and Exhibit 9.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____

MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ICM REGISTRY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 06-0949 (JR)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF COMMERCE and UNITED STATES DEPARTMENT OF STATE,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Defendants respectfully submit this Memorandum of Points and Authorities in support of their Motion for Summary Judgment.

## I.  INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and concerns the processing of plaintiff's requests to the Department of Commerce and Department of State regarding the approval of the new '.xxx' sponsored top-level domain ("STLD"), by the Internet Corporation for Assigned Names and Numbers ("ICANN").  See Smith Dec. ¶ 5; Grafeld Dec. ¶ 4.  The defendants have fully and appropriately responded to plaintiff's FOIA requests and satisfied their obligations under FOIA.

## II.  STANDARD OF REVIEW

### A.  Motions to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the

court's jurisdiction." Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan.

29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001), quoting,

Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987); see also 4 Wright & Miller:  Federal Prac.

& Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of

the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an

affirmative obligation to ensure that they are acting within the scope of their jurisdictional

power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two

ways.  First, the court may determine the motion based solely on the complaint.  Herbert v. Nat'l

Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the

existence of jurisdiction, a court may look beyond the allegations of the complaint, consider

affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.;

see also Cureton v. United States Marshal Service, 322 F. Supp.2d 23, 2004 WL 1435124, *2

(D.D.C. June 28, 2004).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is

appropriate if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in

support of his claim which would entitle [plaintiff] to relief."  See Conley v. Gibson, 355 U.S.

41, 45-46, (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  The

Court must treat the Complaint's factual allegations as true, Leatherman v. Tarrant County

Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff

"the benefit of all inferences that can be derived from the facts alleged." <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  <u>Akintomide v. United States</u>, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing <u>Nat'l Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996); <u>Kowal v. MCI Communication Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

A motion to dismiss is a proper procedural vehicle for adjudicating a plaintiff's failure to exhaust its administrative remedies.  <u>See</u> <u>e.g. Hamilton Securities Group, Inc. v. U.S. Dep't Housing Urban Development,</u>106 F. Supp. 2d 23 (D.D.C. 2000) (matter dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff failed to exhaust administrative remedies under FOIA; <u>Hildalgo v. Federal Bureau of Investigation</u>, 344 F.3d 1256, 1258 (D.C. Cir. 2003)(where plaintiff failed to exhaust administrative remedies, matter remanded to district court to dismiss complaint under Rule 12(b)(6)).  When a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full and timely administrative exhaustion, the lawsuit is subject to ready dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."  <u>Wilbur v. CIA</u> 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam)(citing <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990).

### B.  Motions for Summary Judgment

Where matters outside the pleadings are presented to the court in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the motion shall be treated as a motion for summary

judgment and disposed of under Fed. R. Civ. P. 56. Fed R. Civ. P. 12. Where no genuine

dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome

of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' --

that is, pointing out to the [Court] -- that there is an absence of evidence to support the

non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560,

1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987)

(non-moving party is "required to provide evidence that would permit a reasonable jury to find"

in its favor).  In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" 477 U.S. at 327 (<u>quoting</u> Fed. R. Civ. P. 1).

 The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[4]  <u>See</u> <u>Cappabianca v. Comm'r, U.S.</u>

<u>Customs Serv.</u>, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly

identified, FOIA cases should be handled on motions for summary judgment") (<u>citing</u> <u>Miscavige</u>

<u>v. U.S. Internal Revenue Serv.</u>, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is

entitled to summary judgment once it demonstrates that no material facts are in dispute and that

each document that falls within the class requested either has been produced, not withheld, is

unidentifiable, or is exempt from disclosure.  <u>Students Against Genocide v. U.S. Dep't of State</u>,

257 F.3d 828, 833 (D.C. Cir. 2001); <u>Weisberg v. U.S. Dep't of Justice</u>, 627 F.2d 365, 368 (D.C.

Cir. 1980).

 An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and the plaintiff with affidavits or declarations and other evidence which show that the

documents are exempt from disclosure.  <u>Hayden v. Nat'l Security Agency</u>, 608 F.2d 1381, 1386

(D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dep't of</u>

<u>Army</u>, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a

FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe

---

[4]For purposes of summary judgment, an agency's decision to withhold information from a FOIA
requester is subject to <u>de novo</u> review by the courts.  <u>Hayden v. Nat'l Security Agency</u>, 608 F.2d
1381, 1384 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980).

'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also McGhee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Comm. on Human Rights v. U.S. Food and Drug Admin., 45 F.3d 1325, 1329 (9th Cir. 1995). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

## III. ARGUMENT

### A. Plaintiff Failed to Exhaust Its Administrative Remedies as to Department of Commerce Freedom of Information Act Request No. CRRIF 06-127.

FOIA requests are intended to be handled administratively, in the first instance, not in District Court. This goal would be thwarted if a FOIA requester could bypass the administrative process and litigate a FOIA request without first giving the agency an opportunity to address and resolve that request. To further this goal, the law provides that a FOIA plaintiff's failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction over the unexhausted claims. See Oglesby, 920 F.2d at 61-62. Indeed, "[a] plaintiff's FOIA lawsuit is subject to dismissal for lack of subject matter jurisdiction if he fails to exhaust all administrative remedies." Trueblood v. U.S. Dep't of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996); accord Dettmann v. U.S. Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986); Center to Prevent

Handgun Violence v. U.S. Dep't of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997); Crooker v. U.S. Secret Serv., 577 F. Supp. 1218, 1219 (D.D.C. 1983).  Other courts have held that when a FOIA plaintiff fails to exhaust administrative remedies, his lawsuit is subject to dismissal for failure to state a claim.  See Sweetland v. Walters, 60 F.2d 852, 855 (D.C. Cir. 1995)(per curiam)(because defendant is not an agency for FOIA purposes, dismissal for failure to state a claim upon which relief could be granted was proper).  Regardless of the stated basis for dismissal, when a FOIA plaintiff attempts to seek judicial review before the agency has had an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision, the complaint should be dismissed for failure to exhaust administrative remedies.  See e.g. Judicial Watch, Inc.  v. Federal Bureau of Investigation, 190 F.Supp. 2d 29, 32 (D.D.C. 2002)(citing Oglesby, 920 F.2d at 61-62).

In the matter at hand, on December 2, 2005, plaintiff filed a FOIA Request with the Department of Commerce which was assigned Request No. CRRIF No. 06-127.  McCready Dec. ¶ 4.  By letter dated January 19, 2006, the Department of Commerce responded by providing certain information and withholding other information based upon FOIA Exemptions (b)(2), (b)(5) and (b)(6).  McCready Dec. ¶ 5.   The letter of January 19, 2006 informed plaintiff that any appeal must be received by the Assistant General Counsel for Administration within 30 calendar of the date of the letter.  Id.  Further, "appeals submitted by e-mail or fa[csimile] must be received on working days during normal business hours. . . [FOIA a]ppeals posted to the e-mail box or fa[csimile] machine after normal business hours w[ould] be deemed received on the next normal business day[]."  Id.  By letter dated February 21, 2006 and received after normal business hours, plaintiff registered an appeal.  McCready Dec. ¶ 6.  However, this letter was

received four days after the expiration of the appeal deadline. Therefore, by letter dated March 2, 2006, the Department of Commerce's Assistant General Counsel for Administration informed plaintiff that the appeal would not be considered because it was untimely. McCready Dec. ¶ 7.

"[A] requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." Wilbur v. CIA, 355 F.3d at 676; see e.g. Center for Biological Diversity v. Gutierrez, No. Civ. A. 05-1045, 2006 WL 2329330 (D.D.C. August 10, 2006)(holding that plaintiff failed to exhaust administrative remedies when he filed FOIA appeal twelve minutes after filing deadline). By failing to file an appeal in a timely manner and filing this action, plaintiff is attempting to "leapfrog" over the substantive steps in the administrative process without first exhausting all administrative remedies. Tuchinsky v. Selective Serv. System, 418 F.2d 155, 158 (7th Cir. 1969). In doing so, plaintiff has deprived the agency with "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Wilbur, 355 F.3d at 677 (quoting Oglesby, 920 F.2d at 61). Because plaintiff has attempted to circumvent the administrative process, plaintiff's lawsuit is subject to ready dismissal. See e.g. Dettmann, 802 F.2d at 1477; Hymen v. Merit Sys. Protection Bd., 799 F.2d 1421, 1423 (9th Cir. 1986); Brumley v. U.S. Dep't of Labor, 767 F.2d 444, 445 (8th Cir. 1985); Sweetland, 60 F.2d at 855. Hence, plaintiff's FOIA request to the Department of Commerce with respect to CRRIF No. 06-127, should be dismissed.

**B.  The Department of State and Department of Commerce Properly Responded to the Remaining Freedom of Information Act Requests.**

**_____1-  Defendants Have Submitted <u>Vaughn</u> Indices**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA plaintiffs."  <u>Judicial Watch v. U.S. Dep't of Health and Human Services</u>, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  The declaration or affidavit (singly or collectively) is often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974).  There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form."  <u>Kay v. U.S. Federal Communications Comm'n</u>, 976 F.Supp. 23, 35 (D.D.C. 1997), <u>aff'd</u> 172 F.3d 919 (D.C. Cir. 1998).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  <u>Delaney, Midgail & Young, Chartered v. U.S. Internal Revenue Serv.</u>, 826 F.2d 124, 128 (D.C. Cir. 1987).  <u>See also</u> <u>Keys v. U.S. Dep't of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. U.S. Dep't of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).  "All that is required, and . . . the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure."  <u>Id</u>. at 128.  The specificity of itemization needed depends upon the nature of the document and the exemption asserted.  <u>Info. Acquisition Corp. v. U.S. Dep't of Justice</u>, 444 F.Supp. 458, 462 (D.D.C. 1978).

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Comm. on Human Rights, 45 F.3d at 1325. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

In the case at bar, the Department of Commerce has submitted a declaration as well as a Vaughn index in support of the Motion for Summary Judgment. The declaration was prepared by Kathy Smith, Chief Counsel for the National Telecommunications Information Administration (NTIA). See Smith Dec. ¶ 1. NTIA is the President's principal adviser on telecommunications and information policy issues, and is a component of the Department of Commerce. Id. In the course of Ms. Smith's duties, she "supervise[s] a staff of attorneys which is responsible for providing legal advice to NTIA." Id. In addition, Ms. Smith supervises NTIA's Freedom of Information Act Office. Id. Ms. Smith is familiar with the FOIA Request at issue in this case. Smith Dec. ¶ 3.

The Department of State also has submitted a declaration, which includes a Vaughn index in support of the Motion for Summary Judgment. The declaration was prepared by Margaret P. Grafeld. Grafeld Dec. ¶ 1. Ms. Grafeld is the Department of State's Information and Privacy Coordinator as well as the Director of the Department's Office of Information Programs and Services ("IPS"). Id. Ms. Grafeld is "authorized to classify and declassify national security

information pursuant to Executive Order (E.O.) 12958, as amended, and Department of State regulations set forth in 22 CFR §§ 9.7, 9.14." Id. "The core responsibilities of IPS include records access requests made by the need-to-know community, the public, members of Congress, and other government agencies." Grafeld Dec. ¶ 2. In addition, IPS accesses record requests made pursuant to "judicial processes;[5] . . . records management; privacy protection; national security classification management and declassification review; corporate records archives management; research; Department [of State] Library [inquiries; as well as] the technology that supports these activities. Id. In the course of her duties, Ms. Grafeld has become familiar with the efforts of Department of State personnel to process plaintiff's FOIA Request. Grafeld Dec. ¶ 1.

The Vaughn indices from the Department of Commerce and Department of State which are submitted in support of this motion meet the requirements of Vaughn v. Rosen, 484 F.2d at 820, thus providing the Court with the requisite basis to grant defendants' Motion for Summary Judgment.

### 2- The Searches For Responsive Records Were Reasonable

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. Oglesby, 920 F.2d at 68; Cleary, Gottlieb, Steen & Hamilton v. U.S. Dep't of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The established reasonableness standard by which FOIA searches are judged "does not require absolute exhaustion of the files; instead it requires a search reasonably calculated to uncover the sought materials." Miller v. U.S. Dep't of State, 779 F.2d

---

[5]This would include subpoenas, court orders, and discovery requests.

1378, 1384-85 (8th Cir. 1986).  Thus, "the issue in a FOIA case is not whether the agencies'

searches uncovered responsive documents, but rather whether the searches were reasonable."

Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996); see also Fitzgibbon v. U.S. Secret Service ,

747 F. Supp. 51, 54 (D.D.C. 1990); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

An agency demonstrates that it conducted a reasonable search by showing "that it made a

good faith effort to conduct a FOIA search for requested records by using methods that can

reasonably be expected to produce the information requested."  Western Center for Journalism v.

U.S. Internal Revenue Service, 116 F. Supp.2d 1, 9 (D.D.C. 2000); Oglesby, 920 F.2d at 68.

Indeed, the search standards established under the FOIA do not require an agency to search every

record system, but rather, the agency need only search those systems in which it believes

responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Even when a requested

document indisputably exists or once existed, summary judgment will not be defeated by an

unsuccessful search for the document so long as the search was diligent.  Nation Magazine,

Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

Additionally, the mere fact that a document once existed does not mean that it now exists; nor

does the fact that an agency created a document necessarily imply that the agency has retained it.

Maynard v. U.S. Central Intelligence Agency, 982 F.2d 546, 564 (1st Cir. 1993).  Simply stated,

the adequacy of the search is "dependent upon the circumstances of the case."  Truitt v. U.S.

Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether

there might exist any other documents responsive to the request, but rather whether the search for

those documents was adequate."  Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir.

1994) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Upon receipt of plaintiff's FOIA requests, searches reasonably calculated to locate any responsive records were undertaken. Grafeld Dec. ¶ 11 n.1; see Smith Dec. ¶ 7. Both the Department of Commerce and Department of State have demonstrated that thorough searches were conducted. As a result, each agency has carried its burden under FOIA.

(a) The Department of State

The Department of State's Office of Information Programs and Services "tasks" FOIA requests to any office within the Department that may have responsive records. In this case, IPS tasked two offices: the Bureau of Economic and Business Affairs and the Office of the Legal Adviser. The Bureau of Economic and Business Affairs was tasked because documents received from plaintiff identified personnel within this office who might have responsive documents. Grafeld Dec. ¶ 11 n.1. The Office of the Legal Adviser was tasked because personnel within the Bureau of Economic and Business Affairs indicated that personnel within the Office of the Legal Adviser might "have been involved with the subject matter of the request." Id. The search for responsive records in each of these offices was conducted by personnel familiar with the subject matter of the request. Id.

IPS also conducted an electronic search of the Central Foreign Policy Files, the department's principal records system. Id. The system contains a word-searchable electronic database of millions of Department of State documents. Id. The search of this database was conducted by an IPS case analyst who was familiar with the subject matter of the request.

As a result of these searches, no responsive records were located in the Central Foreign Policy Records system. Id. On July 5, 2006, 1,155 pages of documents from the Bureau of Economic and Business Affairs were released to plaintiff. Grafeld Dec. ¶ 11. On July 14, 2006,

an additional 64 responsive documents were identified from this office.  Grafeld Dec. ¶ 12.

Twenty-six were released in full, 6 were released in part and 27 were denied in full.  Id.  Five

documents were referred to the Department of Defense for review and direct reply to plaintiff.

Id.; see also id. Exhibit 9 (August 15, 2006 letter from Department of Defense, Defense

Information Systems Agency, responding to plaintiff in reference to the referral from the

Department of State).  In the Office of Legal Adviser, 10 responsive documents were located.

Grafeld Dec. ¶ 12.  Four were released in full and 6 were denied in full.  Id.  As indicated in the

Declaration of Margaret P. Grafeld, the searches of these offices were conducted in good faith

and were reasonably calculated to uncover all relevant documents.  Grafeld Dec. ¶ 11n.1.

(b) The Department of Commerce

In accordance with Department of Commerce FOIA regulations, lead responsibility for

responding to plaintiff's FOIA Request No. CRRIF 06-068 was assigned to the National

Telecommunications Information Administration.  Smith Dec. ¶ 6.  This was based upon "a

determination that NTIA would be likely to have the majority of the documents responsive to the

request."  Id.  In addition, the Immediate Office of the Secretary was tasked to locate any

responsive records.  Id.  This office was tasked because, in its search, NTIA located documents

that originated in the Immediate Office of the Secretary or were copied to employees of that

office.  Id.  The Immediate Office of the Secretary located responsive records and provided them

to NTIA to respond to plaintiff.  Id.  Kathy Smith, Chief Counsel for NTIA directed NTIA's

search for its responsive records.  Smith Dec. ¶ 7.  NTIA offices conducted a thorough search for

documents in "NTIA files, electronic and hard copy, . . . computer disks, desks, filing cabinets,

storage areas and common areas."  Id.  As a result of those searches, on November 18, December

14

19, and December 21, 2005, multiple documents were disclosed to plaintiff.  The searches of each of these offices were conducted in good faith and were reasonably calculated to uncover all relevant documents.  See id.

### C.  The Department of State Properly Applied Freedom of Information Act Exemption (b)(4)

Title 5, United States Code, Section § 552(b)(4) (hereinafter "Exemption (b)(4)") covers two broad categories of information in federal agency records: (1) trade secrets; and (2) information that is (a) commercial or financial, and (b) obtained from a person, and (c) privileged or confidential.  5 U.S.C. § 552(b)(4); Public Citizen Health Research Group v. U.S. Food and Drug Admin., 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Regarding the latter, if information relates to business or trade, courts generally will accord it the status of "commercial" information for purposes of  FOIA.  It is not necessary to show that the records reveal basic commercial operations; records are deemed commercial so long as the submitter has a "commercial interest" in them.  Id. at 1290.  Further, "[i]nformation that a person is required to submit to the Government is considered confidential . . . if its disclosure is likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'"  Public Citizen Health Research Group v. U.S. Food and Drug Admin., 185 F.3d 898, 348 (D.C. Cir. 1999) (quoting Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)).

Here, pursuant to Exemption (b)(4), the Department of State withheld information from three documents provided to plaintiff because the "information[, which] concern[ed] commercial

aspects of the ICANN process, was offered voluntarily to the government and would not "customarily" be made public."  Grafeld Dec. ¶16.  Specifically, the Department of State properly withheld three three e-mails - - Document Nos. E2, E18 and E71.

(1)  Document No. E2.  All material in this e-mail related to .xxx was released. Grafeld Dec. ¶ 25.  However, portions of the information contained in the e-mail were obtained from a consultant in the telecommunications industry and were withheld from plaintiff.  This information was provided with the expectation that it would be held in confidence.  Id.  It "would customarily not be released to the public by the person from whom it was obtained."   Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). Therefore, release of this information could "impair the . . . ability of U[nited] S[tates] officials to obtain information from that individual [in the future]."  Grafeld Dec. ¶¶ 16, 25; see Public Citizen Health Research Group, 185 F.3d at 348.  Because "[n]o meaningful material could be segregated and released [to plaintiff]," id., this information was properly withheld.  See Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

(2)  Document No. E18.  This document consists of one page containing information from a source in a Washington, D.C. business organization that deals with World Summit on the Information Society ("WSIS")[6] and Internet governance.   Grafeld Dec. ¶¶ 16, 25. One of the points discussed in this e-mail related to the approval of .xxx TLD.  Id.  "This information . . . was provided [to the Department of State] with the expectation that it would be held in confidence[.]"  Id.  The information "would customarily not be released to the public by

---

[6]This is a United Nations created intergovernmental group that deals with the Internet and computer issues.  See www.itu.int/wsis.

the person from whom it was obtained." Critical Mass Energy Project, 975 F.2d at 879. In addition, release of this document could "impair the . . . ability of U[nited] S[tates] officials to obtain information from th[at] source [in the future]." Grafeld Dec. ¶¶ 16, 25; see Public Citizen Health Research Group, 185 F.3d at 348. Because "no meaningful material could be segregated and released," id., this page properly was withheld. See Armstrong, 97 F.3d at 578-79.

(3) Document No. E71. This document consists of five pages of e-mails from "ICANN personnel to a recipient not named in the document." Grafeld Dec. ¶ 25. These linked messages deal with ICANN, ICANN's Government Advisory Committee ("GAC") and the WSIS. Id. One line in the messages mention[ed] .xxx. "The information in the messages was provided with the expectation that it would be held in confidence . . . ." Id. Release of these e-mails "could impair the . . . ability of U[nited] S[tates] officials to obtain information from these sources [in the future.]" Grafeld Dec. ¶¶ 16, 25; see Public Citizen Health Research Group, 185 F.3d at 348. Because "no meaningful material could be segregated and released," id., these pages properly were withheld. See Armstrong, 97 F.3d at 578-79.

**D.  Freedom of Information Act Exemption (b)(5) Was Properly Applied by the Department of Commerce and the Department of State**

**1- The Scope of the Freedom of Information Act Exemption (b)(5)**

Title 5, United States Code, Section 552 (b)(5) (hereinafter "Exemption 5") protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, this exemption protects documents normally privileged in the civil discovery context. U.S. Federal Trade Comm'n v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v. Sears, Roebuck & Co., 421 U.S. 132,

149 (1975).  This section of FOIA incorporates (1) the attorney-client privilege; (2) the attorney

work-product doctrine; and (3) the executive "deliberative process privilege that protects candid

internal discussions of legal or policy matters."  Maricopa Audubon Soc'y v. U.S. Forest Serv.,

108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

(a) The Attorney-Client Privilege

"Both congressional intent and judicial precedent establish the attorney-client privilege as

grounds for applying Exemption 5."  Brinton v. U.S. Dep't of State, 636 F.2d 600 (D.C. Cir.

1980). The attorney-client privilege protects "confidential communications between an attorney

and his client relating to a legal matter for which the client has sought professional advice."

Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).  The

attorney-client privilege is not limited to the context of litigation.  It encompasses facts divulged

by a client to his attorney, opinions given by an attorney to his client, based upon, and reflecting

those facts, see e.g. Jernigan v. U.S. Dep't of Air Force, No. 97-35930, 1998 WL 658662, at *2

(9th Cir. Sept. 17, 1998); Kelly v. U.S. Central Intelligence Agency, No. 00-2498, slip. op. at 21-

22 (D.D.C. Aug. 8, 2002), and communications between attorneys that reflect client-supplied

information.  See McEarlean v. U.S. Dep't of Justice, No. 97-7831, 1999 WL 791680, at *7

(S.D.N.Y. Sept. 30, 1999); Green v. U.S. Internal Revenue Serv., 556 F.Supp. 79, 85 (N.D. Ind.

1982), aff'd, 734 F.2d 18 (7th Cir. 1984)(unpublished table decision).

(b) Attorney Work-Product Doctrine

The attorney work-product privilege protects "the files and the mental impressions of an

attorney . . . reflected . . . in interviews, statements, memoranda, correspondence, briefs . . . and

countless other tangible and intangible ways prepared in anticipation of litigation," particularly

those documents which set forth the attorney's theory of the case and litigation strategy.  <u>A. Michael's Piano, Inc. v. U.S. Federal Trade Comm'n</u>, 18 F.3d 138, 146 (2d Cir. 1994) (<u>citing</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 509-11 (1947).

In order to qualify for the protection of the attorney work-product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation.  The litigation which is anticipated need not imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation.  <u>U.S. v. Davis</u>, 636 F. 2d 1028, 1040 (5th Cir. 1981); <u>A. Michael's Piano</u>, 18 F3d. at 146; <u>Hickman</u>, 329 U.S. at 511.

Courts have held that "if material is exempt from FOIA disclosure because of the attorney work-product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared."  <u>See</u> <u>U.S. Federal Trade Comm'n v. Grolier, Inc.</u>, 462 U.S. 19, 28 (1983).  Rather, "attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared."  <u>Grove v. U.S. Dep't of Justice, et al.</u>, 802 F.Supp. 506, 514 (D.D.C. 1992).

(c)  Deliberative Process Privilege

"The deliberative process privilege, also known as the 'executive' or 'governmental' privilege serves many purposes."  <u>Eugene Burger Mgmt. Corp. v. U.S. Dep't of Housing and Urban Dev.</u>, 192 F.R.D. 1, 4 (D.C.C. 1999)  The main purpose of this privilege "which is well established in the law, is . . . to 'prevent injury to the quality of agency decisions.'"  <u>Cofield, et al. v. City of LaGrange, Georgia</u>, 913 F.Supp. 608, 615 (D.D.C. 1996) (<u>quoting</u> <u>NLRB v. Sears Roebuck & Co.</u>, 421 U.S. at 151.  The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning used in the

19

administrative and decision-making process of the government.  See United States v. Morgan,

(Morgan IV), 313 U.S. 409, 422 (1941); Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976

F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. U.S. Dep't of Justice, 926 F.2d 1192, 1194-

1195 (D.C. Cir.  1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).

There are three policy bases for this privilege.  Jordan v. U.S. Dep't of Justice, 591 F.2d

753, 772 (D.C. Cir. 1978) (en banc), overruled in part on other grounds, Crooker v. U.S. Bureau

of Alcohol, Tobacco and Firearms, 670 F.2d 1051 (D.C. Cir. 1981).  "First, it protects creative

debate and candid consideration of alternatives within an agency, and, thereby, improves the

quality of agency decisions."  Id. (citing NLRB v. Sears, Roebuck & Co., 421 U.S. at 151;

Montrose Chemical Corp of California v. Train, 491 F.2d 63, 66 (D.C. Cir. 1974)).  "Second, it

protects the public from the confusion that would result from premature exposure to discussions

before the policies affecting it had actually been settled upon."  Jordan, 591 F.2d at 772-73.

"[T]hird, it protects the integrity of the decision-making process itself by confirming that

'officials should be judged by what they decided[,] not for matters they considered before making

up their minds."  Id.; see Petroleum Info. Corp., 976 F.2d at 1434; Access Reports, 926 F.2d at

1194-1195; Farley, 11 F.3d at 1389.  The deliberative process privilege remains even after a final

decision has been made, because "disclosure at any time could inhibit the free flow of advice."

Federal Open Market Comm. v. Merrill, 443 U.S. 340, 360 (1979).

Since, "Exemption 5 'was intended to protect not simply the deliberative material, but

also the deliberative process of agencies,'" Nat'l Wildlife Fed'n v. U.S. Forest Service, 861 F.2d

1114, 1118 (9th Cir. 1988) (quoting Montrose Chemical Corp. of California, 491 F.2d at 71,

courts have found that even factual materials are encompassed within the privilege, if release of

such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, the document must be predecisional, i.e., "antecedent to the adoption of agency policy."  Jordan, 591 F.2d at 774.  In determining whether a document is predecisional, the Supreme Court has determined that the emphasis of the privilege does not "turn on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process. NLRB v. Sears, Roebuck & Co., 421 U.S. at 151 n.18.  Ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision.  Id.; see also Dudman Communications Corp. v. U.S. Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes -- not to protect specific materials.").  It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975).  See Mapohter v. U.S. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993); Petroleum Info. Corp., 976 F.2d at 1434. 1992).  Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are

formulated." <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. at 150.  Thus, the exemption covers

recommendations, draft documents, proposals, analyses, suggestions, discussions, and other

subjective documents that reflect the give-and-take of the consultative process.  <u>Coastal States</u>,

617 F.2d at 866.

**2-  The Department of Commerce - Freedom of Information Act Request No. CRRIF No.  06-668**

With the exception of a portion of one document,[7] the documents at issue are partially or

entirely withheld pursuant to FOIA Exemption (b)(5).  Smith Dec. ¶14.  The majority of the

documents are withheld, in part or in their entirety, based solely upon the deliberative process

privilege.  A smaller number of documents are withheld, in part or in their entirety, based upon

the attorney-client as well as the deliberative process privileges.  The remainder of the documents

are withheld, in their entirety, based upon the attorney work-product as well as the deliberative

process privileges.  All of the documents withheld, in part or in their entirety, were properly

withheld.

(a)  <u>Documents Withheld Solely Pursuant to the Deliberative Process Privilege</u>

One-hundred forty-one documents are withheld in part, and 52 documents are withheld in

their entirety based solely on the deliberative process privilege.  Smith Dec. ¶ 15 and Commerce

<u>Vaughn</u> Index ("Commerce Vaughn"), Sections I and II.  These documents consists of "internal

Government recommendations and opinions relating to the Government's response if the Internet

Corporation for Assigned Names and Numbers [ICANN] were to recommend the creation of the

proposed new .xxx domain and/or enter into a contract with ICM to operate an .xxx domain

---

[7] This document was withheld pursuant to 5 U.S.C. § 552(b)(6), FOIA exemption (b)(6).  <u>See</u> <u>infra</u> pp. 49-51.

[hereinafter "Government Response"]."  Smith Dec. ¶ 16 and Commerce Vaughn pp. 1-23.

The documents were part of a deliberative process in that they consisted of opinions or advice on the matters to which they related,  see United States v. Morgan, 313 U.S. at 422, and did not constitute final agency decisions on those matters.  Smith Dec. ¶ 17; see Jordan, 591 F.2d at 774.  Specifically, the material withheld solely under the deliberative process privilege includes the following categories of documents: (a) e-mail messages; (b) draft letters; (c) talking points and questions and answers; (d) miscellaneous draft documents excluding draft letters; (e) handwritten notes; and (f) miscellaneous documents.  Smith Dec. ¶ 18.

(1)   E-mail Messages

One-hundred two documents, which consist of internal government e-mails among staff of the Department of Commerce, Department of State, and the White House, are withheld in part.[8]  Smith Dec. ¶ 19; see Commerce Vaughn pp. 1-11.  These documents are withheld because they concern discussions regarding ICANN's consideration of ICM's application for a proposed new .xxx domain, and/or negotiated a draft contract with ICM to operate the .xxx domain."  Id.  These documents fall squarely within the deliberative process privilege.  They are pre-decisional because they preceded any final decisions by Commerce on the matter.  In fact, ICANN "has not approve[d] ICM's application for a proposed new .xxx domain[,] and [has not] enter[ed] into a contract with ICM to operate the .xxx domain."  Smith Dec. ¶ 21; see Jordan, 591 F.2d at 773 ("[A] government agency cannot always operate effectively if it is required to disclose documents which it . . . received or generated before it completes the process of awarding a

---

[8]Some of these e-mails include attachments which are also withheld under the deliberative process privilege.  Id. ¶ 19.

contract . . . ."). In addition, these documents are deliberative because they were prepared by government employees for Commerce decision-makers, and they reflected the opinions, advice and recommendations of those employees. Smith Dec. ¶ 20. Because the deliberative process privilege applies to intra-agency and inter-agency exchanges of opinions, these documents were properly withheld. See Brinton, 636 F.2d at 606.       To the extent that factual information is included within the opinions, advice and recommendations, it is also properly withheld because the facts were part of a larger group of facts, see Williams v. U.S. Dep't of Justice, 556 F.Supp. 63, 65 (D.D.C. 1982), and were inextricably connected to the deliberative material. See Washington Post Co. v. Dep't of Defense, No. 84-2403, slip op. At 5 (D.D.C. April 15, 1988). Finally, the withholding of these documents is consistent with the privilege's policy basis to protect against public confusion that would result from disclosure of reasons and rationales that were not ultimately the grounds for the agency's action. See Russell v. U.S. Dep't of Air Force, 682 F2d 1045, 1048 (D.C. Cir. 1982); Coastal States; 617 F.2d at 866. Here, if the documents were released, reasons and rationales of Commerce staff would be disclosed when they were not ultimately ground for action because ICANN "has not approve[d] ICM's application for [the] proposed . . . domain[,] and [has not] enter[ed] into a contract with ICM to operate [it]." Smith Dec. ¶ 21. See Brinton, 636 F.2d at 604 (Exemption 5 protects "communications related to an agency's deliberative process preceding adoption and promulgation of agency policy.").

### (2)   Draft Letters

Sixteen documents are withheld in part, see Commerce Vaughn pp. 11-13, and 10 documents are withheld in their entirety, see id. pp. 19-21. They consist of draft letters written

by Commerce employees on various subjects.  Smith Dec. ¶ 22.[9]  These include draft responses

to individuals who wrote to Commerce about .xxx, draft letters to ICANN, and staff comments

on those draft responses.  Id.  They also consist of recommendations to a Commerce decision-

maker on what information should be contained in a final letter, and how certain issues should be

addressed.  Id.

     All of these draft letters are protected by the deliberative process privilege because

"[d]raft documents, by their very nature, are typically predecisional and deliberative."  Exxon

Corp. v. DMI of Energy, 585 F.Supp. 690, 698 (D.D.C. 1983).  Further, these drafts "reflect [the]

agency's preliminary positions or ruminations about a particular policy judgment."  Nat'l Ass'n

of Home Builders, 309 F.2d 36, 39 (D.C. Cir. 2002).  They are predecisional and do not represent

final decisions by Commerce on the matters contained therein.  Smith Dec. ¶ 22.  If an agency

were "required to disclose information or documents . . . before it [had] complete[d] the process

of . . . issuing a decision[,]" Jordan, 591 F.2d at 773,  the agency would not be able to operate

effectively.

     Moreover, these draft letters are deliberative because they contain information regarding

discussions by Commerce personnel about what information should be included in a final letter.

Smith Dec. ¶ 22.  To the extent that factual information is included within the draft letters, it is

protected because the facts were selectively chosen as part of the decision-making process

regarding how Commerce could "best . . . respond to . . . requests for information."  Smith Dec. ¶

23.  The very act of separating significant facts from insignificant ones constitutes an exercise of

---

[9]In some instances, the draft letters are attached to e-mails which have been released in their
entirety.  Smith Dec. ¶ 22.

judgment by agency personnel.  See <u>Montrose Chem. Corp. v. Train</u>, 491 F.2d at 68.  Such

"selective" facts are entitled to the same protection as that afforded to purely deliberative

material.  <u>Williams v. U.S. Dep't of Justice</u>, 556 F.Supp at 65.   Finally, because the release of

the draft letters would disclose information that may not have been grounds for Commerce's

ultimate response, their release could create public confusion.  See <u>Russell</u>, 682 F.2d at 1048.

Therefore, it is clear that these draft letters were properly withheld.

(3)  Miscellaneous Draft Documents (excluding draft letters)

Six documents, which consist of drafts written by Commerce employees on various

subjects, such as invitations and briefing statements, and staff comments on those drafts, are

withheld in their entirety.  Smith Dec. ¶ 24; see Commerce Vaughn pp. 21-22.  Again, these draft

documents are protected by the deliberative process privilege because "[d]raft documents, by

their very nature, are typically predecisional and deliberative."  <u>Exxon Corp.</u>, 585 F.Supp. at 698.

 They are predecisional in that they are recommendations to a Commerce decision-maker

regarding what information and issues should be addressed in a final letter.  Smith Dec. ¶ 24.

Disclosing recommendations such as these would circumvent the goal of the deliberative process

privilege "to allow agencies to freely explore alternative avenues of action and to engage in

internal debates without fear of public scrutiny."  <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150.  More

importantly, it would harm the very integrity of the deliberative process.  Further, because these

draft documents did not represent final agency action, Smith Dec. ¶ 24, their release could create

public confusion by disclosing reasons and rationales that were not ultimately the ground for

agency action.  <u>Id.</u>; see <u>e.g.</u> <u>Russell</u>, 682 F.2d at 1048.  Finally, "[t]o the extent that factual

information is included within the withheld material, it was properly withheld because the facts

26

were selectively chosen as part of the decision-making process."  Smith Dec. ¶25, <u>see</u> <u>Petroleum</u>

<u>Info. Corp.</u>, 976 F.2d at 1434 (documents properly withheld because disclosure of purely factual

material could expose the deliberative process).

(4)  Talking Points /Questions and Answers

Seventeen documents are withheld in part, Smith Dec. ¶ 26; <u>see</u> Commerce Vaughn pp.

13-15, and 25 documents are withheld in their entirety, <u>id</u>.; <u>see</u> Commerce Vaughn pp. 17-19.

These documents were prepared by Department of Commerce employees for its decision-makers

to consider when making presentations related to .xxx, and responding to public inquiries about

.xxx.  Smith Dec. ¶ 26.  "The decision-makers did not adopt the talking points wholesale, or use

all the recommended answers to questions."  <u>Id</u>.  Rather, they utilized "the information they felt

was most useful for their presentations."  <u>Id</u>.

These documents are predecisional because they were prepared prior to any agency

decision regarding ICM's application or contract.   In addition, these documents were prepared

by Commerce employees for superior officials, and a document "from a subordinate to a superior

official is more likely to be predecisional."  <u>Coastal States</u>, 617 F.2d at 686; <u>c.f.</u> <u>Blazar v. Office</u>

<u>of Mgmt. and Budget</u>, No. 92-2719, slip op. At 14 (D.D.C. Apr. 15, 1994)(finding

recommendations made from Office of Management and Budge to the President to be

predecisional).

The documents are also deliberative because they were prepared for Commerce decision-

makers to consider when making presentations and responding to inquiries regarding .xxx."

These decision-makers did not adopt all of the recommendations provided.  Smith ¶ 26.

Therefore, these documents were provided to the Commerce decision-makers as part of a

27

"consultative function of government." Jordan, 591 F.2d at 772.

To the extent that factual information is included in the talking points, these facts were selectively chosen and were part of the give-and-take of the deliberative process. Smith Dec. ¶ 27; see Williams v. U.S. Dep't of Justice, 556 F.Supp at 65; Jordan, 591 F.2d at 772. The release of these talking points, would discourage open, frank discussion by Commerce staff when preparing for presentations related to .xxx. Smith Dec. ¶ 28. Finally, because these talking points did not represent final agency action on the matters they addressed, the release of the underlying reasons and rationales for these talking points could create public confusion. See Russell, 682 F.2d at 1048.

(5)  Handwritten Notes

Ten documents, which consist of notes taken by Commerce employees at various meetings, and notes made by employees as part of the decision-making process, are withheld in their entirety. Smith Dec. ¶ 29 and Commerce Vaughn pp. 22-23. These notes were not shared with parties outside the government. They consist of Commerce employees' deliberations on "issues such as the public response to the possible creation of a new .xxx TLD." Id. Because these handwritten notes are directly related to the deliberative process itself, they are protected. See Brinton, 636 F.2d at 604; see also Judicial Watch, Inc. v. U.S. Dep't of Justice, 306 F.Supp.2d 58, 79 (D.D.C. 2004)(protecting handwritten notes on an invitation to the Attorney General because disclosure "would reveal what the staff member who wrote the notes considered to be important. . . .") Moreover, if communications such as handwritten notes taken at meetings were made public, this would have a chilling effect on the authors' creation of recommendations for use in the decision-making process. See Greenberg v. U.S. Dep't of Treasury, 10 F.Supp. 2d

316 n.19 (D.D.C. 1998)(Exemption 5 "is not limited to preventing embarrassment or 'chilling' of the individual authors of deliberative documents, but is [also] designed to prevent chilling of agency deliberations."). To the extent that factual information is included in these notes, "the factual information is . . . an integral part of the deliberations undertaken by Commerce in developing its views." Smith Dec. ¶ 29. Therefore, the factual information should be protected as well. See Williams v. U.S. Dep't of Justice, 556 F.Supp at 65.

                    (6)  Miscellaneous Documents

Six documents, which consist of documents written by Commerce employees on various subjects, are withheld in part, Smith Dec. ¶ 31; see Commerce Vaughn pp. 15-17. One such document is withheld in its entirety.  Id.; see Commerce Vaughn p. 23.  These subjects include, for example, "notes from an incoming call log for the NTIA Public Affairs Office, a document entitled 'NTIA Planning Meeting 7/14-7/15/05,' and a document concerning initiatives for promoting child safety online." Smith Dec. ¶ 31.  These miscellaneous documents are predecisional in that they were created before any adoption of agency policy regarding ICM's application for an .xxx domain, and do not constitute final agency decisions on the matters. Smith Dec. ¶ 32.  They are deliberative in that they consist of opinions and advice, and are part of the decision-making process of Commerce "relating to ICANN's consideration of the ICM application for a proposed new .xxx domain, and the negotiation of a contract for its operation." Id.  These miscellaneous documents should be protected because they each contribute to the larger decision-making process regarding the proposed .xxx domain.  Cf. Access Reports v. U.S. Dep't of Justice, 926 F.2d 1192, 1196 (D.C. Cir. 1991)(court emphasized importance of identifying the larger process to which a document sometimes contributes).  To the extent that

factual information is included in these documents, the facts were selectively chosen as part of

the decision-making process and are protected.  Smith Dec. ¶32.  In addition, the factual

information is not reasonably segregable.  Id.  See Armstrong, 97 F.3d at 578-79.

      b-  Documents Withheld Pursuant to the Attorney-Client and Deliberative Process
        Privileges

      Twenty-four documents are withheld in part, Smith Dec. ¶ 34; see Commerce Vaughn pp.

24-26, and 7 documents are withheld in their entirety pursuant to the attorney-client and

deliberative process privileges.  Id.; see Commerce Vaughn pp. 26-28.  The documents and

portions of documents that are withheld from disclosure under the attorney-client privilege (1)

were either prepared by Commerce attorneys to describe the legal advice they were providing to

specifically listed Commerce clients, or (2) were the actual requests for legal advice by the client.

Smith Dec. ¶ 35.  See Mead Data Cent., 566 F.2d 252 ("attorney-client privilege protects

confidential communications between an attorney and his client relating to a legal matter for

which client has sought professional advice.")  The withheld documents or portions of

documents also contain preliminary recommendations to the client and the actual legal advice.

Smith Dec. ¶ 36.  See Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1208 (D.C. Cir.

1992)(documents that provide tips and instructions for handling future litigation protectible).

These "confidential communications between Government lawyers and Commerce clients, which

have not been disclosed outside of the attorney-client relationship[, were properly withheld]."

Smith Dec. ¶ 36.  Further, this information should not be disclosed under the deliberative process

privilege.  The information provided was pre-decisional because it was created prior to any

agency final decision about the matter to which the information related.  Id.  In addition, the

information was deliberative because it consisted of opinions and recommendations on legal matters. Thus, the information is a direct part of the deliberative process and should be protected. Vaughn v. Rosen, 523 F.2d at 1443-44. Any factual information contained in the documents is protected as selectively chosen as part of the decision-making process, and not reasonably segregable. Smith Dec. ¶¶ 36, 37; see Armstrong, 97 F.3d at 578-79.

    c-  Documents Withheld Pursuant to the Attorney Work-Product and Deliberative Process Privileges

Two documents, which consist of information prepared by Commerce attorneys in contemplation of litigation by plaintiff, are withheld in part. Smith Dec. ¶ 38; see Commerce Vaughn p. 28. These documents consist of an e-mail exchange among three Commerce attorneys. Id. These documents were prepared in contemplation of litigation, and are clearly protected under the attorney work-product privilege. See Hickman, 329 U.S. 509-10. The District of Columbia Circuit Court has determined that the privilege "extends to documents prepared in anticipation of foreseeable litigation." Schiller, 964 F.2d at 1208. The litigation need never have actually commenced so long as specific claims have been identified which make litigation probable." See e.g. Hertzberg v. Veneman, 273 F.Supp. 2d 67. 80 (D.D.C. 2003); see also Ludsin v. Small Business Admin., No. 96-2865, slip op. at 3 (D.D.C. April 24, 1997)(holding that privilege covers intra-agency memoranda containing agency attorney's "legal conclusions and reasoning.") Therefore, the e-mail exchange amongst the three Commerce employees should not be disclosed.

This information is also protected under the deliberative process privilege because it consists of deliberations by Commerce attorneys in addressing the anticipated litigation against

the Department of Commerce.  Smith Dec. ¶ 39.  This information should be protected because

the "efficiency of [g]overnment would be greatly hampered if, with respect to legal and policy

matters, . . . government agencies were prematurely forced to "operate in a fishbowl."  Jordan,

591 F.2d at 773.   The release of this pre-decisional deliberative material would discourage open,

frank discussions regarding possible litigation.  Further, the factual information within this e-mail

exchange formed an integral part of the deliberations and is not reasonably segregable.  See

Armstrong, 97 F.2d at 578-79.  Therefore, this e-mail exchange should be protected.

### 3-  The Department of State- Freedom of Information Act Request No. 200504606

The Department of State withheld, in full or in part, 34 documents pursuant to the

deliberative process privilege.  Grafeld Dec. ¶ 18.  This information is predecisional and consists

of opinions intertwined with a limited amount of factual material.  Id.  See Washington Post Co.,

1987 U.S. Dist. LEXIS 16108, at *33 (When factual information is so inextricably connected to

the deliberative material that its disclosure would expose or cause harm to the agency's

deliberations, that factual information can be withheld.).  The disclosure of this information

"would inhibit candid internal discussion and the expression of recommendations and judgments

regarding current problems and preferred courses of action."  Grafeld Dec. ¶ 18.  Disclosure also

would "inhibit the exchange of views between State Department officials and officials of other

departments and agencies regarding policy formulation[,] . . .tactics and strategy.  Id.  Because

"the purpose of the deliberative process privilege is to allow agencies freely to explore alternative

avenues of action and to engage in internal debates without fear of public scrutiny[, these

documents should be protected[]."  Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147

F.3d 708, 710 (8th Cir. 1998).  "All reasonably segregable facts [within these documents] have

32

been disclosed except in those instances where the selection of facts is clearly deliberative."

Grafeld Dec. ¶ 18; see Armstrong, 97 F.3d at 578-79.  Therefore, the thirty-four documents were

properly withheld in full or in part.

      a- Document No. L5.  This document consists of one page of handwritten notes,

dated February 16, 2006.  Grafeld Dec. ¶ 19.  The topic of the e-mail is indicated as "Meeting –

w/NTIA re: GAC."  Id.  Many of these notes are illegible, but they "appear to reflect discussion

of possible changes in the United States Government's relationship with the GAC."  Id.  "The

only responsive part of the document appears to be two lines on the '.xxx issue,' which appear to

reflect a recommendation on [how to] deal with the issue."  Id.  These handwritten notes are pre-

decisional in that they do not reflect any final agency action.  See Jordan, 591 F.2d at 774.  They

are deliberative in that they contain a recommendation on agency policy.  See Vaughn v. Rosen,

523 F.2d at 1143-44.  In addition, because "they are abbreviated and indistinct, [they are] subject

to differing interpretations and, therefore, [are] potentially misleading."  Grafeld Dec. ¶ 19.

Release of this information could create public confusion.  See Russell, 682 F.2d at 1048.  There

is "no meaningful information that may be segregated and released [from the notes]."  Grafeld

Dec. ¶ 19.

      b- Document No. L6A.  This document consists of five pages of an untitled

memorandum or notes from "Richard to David."  Grafeld Dec. ¶ 20.  They are dated December

5, 2005.  "In the first paragraph of this document, the author explicitly states that he is offering

his views on 'the ICANN question' in some depth."  Id.  Only one sentence in the five pages of

analysis mentioned .xxx.  Id.  This document is predecisional because it precedes the adoption of

any agency policy. See Jordan, 591 F.2d at 774.  The document is deliberative because it

expresses the author's opinion on a policy matter of the department.  See Vaughn v. Rosen, 523

F.2d at 1143-44.  There is no meaningful information that may be segregated and released."

Grafeld Dec. ¶ 20.

        c- Document Nos. L8A, E50, E51, E55 and E66.  These documents are different

versions of an information memorandum prepared for the Deputy Secretary of State, from the

Assistant Secretary for Economic and Business Affairs.  Grafeld Dec. ¶ 21.  The subject of the

information memorandum is "Policy Considerations for the Management of the Internet."  Id.

Six pages are withheld including the page identifying the parties involved in drafting and clearing

the memorandum.  Four versions of the memorandum are not dated.  The final version is dated

December 9, 2005.  Id.  This document is predecisional because it predates the adoption of

agency policy.  See Jordan, 591 F.2d at 774.  It is deliberative because it includes

recommendations on policy matters.  See Vaughn v. Rosen, 523 F.2d at 1143-44.  Failure to

protect this type of document would harm the integrity of the deliberative process itself.

        Document Nos. L8A, E50 and E51 are drafts, some with interlineations and in/out

tracking information.  Grafeld Dec. ¶ 21.  Document No. E55 is labeled "final" but it is not

signed.   Document No. E66 is signed, returned to the originator, and has extensive notes in the

margins which were added by the recipient of the memorandum.  Id.  "This memorandum was

initiated in response to 6 questions from the Deputy Secretary of State concerning the future

relationship of the U[nited] S[tates] Government to ICANN."  Id.  "Of the [6] questions

discussed, one relates to the principles that ICANN must apply to approval of a new sTLD such

as .xxx.  Both the questions posed in the memorandum and the answers supplied are deliberative

and pre-decisional, as are the marginal notes . . . ."  Id. These draft documents, by their nature,

are predecisional and deliberative.  Exxon Corp., 585 F.Supp. at 698.  Withholding them protects

the free exchange of ideas within an agency.   There is no meaningful information that can be

segregated and released from the memorandum.  Grafeld Dec. ¶ 21.

       d-  Document Nos. L9A, L10A, E49, E60 and E65.  These documents are

different versions of an information memorandum to the Deputy Secretary of State from the

Assistant Secretary for Economic and Business Affairs, on the subject of "ICANN and the

Internet."  Grafeld Dec. ¶ 22.  One of the versions has seven pages and the remainder have six.

Id.  Four of the versions are undated.  Id.  The final version is dated December 1, 2005.  Id.

Document Nos. L9A, L10A, E49 and E60 are draft versions of the memorandum and

were properly withheld.  See Exxon Corp., 585 F.Supp at 698.  Document No. E65 is signed,

returned to the originator, and has extensive notes in the margins which were added by the

recipient.  Grafeld Dec. ¶ 22.  The memorandum "was prepared in response to six questions from

the Deputy Secretary of State on ICANN, the Internet and the WSIS."  Id.  "In responding to one

of the six questions posed, the memorandum addresse[d] ICANN's pending decision to consider

a new .xxx TLD."  Id.  The questions posed, the answers supplied, and the notes in the margins

of the memorandum are deliberative and pre-decisional, and heir release would "stifle honest and

frank communication within the agency."  Coastal States, 687 F.2d at 866.  "There is some

factual information in this document, but the memorandum's release would not be meaningful

without the underlying question, and the question is an intrinsic element of the deliberative

process."  Grafeld Dec. ¶ 22.  No meaningful information may be segregated and released from

this memorandum.  Id.

e- <u>Document Nos. E52, E57, E58, and E62</u>. These documents "are different versions of an information memorandum to the Deputy Secretary of State from the Assistant Secretary for Economic and Business Affairs on the subject of 'Internet Corporation for Assigned Names and Numbers (ICANN)/Internet Governance: Policy Challenge for 2006.'" Grafeld Dec. ¶ 23. Two versions of the memorandum are undated, and two are dated December 20, 2005. <u>Id</u>. Including the first drafting page, each version consists of five pages. <u>Id</u>.

Document Nos. E52, E57 and E62 are drafts of the memorandum. Document No. E58 is labeled "final," but does not contain a signature or date. <u>Id</u>. "The memorandum endeavors to alert the Deputy Secretary to issues and policy decisions with respect to ICANN that are likely to arise in 2006." <u>Id</u>. There is one reference in the memorandum to "the .xxx issue." <u>Id</u>. This reference is "not related to approval of a .xxx TLD." <u>Id</u>. Rather, the reference "comment[s] on the number of FOIA requests related to .xxx[,] and a correspondingly increased scrutiny of ICANN." <u>Id</u>. The memorandum deals entirely with potential issues and the management of those issues. Therefore, this memorandum is clearly deliberative and pre-decisional. <u>Id</u>. The information in this memorandum comprises part of the process by which governmental decisions and policy decision, are formulated and should be protected. <u>See</u> <u>Sears</u>, 421 U.S. at 150. Further, there is no meaningful information that may be segregated and released from the memorandum. Grafeld Dec. ¶ 23.

f- <u>Document No. E54</u>. This two-paged document is a memorandum from the Acting Director of the Department of State's Bureau of Economic Affairs/Office of Communications and Information Policy ("EB/CIP") to the Assistant Secretary for Economic and Business Affairs. Grafeld Dec. ¶ 24 The memorandum is entitled "1/19/06 Wall Street Journal

36

Article on Threats to Internet," and is undated and unsigned.  Id.  It is in draft form and comments on the press article, which discusses threats to the Internet and proposed alternatives to the Domain Name System ("DNS").  Grafeld Dec. ¶ 25.  "The memorandum notes the increased attention to ICANN[,] and briefly cites several factors, including the proposed .xxx TLD."  Id. The memorandum contains "no further comment on .xxx."  Id.  This draft memorandum's analysis is deliberative, and there is no meaningful information that may be segregated and released from it.  Id.

        g-  Documents No. E14, E20, E31 and E32.  These documents are e-mails from and to United States Government employees.  Grafeld Dec. ¶ 26.  Document No. E14 is two pages long, and consists of three-message chain.  Id.  The subject of this e-mail, dated October 21, 2005, is "Comments from the Deputy DG Peter Zangl (INFO SOC) and MEP Erika Mann on Internet Governance at conference today."  Id.  Document No. E20 is two pages long, and consists of a two-message chain.  Id.  The subject of this e-mail, dated November 2, 2005,  is "NYT/IHT op-ed on internet governance."  Id.  Document No. E31 is a one-paged e-mail, and consists of a two-message chain.  Id.  The subject of this December 8, 2005 e-mail is "AFP Report on New EU Internet Addresses."  Id.  Document No. E32 is a one-paged e-mail consisting of a four-message chain.  Id.  The subject of this December 8, 2005 e-mail is "AFP Report on New EU Internet Addresses."  Id.

    Portions of these e-mails are essentially factual and have been released.  Id.  "Other portions, however, offer interpretation or analysis, or summarize events in such a way as to reveal the underlying analysis."  Id.  "[ I]n [D]ocument [N]o. E14, all of the material related to .xxx is released.  Id.  In [D]ocument [N]o. E20, the excised passage mentions .xxx, but does not

mention ICANN approval of a new TLD or plaintiff's contract to operate .xxx's TLD.  In

[D]ocument [N]o. E31, the excised comment briefly refers to .xxx and the new .eu TLD[.[10]  I]n

[D]ocument [N]o. E32, an additional brief comment refers to ICANN.  Id.  The withheld portions

of these documents are predecisional because they are antecedent to any final action by the

agency.  See Jordan, 591 F.2d at 774.  These documents are also deliberative.  Because the

deliberative process privilege protects not merely documents, but also the integrity of the

deliberative process itself where exposure of that process would result in harm,  Nat'l Wildlife

Fed'n v. U.S. Forest Serv., 861 F.2d at 1119, the interpretation and analysis in these e-mails

should be protected.  Grafeld Dec. ¶ 26.  No meaningful additional material may be segregated

and released.  Id.

      h- Documents No. E15, E16, E28, E29, E30 and E34. These documents consist

of e-mails from and to United States Government employees.  Grafeld Dec. ¶ 27.  Document No.

E15 is a two-paged e-mail consisting of a three-message chain regarding meetings concerning

Internet governance.  Id.  The e-mails are dated October 21 and 24, 2005.  Document No. E16 is

a single message, one-paged e-mail, dated October 24, 2005.  Id.  Its subject is "WSIS Media TPs

for E.doc."  Id.  Document No. E28 is a one-paged e-mail consisting of a three-message chain.

Id. The e-mail is dated December 7, 2005, and its subject is "Internet memo to D." Id.  Document

No. E29 is a two-paged e-mail consisting of a four-message chain.  Id.  The e-mail is dated

December 7 and 8, 2005.  Id.  The subject of the e-mail is "D comments on your IM re ICANN

and the Internet." Id.  Document No. E30 is a two-paged e-mail consisting of a five-message

---

[10].eu TLD is a "top level domain" available for use by any business, person or organization based
in the European Union.  See http://www.eurid.ei/en/general/howToGetEUDomainName.

chain.  The e-mail is dated December 8, 2005, and its subject is "20605 WSIS Internet

memo_D.doc."  Id.  Document No. E34 is two-paged e-mail consisting of a five-message chain.

Id.  The document is dated March 14, 2006.  Id.  Its subject is "E short fuse tasker: tasking

request: U/S Shiner's Interview with Economist's Kenn Cukier."  Id.

"In [D]ocument [N]o. E15, the first message reports on a meeting at which issues in the

ICANN and possible solutions are discussed . . . ."  Id.  "[T]he .xxx issue is noted as an example

of one of those issues."  Id.  The second message provides analysis and proposes action, but does

not mention .xxx.  Id.  The third message forwards the first two messages.  Id.  The chain, as a

whole, is deliberative and pre-decisional.  Id.  It should be protected because it contains analysis

as well as recommendations by Commerce employees.  See Sears, 421 U.S. at 150(documents

commonly encompasses by the deliberative process privilege include recommendations.)  "There

is no meaningful material that may be segregated and released."  Grafeld Dec. ¶ 27.

"Documents [Nos.] E16, E28, E29 and E30 provide commentary on the various

information memoranda on ICANN being prepared for the Deputy Secretary of State."  Id. These

documents address "the questions posed by the Deputy Secretary and the answers to be

provided."  Id. The documents are deliberative and pre-decisional, and there is no meaningful

material that may be segregated and released.  Id.

The five messages in Document No. E34 all concern preparations for a press interview.

Id.  "The focus of the messages is the broad issue of Internet governance and ICANN, and the

only mention of .xxx is to note that [a] journalist had written an article on the subject."  Id.  The

messages are deliberative and pre-decisional.  The release of these messages reflecting the

preparations for a press conference would stifle the full and frank exchange of ideas and opinions

39

regarding this press conference.  Further, "[t]here is no meaningful material that may be segregated and released."  Id.

       i- Document No. E59.  This document is an undated, two-paged paper.  Grafeld Dec. ¶ 28.  It discusses a meeting between Department of State officials and a Japanese official. Id.  This document "is a draft [and] neither the author nor the intended recipients are shown.  The only mention of .xxx is a brief comment about the implications of the issue in Japan."  Id. Because the draft may be inaccurate or incomplete, if it is released, one could be misled about what transpired at the meeting.  Id.  Because the deliberative process privilege endeavors to protect against public confusion, this document should not be released.  "There is no meaningful information that may be segregated and released."  Id.

       j- Document No. E24.  This document is a two-paged e-mail consisting of a four-message chain of e-mails.  Grafeld Dec. ¶ 29.  This document previously was denied in full. Id.  Currently, it is being withheld in part.  Id.  The Department of State determined that three of the messages in this document could be segregated and released.  These messages concern "an agenda for a projected conference call of the 'ICCP Bureau' and subsequent preparation for the call."  Id.  "The final message in the chain [was] from the director of EB/CIP to an NTIA officer preparing material for the call . . . ."  Id.  This message "provides views that are deliberative and pre-decisional . . . ."  Id.  They are part of the give-and-take of the agency's deliberative process and should be protected.  Further, "[t]here is no meaningful material that may be further segregated and released."  Id.

       k- Document Nos. E3, E36, E68, E69 and E70.  These documents are summaries of, or commentaries on, "White House high tech conference calls."  Grafeld Dec. ¶ 30.

Document No. E3 is a three-paged email chain.  The latest date on the chain is August 1, 2005.  The document was released in part.  Id.  "The released portions disclose essentially factual information.  The 6 excised passages of this e-mail chain -- just one of which addresses the .xxx issue -- reflect judgments and analysis that are predecisional deliberative process material . . . ." Id.  Clearly, the commentaries, judgments and analysis should be protected because frank and open discussion on matters of policy should be protected.  See e.g. Russell, 682 F.2d at 1048. "There is no meaningful material that may be further segregated and released [from this document.]" Grafeld Dec. ¶ 30.

Document Nos. E36, E68, E69 and E70 are in the form of a one-paged, undated memoranda, from "Richard" to "David."  Id.  These documents previously were denied in full. They are now being withheld in part.  Id.  The documents may be released in part because they contain factual information that may be released.  Id.  None of the information that continues to be withheld relates to the .xxx issue.  Id.  "The withheld material contains judgments, analysis or anticipated actions that constitute pre-decisional deliberative process material . . . ."  Id.  Again, these judgments and analysis are properly protected under the deliberative process privilege.  In addition, "[t]here is no meaningful material that may be further segregated and released."  Id.

### E.   The Department of Commerce Properly Applied Exemption (b)(6) - Freedom of Information Act Request CRRIF No. 06-668.

Title 5, United States Code, Section 552(b)(6) (hereinafter "Exemption (b)(6)") provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the

Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'" U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc). Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6 because the primary purpose of enacting Exemption 6 was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

    The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue. See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press , 489 U.S. 749, 763 (1989). In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information. See Schell v. U.S. Dep't of Health and Human Services, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v. U.S. Dep't of Housing and Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984). Once a privacy interest has been found to exist, a determination regarding whether information can be properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., Reporters Committee for Freedom of the Press, 489 U.S. at 776-80. If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6. Id. In Public Citizen Health Research Group v. U.S. Dep't of Labor, 591 F.2d 808 (D.C. Cir. 1978), the Court of

42

Appeals stated:

> [s]ince this a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker.  The threat to privacy thus need not be patent or obvious to be relevant.  It need only outweigh the public interest.

591 F.2d at 809.

Here, a portion of one document contains an individual's personal cell phone number. See Smith Dec. ¶ 40; Commerce Vaughn p. 29.  No public interest exists in the personal cell phone number and its disclosure would not contribute to public understanding of the operations or activities of the Government.  Therefore, this information properly was withheld.

### F.  All Reasonably Segregable Information Was Disclosed.

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc., 566 F.2d at 260.

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Id. at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong, 97

43

F.3d at 578-79.  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  <u>Mead Data Cent. Inc.</u>, 566 F.2d at 261, n.55.

As demonstrated through the declarations and Vaughn indices, the Department of Commerce and Department of State have processed and released all reasonably segregable information from the documents provided to plaintiff.  <u>See</u> Smith Dec. ¶ 41; Grafeld Dec. ¶ 31.

<u>IV.  CONCLUSION</u>

The Department of Commerce and Department of State have demonstrated that they responded properly to plaintiff's FOIA requests.  Plaintiff failed to exhaust its administrative remedies with respect to Freedom of Information Act Request No. CRRIF 06-127, and the Department of Commerce's Motion to Dismiss should be granted.  With respect to the Department of Commerce's Freedom of Information Act Request No. CRRIF 06-068 and the Department of State's Freedom of Information Act Request No. 200504606, these agencies have released to plaintiff all reasonably segregable information.  Accordingly, defendants respectfully request that their motion for summary judgment be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531




Of Counsel:

Andrew W. McCready
Senior Counsel
Office of the General Counsel
United States Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C.  22030

Brian Egan
Attorney Adviser
United States Department of State
Office of the Legal Adviser
2201 C Street, N.W.
Washington, D.C.  20520

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of August, 2006, the foregoing was served upon

counsel for plaintiff via the Court's ECF e-mail.  I further certify that the signed original of this

motion shall be retained in the official case file.


_____
MARIAN L. BORUM
Assistant United States Attorney

46