# ICM Registry, LLC v. U.S. Department of Commerce and U.S. Department of State
## Civil Action No. 06-0949

## Smith Declaration
## and Vaughn Index
## Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ICM Registry, LLC | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0949 (JR) |
| United States Department of | ) | |
| Commerce and | ) | |
| United States Department of | ) | |
| State, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF KATHY SMITH

I, Kathy Smith, do hereby state and declare under the penalties for perjury that the following statements are true and correct:

1. I am the Chief Counsel for the National Telecommunications Information Administration (NTIA), which is a component of the U.S. Department of Commerce (Commerce). I have served in this position continuously since January, 2000. In this position I supervise a staff of attorneys which is responsible for providing legal advice to NTIA. I also supervise an individual who serves as the Freedom of Information Act (FOIA) Officer for NTIA. NTIA is the President's principal adviser on telecommunications and information policy issues.

2. This declaration is provided in response to the above-referenced lawsuit brought by ICM Registry, LLC (ICM) as a result of a Freedom of Information Act request (5 U.S.C. § 552).

3. All information herein is based upon knowledge that I have acquired in the performance of my official duties. I have read and am familiar with the FOIA request at issue in this case.

4. The purpose of this declaration is to set forth the chronology of correspondence relating to Plaintiff's FOIA request; explain how Commerce processed Plaintiff's request; explain the search conducted to identify records responsive to Plaintiff's FOIA request; and identify the basis for the redaction or withholding of information from those responsive documents that were partially or fully withheld based on exemptions (b)(5) and (b)(6).

5. By letter dated October 18, 2005 (attached as Exhibit 1), Ronald G. London of Davis Wright Tremaine LLP and Counsel for ICM, filed a FOIA request for all records from March 1, 2005, to

2

the present:[1]

> . . . consisting of or reflecting, representing, recording or otherwise disclosing
> communications, written or oral . . . regarding approval by the Internet Corporation for
> Assigned Names and Numbers ("ICANN"), and/or by its Board of Directors, of the new
> ".xxx" sponsored top-level domain ("sTLD"), and/or ICANN's or its Board's approval of
> ICM Registry's contract to operate the .xxx sTLD . . . .

> . . . consisting of or reflecting, representing, recording or otherwise disclosing
> communications, written or oral . . . between any personnel at the Department of
> Commerce, or any Bureau or other component thereof, and the ICANN Board of
> Directors and its staff, ICANN's Governmental Advisory Committee ("GAC"), any GAC
> member country, or any individuals or agency in a GAC member country, regarding the
> .xxx sTLD.

6. Mr. London's request was addressed to Brenda Dolan, Commerce's FOIA Officer. In
accordance with standard Commerce policies, Ms. Dolan's office logged the request into
Commerce's FOIA tracking system, assigning it CRRIF No. 06-068. In accordance with
15 C.F.R. § 4.5(a), (part of Commerce's FOIA regulations at 15 C.F.R. Part 4, Subpart A), lead
responsibility for responding to the request was assigned to NTIA on October 19, 2005, based on
a determination that NTIA would be likely to have the majority of documents responsive to the
request. The request was also tasked to Commerce's Immediate Office of the Secretary ("OS")
to determine whether it possessed any responsive records. OS was tasked because NTIA
requested the Department's FOIA Officer to formally task OS after NTIA located documents that
originated or were copied to OS employees. OS located responsive documents, which it
provided to NTIA for NTIA to respond to the requester.

7. I directed the search for responsive records in NTIA because the NTIA FOIA Officer was out
of the office at the time the search was to be conducted and, as her supervisor, I assumed this
responsibility. The request was distributed to all NTIA offices with a reasonable likelihood of
having responsive documents, and the staff of these offices conducted a thorough search of NTIA
files, electronic and hard copy, located on NTIA computers, computer disks, desks, filing
cabinets, storage areas, and common areas. I also supervised the document review process
conducted in NTIA to determine which portions of responsive documents should be withheld
under applicable exemptions of the FOIA. I am familiar with the documents located and the
FOIA exemptions asserted.

8. By letter dated November 18, 2005 (attached as Exhibit 2), I responded to the request on

---

[1] Under Commerce regulations in effect at the time ICM's request was received, records
responsive to a request shall include only those records within the Department's possession and
control as of the date the proper component receives the request. 15 C.F.R. § 4.5(a). In this case,
NTIA received the request on October 19, 2006.

3

behalf of NTIA by disclosing certain responsive records, and informing Mr. London that certain documents were being withheld in full or in part based on the deliberative process privilege of 5 U.S.C. § 552(b)(5), that NTIA had also identified documents from other agencies which might be responsive to the request, and that it would respond to the requester after coordinating with those agencies. The letter also informed Mr. London of his right to appeal the partial denial under 15 C.F.R. § 4.9.

9. By letter dated December 2, 2005 (attached as Exhibit 3), Robert Corn-Revere of Davis Wright Tremaine LLP, appealed the initial partial denial on behalf of ICM.

10. By letter dated December 19, 2005 (attached as Exhibit 4), I informed the appellant that NTIA was disclosing additional responsive records and was withholding other documents in full or in part based on the deliberative process privilege of exemption (b)(5) of the FOIA (5 U.S.C. § 552(b)(5)).

11. By letter dated December 21, 2005 (attached as Exhibit 5), I informed the appellant that NTIA was disclosing the final set of documents responsive to the initial request, and that certain portions of the documents were being withheld under the deliberative process privilege of 5 U.S.C. § 552(b)(5).

12. By letter dated January 3, 2006 (attached as Exhibit 6), Mr. Corn-Revere confirmed a telephone conversation he had with Andrew W. McCready of Commerce's Office of General Counsel, in which Mr. Corn-Revere agreed to treat ICM's appeal with respect to NTIA's December 19 and 21, 2005, supplemental responses as one with the original appeal. Mr. Corn-Revere's letter also mentioned the possibility of his client holding the appeal in abeyance for two weeks. By letter dated January 4, 2006 (attached as Exhibit 7), Mr. McCready confirmed the foregoing telephone conversation, as well as a separate telephone conversation he had on January 4, 2006, in which Mr. Corn-Revere informed him that his client had agreed to grant Commerce a two-week extension in responding to the appeal. On May 19, 2006, Mr. Corn-Revere filed the instant litigation in the U.S. District Court for the District of Columbia against the Departments of Commerce and State.

13. By letter dated July 13, 2006 (attached as Exhibit 8), Commerce responded to the appeal.

### I. Basis for Withholding Documents

14. With the exception of a portion of one document,[2] the documents at issue in this litigation are partially or entirely withheld pursuant to FOIA Exemption (b)(5), 5 U.S.C. § 552(b)(5), which protects from disclosure "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." Exemption

---

[2] This document was withheld under FOIA exemption (b)(6) (5 U.S.C. § 552(b)(6)), as is discussed in Paragraph 40 below.

4

(b)(5) applies to information normally privileged in the civil discovery context and includes common law privileges including the agency's pre-decisional deliberative process privilege, attorney-client privilege, and attorney work-product privilege.

<u>Documents Withheld Solely Pursuant to the Deliberative Process Privilege</u>

15.  One hundred forty-one documents are withheld in part and 52 documents are withheld in their entirety based solely on the deliberative process privilege incorporated within exemption (b)(5) of the FOIA. The foregoing documents are described in Sections I and II, respectively, of the <u>Vaughn</u> Index, which is attached.

16.  The material that is exempt from disclosure under the deliberative process privilege consists of internal Government recommendations and opinions relating to the Government's response if the Internet Corporation for Assigned Names and Numbers (ICANN) were to recommend the creation of the proposed new .xxx domain and/or enter into a contract with ICM to operate an .xxx domain.

17.  The documents and portions of documents withheld under the deliberative process privilege are part of a deliberative process relating to the U.S. Government's response described in Paragraph 16, in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

18.  The material withheld solely under the deliberative process privilege includes the following categories of documents: e-mail messages; draft letters; draft documents other than letters; talking points and questions and answers; handwritten notes; and miscellaneous documents. The information withheld in these categories is explained more fully below.

<u>E-mail Messages</u>

19.  One hundred two documents are withheld in part under this category, which consists of internal Government e-mails among Commerce, Department of State, and White House staff (some of the e-mails include attachments also withheld under the deliberative process privilege). The withheld portions reflect the give and take of predecisional Government deliberations as ICANN considered ICM's application for a proposed new .xxx domain, and/or negotiated a draft contract with ICM to operate the .xxx domain. The withheld portions are part of a deliberative process, or series of decisions, relating to the Government's response described in Paragraph 16 in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

20.  The withheld portions are predecisional in that they precede final decisions by Commerce on the matters to which they relate (and in many cases no final decisions have been made on them), and deliberative because they constitute opinions and recommendations on those matters. These e-mails, created by Government employees, offer opinions to and recommendations for Commerce decisionmakers. To the extent that factual information is included in the

5

recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in developing its views.

21. The withheld portions are predecisional and deliberative, and their release would discourage open and frank discussions, and disclose opinions and recommendations relating to the Government's response as described in Paragraph 16. Release would also create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action because ICANN did not approve ICM's application for a proposed new .xxx domain and did not enter into a contract with ICM to operate the .xxx domain. Descriptions of the e-mail messages are included in section I.A of the Vaughn Index.

<u>Draft Letters</u>

22. Sixteen documents are withheld in part and ten in their entirety under this category, which consists of draft letters written by Commerce employees on various subjects (in some cases the draft letters are attached to e-mails which have been released in their entirety), such as draft responses to individuals who wrote to Commerce about .xxx and draft letters to ICANN, as well as staff comments on those draft responses under the deliberative process privilege. They are recommendations to a Commerce decisionmaker as to how to address various issues in a final letter, and what that letter should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within Commerce about what the final letters should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

23. To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision making process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in determining how best to respond to the requests for information. Descriptions of the draft letters withheld in part are included in section I.B, and descriptions of the draft letters withheld in their entirety are included in section II.B, of the Vaughn Index.

<u>Miscellaneous Draft Documents (excluding draft letters)</u>

24. Six documents are withheld in their entirety under this category, which consists of drafts written by Commerce employees on various subjects, such as invitations and briefing statements, and staff comments on those drafts. They are recommendations to a Commerce decisionmaker as to how to address various issues in a final document, and what that document should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within Commerce about what the final documents

6

should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

25. To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in determining how best to respond to the requests for information. Descriptions of the miscellaneous draft documents (excluding draft letters) are included in section II.C of the <u>Vaughn</u> Index.

Talking Points /Questions & Answers

26. Seventeen documents are withheld in part and 25 documents are withheld in their entirety under this category, which consists of documents prepared by Commerce employees for Commerce decisionmakers to consider in making presentations related to .xxx and in responding to public inquiries on .xxx. The decisionmakers did not adopt the talking points wholesale, or use all the recommended answers to questions, but picked the information they felt was most useful for their presentations. They constitute recommendations to decisionmakers on how to present Commerce views.

27. To the extent that factual information is included in the recommendations, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in developing its views.

28. The documents are predecisional deliberative documents, the release of which would discourage open, frank discussions on Commerce's public presentations related to .xxx and on responding to inquiries concerning Commerce views on .xxx., disclose opinions and recommendations, and could create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein. Descriptions of the talking points/questions and answers withheld in part are included in section I.C, and descriptions of the talking points withheld in their entirety are included in section II.A, of the <u>Vaughn</u> Index.

Handwritten Notes

29. Ten documents are withheld in their entirety under this category, which consists of notes taken by Commerce employees at various meetings, as well as notes made by employees as part of the decisionmaking process itself. The withheld information reflects the Commerce employees' deliberations concerning issues such as the public response to the possible creation of a new .xxx TLD. They represent opinions and recommendations for decisionmakers to evaluate. To the extent that factual information is included in the recommendations, it is protected by deliberative process privilege because the facts in the documents were selectively chosen as part

7

of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in developing its views.

30. These are predecisional deliberative documents, the release of which would discourage open, frank discussions, and disclose opinions and recommendations about issues such as those mentioned in the preceding paragraph, and could create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein. Descriptions of the handwritten notes are included in section II..D of the Vaughn Index.

Miscellaneous Documents

31. Six documents are withheld in part and one document in its entirety under this category, which consists of documents written by Commerce employees on various subjects, including, for instance, notes from an incoming call log for the NTIA Public Affairs Office, and a document entitled "NTIA Planning Meeting 7/14-7/15/05." The withheld documents consist of the U.S. Government's deliberations relating to ICANN's consideration of the ICM application for a proposed new .xxx domain, and its negotiation of a draft contract with ICM to operate the .xxx domain. The withheld documents are part of a deliberative process, or series of decisions, in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

32. The withheld portions are predecisional in that they precede final decisions by Commerce on the matters to which they relate (and in many cases no final decisions have been made on them), and deliberative because they constitute opinions and recommendations on those matters. To the extent that factual information is included in the recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in deciding on the issues, and is not reasonably segregable.

33. The withheld documents are predecisional and deliberative, and their release would discourage open, frank discussions on policy development, disclose opinions and recommendations, and create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein. Descriptions of the miscellaneous documents withheld in part are included in section I.D, and descriptions of the miscellaneous documents withheld in their entirety are included in section II.E, of the Vaughn Index.

<u>Documents Withheld Pursuant to the Attorney-Client and Deliberative Process Privileges</u>

34. Twenty-four documents are withheld in part and seven documents in their entirety pursuant to the attorney-client and deliberative process privileges.

8

35.  The documents and portions of documents that are exempt from disclosure under the attorney-client privilege were either prepared by Commerce attorneys to describe legal advice the attorneys were providing to the specifically listed Commerce clients in response to requests by those clients for legal advice, or are the actual requests for advice by the client.  The withheld documents or portions of documents describe confidential communications between Government lawyers and Commerce clients, which have not been disclosed outside of the attorney-client relationship.  Disclosing this information would reveal confidential communications between Government attorneys and clients in Commerce, which have not been disclosed outside of the attorney-client relationship.

36.  The withheld documents or portions of documents also consist of deliberations concerning the legal matter as to which advice is sought, in the form of a preliminary request for advice from the client, preliminary recommendations, and the legal advice sought.  All of the foregoing information is part of the deliberations undertaken by Commerce decisionmakers to address legal issues raised by Commerce employees, and is protected by the deliberative process privilege.  Even the final legal advice provided to the client is deliberative in that it constitutes a recommendation to the client, which the client may accept or reject before making the final decision (or recommending a course of action for another decisionmaker) for the Government.

37.  The release of this pre-decisional deliberative material would discourage open, frank discussions on those issues, disclose opinions and recommendations which formed an integral part of the decisionmaking process, and create public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for action.  The withheld documents or portions of documents do not represent final agency decisions on the matters contained therein.  To the extent that factual information is included within the withheld material, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process.  The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in deciding on the issues, and is not reasonably segregable.  Descriptions of the documents withheld in part pursuant to the attorney-client and deliberative process privileges are included in section III, and descriptions of the documents withheld in their entirety pursuant to the attorney-client and deliberative process privileges are included in section IV, of the Vaughn Index.

### Documents Withheld Pursuant to the Attorney Work-Product and Deliberative Process Privileges

38.  Two documents are withheld in part under this category, which consists of information prepared by Commerce attorneys in contemplation of litigation brought against Commerce by ICM.  The information protected consists of an e-mail exchange among three Commerce attorneys.  To the extent the protected material includes factual material, it also is protected under the privilege.

39.  The information withheld under the attorney work-product privilege also consists of deliberations concerning the legal matter at issue.  All of the foregoing information is part of the

9

deliberations undertaken by Commerce attorneys to address anticipated litigation against Commerce, and is protected by the deliberative process privilege. The release of this pre-decisional deliberative material would discourage open, frank discussions on that issue, disclose opinions and recommendations which formed an integral part of the decisionmaking process, and create public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for action. The withheld portions of documents do not represent final agency decisions on the matters contained therein. To the extent that factual information is included within the withheld material, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in deciding on the issues, and is not reasonably segregable. Descriptions of the documents partially withheld pursuant to the attorney work-product and deliberative process privileges are included in section V of the Vaughn Index.

### Exemption (b)(6)

40. This category includes only a portion of one document consisting of an individual's personal cell phone number, which is withheld pursuant to exemption (b)(6). Exemption (b)(6) protects personal privacy interests and exempts from disclosure all information about individuals in "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of personal privacy." The term "similar files" has been interpreted broadly to apply to any information which applies to a particular individual. Whether disclosing the information at issue would constitute a clearly unwarranted invasion of personal privacy requires a balancing of the public interest in disclosure against the individual's interest in privacy. The information pertains to a particular person, and thus is a "similar file." Under the FOIA, disclosure of information is in the public interest if it would contribute to public understanding of the operations or activities of the Government. An individual's personal cell phone number is personal information the disclosure of which would not contribute to public understanding of the operations or activities of the Government. No public interest exists in an individual's personal cell phone number, whereas the individual has a privacy interest in this information. Accordingly, the privacy interest outweighs the public interest, and the information has been withheld. A description of the information withheld pursuant to FOIA exemption (b)(6) is included in section VI of the Vaughn Index.

### Segregation of Factual Information

41. In connection with the review of documents which are the subject of this suit, Commerce has made a good faith effort to segregate all factual portions of these documents which are not protectable under the exemptions set forth above. All such segregable portions have been released to the requester.

### Vaughn Index and Additional Document Release

42. The Vaughn Index is attached to this Declaration. It is an index of the documents being

10

withheld in their entirety and the documents being withheld in part.

43. Forty-eight documents are being released in part (attached as Exhibit 9 are the <u>Vaughn</u> Index numbers of these documents) and 22 in their entirety with the filing of this Declaration. Portions of some of these documents (or possibly even some entire documents) have already been released by Commerce in its responses to the initial request and appeal. Those portions of the 48 partially released documents that continue to be withheld are indicated with brackets on the documents. The basis for withholding those portions is the deliberative process privilege of exemption (b)(5) of the FOIA (5 U.S.C. § 552(b)(5)) and also, when indicated with "a/c," the attorney-client privilege of exemption (b)(5).

I certify under penalty of perjury that the foregoing is true and correct.


Executed on this 8th day of August, 2006.

Kathy Smith

## VAUGHN INDEX

### I. Documents Withheld in Part Solely Under the Deliberative Process Privilege

#### A. E-mail Messages

The following documents are withheld in part under the (b)(5) deliberative process privilege. The withheld portions consist of internal Government e-mails among Department of Commerce (DOC) staff, and among DOC, White House, and Department of State staff, relating to the Government's response if the Internet Corporation for Assigned Names and Numbers (ICANN) were to recommend the creation of a proposed new .xxx domain and/or enter into a contract with ICM Registry, LLC (ICM) to operate an .xxx domain. The withheld material consists of internal Government recommendations and opinions which were used in the Government's deliberations as ICANN considered ICM's application for a proposed new .xxx domain, and/or negotiated a draft contract with ICM to operate the .xxx domain. The withheld portions are part of a deliberative process, or series of decisions, relating to the Government's foregoing response in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

The withheld portions are predecisional in that they precede final decisions by the DOC on the matters to which they relate (and in many cases no final decisions have been made on them), and deliberative because they constitute opinions and recommendations on those matters. These e-mails, created by Government employees, reflect opinions, and recommendations for DOC decisionmakers. To the extent that factual information is included in the recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in developing policy.

The withheld portions are predecisional and deliberative, and their release would discourage open and frank discussions, and disclose opinions and recommendations relating to the U.S. Government's response to the possible creation of a proposed new .xxx domain and/or ICANN negotiating a contract with ICM to operate an .xxx domain. Release would also create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action because ICANN did not approve ICM's application for a proposed new .xxx domain and did not enter into a contract with ICM to operate the .xxx domain.[1]

**The following e-mails (EP153-EP163) include the subject line "BBC Article on .xxx delay," and the only information being withheld is 1-3 paragraphs (or portions thereof) on the first of the four pages of each e-mail, which consist of recommendations and opinions of DOC employees Suzanne Sene, Fiona Alexander and, in EP163, John Kneuer concerning answering questions sent to the DOC by the Government Advisory Committee of ICANN**

---

[1] For the e-mails listed in this section (I.A), the names of the senders and recipients are provided, except that individuals designated to receive only a "cc" of an e-mail are not listed.

**(the foregoing questions have already been released in the e-mails at issue).**

**EP153 August 16, 2005** - 4 Pages.  The e-mail message that includes the redacted portion is from DOC employee Suzanne Sene to DOC employees Clyde Ensslin, Ranjit Desilva, Eric Stark, Fiona Alexander, James Wasilewski, John Kneuer, Kathy Smith, Meredith Attwell, Michael Gallagher, and Robin Layton.

**EP154 August 16, 2005** - 4 Pages.  Same sender and recipients as EP153.

**EP155 August 16, 2005** - 4 Pages.  Same sender and recipients as EP153.

**EP156 August 16, 2005** - 4 Pages.  Same sender and recipients as EP153.

**EP157 August 16, 2005** - 4 Pages.  Same sender and recipients as EP153.

**EP158 August 16, 2005** - 4 Pages.  Sent by DOC employee Fiona Alexander to DOC employees Clyde Ensslin, R. Desilva, Eric Stark, Suzanne Sene, James Wasilewski, John Kneuer, Kathy Smith, Meredith Attwell, Michael Gallagher, and Robin Layton.

**EP159 August 16, 2005** - 4 Pages.  Same sender and recipients as EP158.

**EP160 August 16, 2005** - 4 Pages.  Same sender and recipients as EP158.

**EP161 August 16, 2005** - 4 Pages.  Same sender and recipients as EP158.

**EP162 August 16, 2005** - 4 Pages.  Same sender and recipients as EP158.

**EP163 August 16, 2005** - 4 Pages.  From DOC employee Suzanne Sene to DOC employee John Kneuer

**The first two e-mails below (EP-33-EP34) include in the subject line "Draft WSIS Briefing Invite." The third e-mail, MPW14, includes in the subject line "Revision of Congressional Internet Caucus Invite," and concerns the same matters as EP33-EP34.**

**EP33   August 31, 2005** - 3 pages.  From DOC employee Fiona Alexander to DOC employees Robin Layton and Tracey Rhoades, in which four lines consisting of opinions of Ms. Alexander concerning the draft briefing invitation are redacted on the first page; a one-page draft World Summit on the Information Society (WSIS) briefing invitation has been released in its entirety.

**EP34   August 31, 2005** - 2 pages.  From DOC employee Fiona Alexander to Department of State employee Sally Shipman, in which three lines consisting of opinions of Ms. Alexander concerning the draft briefing invitation are redacted on the first page.

2

**MPW14September 1, 2005** - 2 pages.  From DOC employee Fiona Alexander to DOC employee Robin Layton.  The only redaction is two lines consisting of Ms. Alexander's deliberations concerning revision of a draft WSIS briefing invitation.

**The following e-mails (EP59-61) include in the subject line "ICANN."**

**EP59    June 2, 2005** - 1 page.  From DOC employee Michael Gallagher to DOC employee Meredith Attwell, with first paragraph redacted, consisting of Mr. Gallagher's opinions related to ICANN's decision about the .xxx domain.

**EP60    June 2, 2005** - 2 pages.  From DOC employee Meredith Attwell to DOC employee Michael Gallagher, with same redaction as EP59 plus one more paragraph redacted from the first page, consisting of Ms. Attwell's comments on a draft document on ICANN that she was preparing.

**EP61    June 2, 2005** - 2 pages.  From DOC employee Fred Schwien to DOC employee Meredith Attwell.  Two lines from a message from Mr. Schwien to Ms. Attwell and two paragraphs from a message from Ms. Attwell to Mr. Schwien are redacted.  The redacted portions consist of their opinions about ICANN's decision to negotiate a contract for the .xxx domain.

**The following e-mails (EP62-EP69) among DOC employees include in the subject line "Michael Reagan Supports .xxx," and the same paragraph of e-mail text is being withheld in each; the remainder of each document has already been released.  The redacted portion consists of an e-mail message from DOC employee Meredith Attwell consisting of her opinions regarding ICANN's decision to negotiate a contract for the .xxx domain**

**EP62    June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employees Christine Gunderson and Clyde Ensslin.

**EP63    June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employees John Kneuer and Michael Gallagher.

**EP64    June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employee James Wasilewski.

**EP65    June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employee John Bailey.

**EP66    June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employees Cathy Handley, Robin Layton, and Suzanne Sene.

**EP67    June 16, 2005** - 2 pages.  From DOC employee Clyde Ensslin to DOC employee Chuck Fuqua.

3

**EP68  June 16, 2005** - 2 pages.  From DOC employee Clyde Ensslin to DOC employee Chuck Fuqua.

**EP69  June 16, 2005** - 2 pages.  From Ms. Attwell to DOC employees Cathy Handley, Robin Layton, and Suzanne Sene.

**The following e-mails (EP80-EP89) among DOC employees include in the subject line "pto needs background/talking points re wsis and .xxx," and the same approximately eight lines of e-mail text is being withheld in each; the remainder of each document has already been released.  The redacted language consists of a portion of a message from DOC employee Amy Cotton consisting of her opinions on what she would like to be included in background/talking points for an upcoming World Summit on the Information Society (WSIS) meeting, and questions she poses about U.S. Government positions relating to ICANN and Internet governance.**

**EP80 - September 12, 2005** - 1 page.  From Ms. Cotton to DOC employees Robin Layton, Fiona Alexander, and Suzanne Sene.

**EP81  September 12, 2005** - 1 page.  Same sender and recipients as EP80.

**EP82  September 12, 2005** - 1 page.  From DOC employee Suzanne Sene to DOC employees Cathy Handley, Robin Layton, and Fiona Alexander.

**EP83  September 12, 2005** - 1 page.  Same sender and recipients as EP82.

**EP84  September 12, 2005** - 3 pages.  From DOC employee Fiona Alexander to DOC employees Cathy Handley, Robin Layton, and Suzanne Sene.

**EP85  September 12, 2005** - 3 pages.  Same sender and recipients as EP84.

**EP86  September 12, 2005** - 3 pages.  From Ms. Layton to DOC employees Cathy Handley, Fiona Alexander, and Suzanne Sene, and Amy Cotton.

**EP87  September 12, 2005** - 3 pages.  From Ms. Cotton to DOC employees Robin Layton, Cathy Handley, Fiona Alexander, and Suzanne Sene.

**EP88  September 15, 2005** - 2 pages.  From Ms. Cotton to DOC employee Robin Layton.

**EP89  September 15, 2005** - 2 pages.  From DOC employee Robin Layton to DOC employees Amy Cotton, Fiona Alexander, and Suzanne Sene.

**The following e-mails (EP90-EP92) between DOC employees Clyde Ensslin and Christine Gunderson include in the subject line "Quote from June 6 Cnet news report by Declan**

4

McCullagh, June 12 AP."

**EP90**   **June 17, 2005** - 1 page.  Three lines have been redacted from the e-mail from Mr. Ensslin to Ms. Gunderson consisting of Mr. Ensslin's opinions relating to how a news reporter interpreted a conversation Mr. Ensslin had with him related to ICANN's decision to negotiate a contract for the .xxx domain.

**EP91**   **June 17, 2005** - 2 pages.  From Ms. Gunderson to Mr. Ensslin, with same redaction as EP90.

**EP92**   **June 17, 2005** -1 page.  From Mr. Ensslin to Ms. Gunderson, with same redaction as EP90 plus two more lines redacted from the beginning of the e-mail, consisting of Mr. Ensslin's further opinions on the matters discussed in the entry for EP90 above.

**The following e-mails (EP109-EP115, EP139) include in the subject line ".XXX," and the same two paragraphs (approximately six lines) of text is being withheld in each, consisting of a question and answer written by DOC employee Meredith Attwell which reflect her opinions on the DOC's role with respect to certain functions of ICANN.  The remainder of each document has already been released (or, in the case of EP139, is being released with the filing of this Vaughn Index).**

**EP109 June 15, 2005** - 1 page.  From Ms. Attwell to DOC employee Christine Gunderson.

**EP110 June 15, 2005** - 2 pages.  Same recipient and sender as EP109.

**EP111 June 16, 2005** - 1 page.  From DOC employee Clyde Ensslin to Ms. Attwell.

**EP112 June 16, 2005** - 1 page.  From Ms. Attwell to DOC employee James Wasilewski.

**EP113 June 16, 2005** - 1 page.  From Ms. Attwell to DOC employees Cathy Handley, Robin Layton, and Suzanne Sene.

**EP114 June 16, 2005** - 1 page.  From Ms. Attwell to DOC employee John Bailey.

**EP115 June 16, 2005** - 2 pages.  From DOC employee Cathy Handley to Ms. Attwell.

**EP139 June 16, 2005** - 1 page.  From Ms. Attwell to DOC employees Cathy Handley, Robin Layton, and Suzanne Sene.

**The following e-mails (EP116-EP120, EP125-EP126) include in the subject line ".XXX."**

**EP116 August 1, 2005** - 1 page.  From DOC employee Meredith Attwell to White House employees Helen Domenici and Richard Russell, of which four lines have been redacted,

consisting of Ms. Attwell's opinions related to .xxx.

**EP117 August 1, 2005** - 1 page. Identical redaction to EP116.

**EP118 August 2, 2005** - 1 page. From DOC employee John Kneuer to DOC employees David Bearden, David Bohigian, John Bailey, Kathy Smith, and Meredith Attwell, of which one sentence (about two lines) has been redacted. The redactions consists of Mr. Kneuer's opinion on an objective of an upcoming meeting.

**EP119 August 3, 2005** - 1 page. Identical redaction to EP118.

**EP120 August 3, 2005** - 1 page. Identical redaction to EP118.

**EP125 June 17, 2005** - 1 page. From DOC employee Meredith Attwell to White House employees Helen Domenici and Richard Russell, of which seven lines are redacted. The redaction consists of Ms. Attwell's opinions on ICANN's decision to enter into negotiations on an .xxx contract. The three line response of Mr. Russell to Ms. Attwell and Ms. Domenici is entirely redacted, and consists of his questions about .xxx.

**EP126 June 17, 2005** - 2 pages. Identical redactions to EP125 with two additional e-mails entirely redacted: one from DOC employee Meredith Attwell to White House employees Helen Domenici and Richard Russell, which consists of her response to Mr. Russell's questions mentioned in the description to EP125; the other from Mr. Russell to Ms. Attwell and Ms. Domenici consists of his further questions about .xxx.

**The following e-mails (EP133-EP138, EP148) include in the subject line ".XXX," and the same sentence (approximately two lines) of e-mail text is being withheld in each; the remainder of each document has already been released. The redactions consist of a portion of an e-mail from DOC employee John Kneuer consisting of his opinion on an objective of an upcoming meeting.**

**EP133 August 2, 2005** - 1 page. From DOC employee John Bailey to DOC employee John Kneuer (the redacted e-mail message is from Mr. Kneuer to DOC employees David Bohigian, John Bailey, David Bearden, Kathy Smith, and Meredith Attwell).

**EP134 August 2, 2005** - 1 page. From DOC employee Kathy Smith to Mr. Kneuer (the redacted e-mail message is from Mr. Kneuer to Ms. Smith).

**EP135 August 2, 2005** 1 page. From DOC employee David Bohigian to DOC employees John Kneuer, John Bailey, David Bearden, Kathy Smith, and Meredith Attwell (the redacted e-mail message has the same sender and recipients as the redacted message in EP133).

**EP136 August 3, 2005** - 1 page. From DOC employee John Bailey to DOC employees John

6

Kneuer, David Bearden, Kathy Smith, and Meredith Attwell (the redacted e-mail message has the same sender and recipients as the redacted message in EP133).

**EP137 August 3, 2005** - 1 page. From DOC employee John Kneuer to DOC employees David Bearden, David Bohigian, John Bailey, Kathy Smith, and Meredith Attwell (the redacted e-mail message has the same sender and recipients as the redacted message in EP133).

**EP138 August 3, 2005** - 2 pages. From DOC employee David Bohigian to DOC employees John Kneuer, John Bailey, David Bearden, Kathy Smith, and Meredith Attwell (the redacted e-mail message has the same sender and recipient as the redacted message in EP134).

**EP148 August 2, 2005** - 1 page. From DOC employee John Kneuer to DOC employees David Bearden, David Bohigian, John Bailey, Kathy Smith, and Meredith Attwell.

**The redacted portions of the following e-mails (EP128-EP132, EP104, EP35-EP36) consist of deliberations among DOC employees related to the ".xxx letter to ICANN" (the e-mails include the preceding quoted language in their subject line, except for EP104, the subject line of which instead includes "PDF File of Asst. Sec. Gallagher's Letter to Dr. Cert (8-11-2005) Attached," and EP35-36, which instead include "Draft .xxx letter" in their subject line). The same three lines have been redacted from documents EP128-EP132, consisting of deliberations of DOC employee Meredith Attwell about the .xxx letter to ICANN (hereinafter "Gallagher Letter"). The final version of the Gallagher Letter has been released.**

**EP128 August 10, 2005** - 1 page. From Ms. Attwell to DOC employee Tracey Rhoades.

**EP129 August 10, 2005** - 1 page. Same sender and recipient as EP128.

**EP130 August 11, 2005** - 1 page. From DOC employee Suzanne Sene to Ms. Attwell and Ms. Rhoades (the redacted e-mail message is from Ms. Attwell to Ms. Sene).

**EP131 August 11, 2005** - 1 page. From DOC employee Tracey Rhoades to DOC employee Suzanne Sene (the redacted portion of the e-mail is from Ms. Attwell to Ms. Rhoades).

**EP132 August 12, 2005** - 1 page. From DOC employee Suzanne Sene to Ms. Attwell (the redacted e-mail message is from Ms. Attwell to Ms. Sene).

**EP104 August 11, 2005** - 1 page. From DOC employee Fiona Alexander to DOC employees Kathy Smith, Robin Layton, and Suzanne Sene, of which three lines of Ms. Alexander's message are redacted, consisting of her deliberations on the Gallagher Letter.

**EP35   August 9, 2005** - 1 page. From White House employee Helen Domenici to Ms. Attwell,

7

of which the entire message has been redacted, consisting of her deliberations relating to
the draft Gallagher Letter. About three lines have been redacted from a message from
Ms. Attwell, consisting of deliberations relating to the preparation of a draft Gallagher
Letter. The latter message was sent to Ms. Domenici and White House employee Richard
Russell; State Department employees Sally Shipman and David Gross; and DOC
employees Chuck Fuqua, David Bohigian, and John Bailey.

**EP36** **August 9, 2005** - 1 page. From White House employee Helen Domenici to Ms. Attwell,
of which four lines have been redacted, consisting of a recommendation and question
relating to the draft Gallagher Letter.

**The redacted portions of the following e-mails (EP143-EP146, EP30-EP32) consist of
recommendations to a DOC decisionmaker on addressing various issues related to the
drafting (including the content) and use of a final form letter to individuals who wrote to
the DOC on .xxx.**

**EP143** **September 26, 2005** - 1 page. From DOC employee Tracey Rhoades to DOC employee
Eric Stark, of which the entire e-mail text (i.e., about 19 lines constituting the entire
document except for the heading at the top of the page with the date, time, subject and
names of sender and recipient) has been redacted, consisting of Ms. Rhoades'
recommendation on the content of an .xxx response letter template.

**EP144** **September 26, 2005** - 1 page. From DOC employee Eric Stark to DOC employee
Maureen Lewis, which includes the same e-mail message and redaction as EP143.

**EP145** **September 26, 2005** - 1 page. From DOC employee Maureen Lewis to DOC employee
Eric Stark, with the same e-mail message and redaction as EP143.

**EP146** **September 29, 2005** - 1 page. From DOC employee Maureen Lewis to DOC employee
Sheree Cheung, of which four lines have been redacted, consisting of recommendations
on the content of an .xxx form response letter.

**EP30** **June 28, 2005** - 1 page. From DOC employee Meredith Attwell to DOC employees
Clyde Ensslin and Maureen Lewis. Two lines from an included message from Ms. Lewis
to Ms. Attwell have been redacted, consisting of Ms. Lewis' question about how the form
letter would be used after it is finalized.

**EP31** **June 28, 2005** - 1 page. From DOC employee Maureen Lewis to DOC employee
Meredith Attwell, with same included message and redaction as in EP30.

**EP32** **September 29, 2005** - 2 pages. From DOC employee Maureen Lewis to DOC employee
Eric Stark. The entire three-line message has been redacted, which concerns how and by
whom the form letter was developed, and containing a recommended change in the letter.

Also includes same message and redaction as in EP30.

**The redacted portions of the following e-mails (EP20-EP28) include in their subject line "Draft Talkers and Email Response" and consist of deliberations among DOC employees on the content of a final letter to individuals who wrote to the DOC on .xxx, and on talking points concerning .xxx.**

EP20   **June 17, 2005** - 1 page. From DOC employee Meredith Attwell to DOC employees Aimee Strudwick, Claire Buchan, Chuck Fuqua, Christine Gunderson, Chris Israel, Clyde Ensslin, John Bailey, and Michael Gallagher. Five lines were redacted, consisting of a recommendation on the content of a paragraph to be included in a final letter to individuals who wrote to the DOC on .xxx, and on talking points concerning .xxx.

EP21   **June 17, 2005** - 1 page. Same sender, recipients, and redaction as EP20.

EP22   **June 17, 2005**- 2 pages. From DOC employee Chuck Fuqua to DOC employees Meredith Attwell, Aimee Strudwick, Claire Buchan, Christine Gunderson, Chris Israel, Clyde Ensslin, John Bailey, and Michael Gallagher. Three lines were redacted in the message from Mr. Fuqua, consisting of his recommendation on the content of a paragraph to be included in a final letter to individuals who wrote to the DOC on .xxx, and on talking points concerning .xxx. Also includes same message and redaction as in EP20.

EP23   **June 17, 2005** - 2 pages. From DOC employee Meredith Attwell to DOC employee Chuck Fuqua. Four lines consisting of recommendations and opinions about the content of draft talking points on .xxx have been redacted. Also includes same messages and redactions as EP22.

EP24   **June 17, 2005** - 2 pages. From DOC employee Aimee Strudwick to DOC employee Chuck Fuqua. Includes same messages and redactions as in EP22.

EP25   **June 20, 2005** - 3 pages. From DOC employee Chuck Fuqua to DOC employees Clyde Ensslin and Aimee Strudwick. Includes same messages and redactions as EP22.

EP26   **June 20, 2005** - 4 pages. From DOC employee Aimee Strudwick to DOC employee Chuck Fuqua. Includes same redactions as EP22, printed twice (the same two paragraphs that are redacted are printed on pages 2 and 3 of the document).

EP27   **June 20, 2005** - 3 pages. From DOC employee Chris Israel to DOC employee Aimee Strudwick. Includes same messages and redactions as in EP22.

EP28   **June 20, 2005** - 4 pages. From DOC employee Aimee Strudwick to DOC employee Chris Israel. Includes same messages and redactions as in EP22.

The following e-mails (AC1-AC8, EP5) include in the subject line "Call from Family Research Council." The same 3-4 line message consisting of the opinions and recommendations of DOC employee Jeff Joyner concerning the provision of talking points on .xxx are redacted in each document. Also, in AC5-AC8, an additional one-line message (the same in all four documents) is redacted, consisting of a recommendation and a question from DOC employee Meredith Attwell to Mr. Joyner on the provision of talking points. In AC7-AC8, an additional one-line message (the same in both documents) from DOC employee Robin Layton to Mr. Joyner and Ms. Attwell has been redacted, consisting of a predecisional request regarding preparation of talking points on .xxx.

**AC1 June 14, 2005** - 1 Page. From Mr. Joyner to Ms. Attwell.

**AC2 June 14, 2005** - 1 Page. From Ms. Attwell to DOC employee James Wasilewski.

**AC3 June 14, 2005** - 1 Page. From Mr. Joyner to Ms. Attwell.

**AC4 June 14, 2005** - 1 Page. From Mr. Joyner to Ms. Atwell.

**AC5 June 14, 2005** - 1 Page. From Ms. Atwell to Mr. Joyner.

**AC6 June 14, 2005** - 1 Page. From Ms. Attwell to Mr. Joyner.

**AC7 June 14, 2005** - 1 Page. From Ms. Layton to Mr. Joyner and Ms. Attwell.

**AC8 June 14, 2005** - 1 Page. From Ms. Layton to Mr. Joyner and Ms. Attwell.

**EP5 June 14, 2005** - 1 Page. From Mr. Wasilewski to Ms. Attwell.

**Miscellaneous e-mails**

**EP102 June 20, 2005** - 2 pages. From DOC employee Christine Gunderson to DOC employee Clyde Ensslin, and includes "Update on public reaction to ICANN and .xxx" in subject line. A portion of Ms. Gunderson's one-line message has been redacted, consisting of her opinion on an issue related to .xxx.

**EP105 October 19, 2005** - 1 page. From DOC employee Clyde Ensslin to DOC employee K.C. Pullen. Besides the e-mail headings, the remainder of the e-mail, including the entire text and the subject line, have been redacted. The redacted text consists of Mr. Ensslin's opinions and recommendations regarding .xxx in the context of an upcoming WSIS meeting in November, 2005.

**EP98 June 28, 2005** - 1 page. From DOC employee Meredith Attwell to White House employee Helen Domenici, and includes "Status of .xxx" in the subject line. A three-line included

message from Ms. Domenici to Ms. Attwell has been redacted, consisting of her questions concerning .xxx.

**EP39**   **July 13, 2005** - 1 page. From DOC employee Suzanne Sene to DOC employee Meredith Attwell, and includes in subject line "gac communique." One paragraph consisting of ten lines has been redacted, consisting of Ms. Sene's opinions relating to issues of concern to the ICANN Government Advisory Committee (GAC), including .xxx.

**EP140**  **August 12, 2005** - 1 page. From DOC employee Michael Gallagher to DOC employee Clyde Ensslin, and includes "Draft .xxx Q & A" in subject line. Two lines have been redacted, consisting of Mr. Gallagher's recommendation regarding inclusion of language in the draft Q & A.

**EP141**  **August 12, 2005** - 1 page. Same sender, recipient, and redaction as in EP140.

**EP73**   **August 2, 2005** - 1 page. From DOC employee Suzanne Sene to DOC employee Robin Layton, and includes in subject line "oia briefing paper for japanese visitors sept. 8." Ms. Sene's entire message (eight lines) has been redacted, as well as an entire included message from Ms. Layton to Ms. Sene (five lines). The redactions consist of predecisional comments on a draft briefing paper for a visit of Japanese officials in September, 2005.

**EP7**    **June 16, 2005** - 1 page. From DOC employee James Wasilewski to DOC employee Meredith Attwell, and includes in subject line "draft." The redaction consists of about six lines of Mr. Wasilewski's opinions concerning approval of internet domain names.

**EP46**   **July 12, 2005** - 2 pages. From White House employee Helen Domenici to DOC employee Robin Layton, and includes in subject line "has ICANN approved .XXX?." Two lines from the beginning of the first page have been redacted, consisting of Ms. Domenici's asking a question regarding the .xxx domain.

## B. Draft Letters

The following documents each consist of an e-mail that has already been released in its entirety with an attached draft letter written by a DOC employee that is being withheld in its entirety (except that the first document listed under "Miscellaneous Draft Letters" below, EP152, incorporates in the e-mail text the text of the draft letter and thus the e-mail has been released only in part, and the document includes no attachment). The draft letters are on various subjects, such as draft responses to individuals who wrote to DOC about .xxx and draft letters to ICANN, and staff comments on those draft responses, and are withheld in their entirety under the deliberative process privilege. They are recommendations to a DOC decisionmaker as to how to address various issues in a final letter, and what that letter should contain. The information withheld is internal predecisional deliberative material, the release of which would discourage open and frank discussions within the DOC about what the final letters should contain on various matters, and

11

create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision making process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in determining how best to respond to the requests for information.

**The draft letters being withheld in the following documents (EP9-EP17, EP70) are draft versions of the Gallagher Letter (referenced on pg. 7 above) and consist of one page. The drafts indicate that they are from Assistant Secretary Michael Gallagher to Dr. Vinton Cerf, Chairman of the Board, Internet Corporation for Assigned Names and Numbers (ICANN)(some draft letters are also designated to be sent to Dr. Paul D. Twomey, ICANN President and Chief Executive Officer), or to ICANN generally (without including the name of any individual) concerning approval by the Board of Directors of ICANN of an agreement with ICM Registry to operate the .xxx top level domain. As noted previously, the final version of the Gallagher Letter has been released.**

**EP9**   August 2, 2005 - 2 pages.

**EP10**  August 2, 2005 - 2 pages.

**EP11**  August 2, 2005 - 2 pages.

**EP12**  August 2, 2005 - 2 pages.

**EP13**  August 2, 2005 - 2 pages.

**EP14**  August 2, 2005 - 2 pages.

**EP15**  August 2, 2005 - 2 pages.

**EP16**  August 2, 2005 - 2 pages. Same draft letter as EP15.

**EP17**  August 5, 2005 - 2 pages. Includes computer-generated printed comments in the margin of the letter showing what editorial changes had already been made in the letter.

**EP70**  August 5, 2005 - 2 pages. Same draft letter as EP 17.

**Miscellaneous Draft Letters**

**EP152 June 16, 2005** - 2 pages. This e-mail incorporates in its text a draft letter to reply to e-

mails to the DOC from members of the public on the proposed new .xxx domain. The portion of the text that includes the draft letter has been withheld, and the remainder of the e-mail has already been released; the e-mail includes no attachment.

**EP93**  **September 30, 2005** - 2 pages. Withheld is a one-page draft letter from DOC employee Michael Gallagher to Rick Schatz, President and CEO of National Coalition for the Protection of Children and Families, concerning Mr. Schatz's letter to the DOC conveying his views on the creation of a new .xxx top level domain.

**EP37**  **July 21, 2005** - 2 pages. Withheld is a one-page draft letter from DOC employee Michael Gallagher to Wanda Adair concerning her letter to the DOC conveying her concerns about the proliferation of pornography on the Internet.

**EP107 Undated** - 2 pages. Withheld is a one-page draft that consists of two draft form e-mail responses from DOC employee Michael Gallagher to members of the public regarding their e-mails to the DOC on .xxx.

**EP127 July 21, 2005** - 2 pages. Withheld is a one-page draft that consists of a draft form e-mail response from NTIA Assistant Secretary Michael Gallagher to members of the public regarding their e-mails to the DOC on .xxx.

**DT6**  **Undated** - 2 pages. Withheld is the first page, which consists of a draft form e-mail response (with no indication who would sign it) to members of the public regarding their e-mails to the DOC on .xxx. The second page (consisting only of telephone, fax, and e-mail contact information) is being released in its entirety along with this <u>Vaughn</u> Index.

## C. <u>Talking Points /Questions & Answers</u>

The following documents are withheld in part under the (b)(5) deliberative process privilege. They were prepared by DOC employees for DOC decisionmakers to consider in making presentations related to .xxx and in responding to public inquiries concerning DOC views on .xxx. The decisionmakers did not adopt them wholesale, but picked the information they felt was most useful for their presentations. They constitute recommendations on how to present DOC views, and factors for decisionmakers to evaluate. To the extent that factual information is included in the recommendations, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in developing its views.

All the following documents are predecisional deliberative documents, the release of which would discourage open, frank discussions on DOC's public presentations related to .xxx and on responding to inquiries concerning DOC views on .xxx., disclose opinions and recommendations, and could create public confusion due to disclosure of reasons and rationales that were not

13

ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein.

**The following documents (EP121-EP124) each consists of a one-page e-mail that has already been released in its entirety and includes in the subject line ".xxx discussion paper."  Each e-mail has an attachment being withheld in its entirety, which are all entitled "Discussion Paper for .xxx," except for the attachment to EP121, which is entitled ".xxx top Level Domain (TLD) Q & A (August 12, 2005)."**

**EP121 July 29, 2005** - 3 pages.

**EP122 August 1, 2005** - 4 pages.

**EP123 August 1, 2005** - 4 pages.

**EP124 August 1** - 3 pages.

**The following documents (MPW8, MPW9, EP94, EP96, EP147) each consists of a one-page e-mail that is being released in its entirety with this <u>Vaughn</u> Index (except for MPW8, the one-page e-mail of which has previously been released) and include in the subject line "Revised .xxx Q & A."  Each also includes a two-page attachment entitled ".xxx Top Level Domain (TLD) Q & A (August 12, 2005)" that is being withheld in its entirety.**

**MPW8 August 12, 2005** - 3 Pages.

**MPW9 August 12, 2005** - 3 Pages.

**EP94   August 12, 2005** - 3 pages.

**EP96   August 12, 2005** - 3 pages.

**EP147 August 12, 2005** - 3 pages.

**The following documents (EP149-EP151) each consists of a one-page e-mail that has already been released in its entirety and that includes in the subject line "Background and Q & A: ICANN's consideration of .xxx top level domain."  Each e-mail has a two-page attachment being withheld in its entirety that is entitled ".xxx top Level Domain (TLD) Q & A (August 12, 2005)."**

**EP149 August 12, 2005** - 3 pages.

**EP150 August 12, 2005** - 3 pages.

14

**EP151 August 12, 2005** - 3 pages.

**The following documents (EP99-EP100) each consists of a one-page e-mail the text of which consists of talking points, and that includes in the subject line "Suggested talking points on .xxx;" each e-mail also includes an attachment entitled ".XXX" that consists of talking points on .xxx. The text of the e-mails (six lines) and the attachments are being withheld in their entirety (the only information released in EP99 and EP100 is the e-mail headings: to, from, date, and subject).**

**EP99   June 16, 2005** - 2 pages.

**EP100 June 16, 2006** - 2 pages.

**Miscellaneous Talking Points/Questions & Answers**

**MPW5 June 17, 2005** - 2 Pages. This document consists of a one-page e-mail that has already been released in its entirety and that includes in the subject line "you guys want to take a look." A one-page attachment entitled "Talking Points for .XXX" is being withheld in its entirety.

**EP18   June 17, 2005** - 3 pages. This document consists of a one-page e-mail that has already been released in its entirety and that includes in the subject line "you guys want to take a look." The e-mail has a two-page attachment entitled "Talking Points for .XXX" withheld in its entirety.

**EP108 November 3, 2005** - 1 page. Includes in the subject line "USA Today Q&As." The Q & A's being withheld (consisting of almost all of the one-page text) are included in the text of the e-mail.

**D.  Miscellaneous Documents**

The following documents are withheld in part under the (b)(5) deliberative process privilege. The withheld portions consist of deliberations relating to ICANN's consideration of the ICM application for a proposed new .xxx domain, and its negotiation of a contract with ICM to operate the .xxx domain. The portions of documents we are withholding were written by DOC employees and are part of a deliberative process, or series of decisions, in that they consist of opinions or advice on the matters to which they relate, and do not constitute final agency decisions on those matters.

The withheld portions are predecisional in that they precede final decisions by the DOC on the matters to which they relate (and in many cases no final decisions have been made on them), and deliberative because they constitute opinions and recommendations on those matters. To the extent that factual information is included in the recommendations, it is protected by (b)(5)

15

deliberative process privilege because the facts in the withheld portions were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in deciding on the issues, and is not reasonably segregable.

The withheld portions are predecisional and deliberative, and their release would discourage open, frank discussions on policy development, disclose opinions and recommendations, and create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein.

**MPW1Undated** - 3 Pages. Entitled "Trip Objectives and Report: 22nd ICANN Government Advisory Committee (GAC) Meetings July 9-14, 2005 in Luxembourg City, Luxembourg Suzanne Radell Sene," the only redactions are under "Objectives for Meeting" on page 1 (about 7 lines redacted) and "Follow-up" on page 3 (about 16 lines redacted) and consist of recommendations and opinions for DOC decisionmakers regarding objectives for the meetings at issue and follow-up by DOC after the meetings.

**MPW4 August 11 [2005]**- 1 Page. Entitled "NTIA Public Affairs - Incoming Call Log," the only redactions are certain handwritten portions (about 8 lines) which consist of opinions and recommendations concerning follow-up on talking points and a letter on .xxx, which were expressed by DOC employee Chuck Fuqua in a telephone call to the NTIA Public Affairs Office (with telephone notes taken by an unnamed DOC employee).

**MPW12 August 22, 2005** - 3 Pages. Entitled "Meeting With Mike Binder, Industry Canada on WSIS and Internet Governance, State Rm. 4826, 3:00-4:00 PM, August 25, 2005," the only redactions consist of opinions and recommendations of DOC employee Fiona Alexander under "Background/Likely Topics" under the subheadings "WSIS" and ".xxx" on the first page (about 17 lines were redacted; the second and third pages have been released in their entirety).

**MPW7 August 2, 2005** - 3 Pages. One-page e-mail which includes in subject line "initiatives for promoting child safety online" has been released in its entirety, with two-page attachment withheld in its entirety. The attachment consists of recommendations from a DOC employee to a DOC decisionmaker on possible initiatives to promote child safety online.

**MPW6 July 19, 2005** - 8 Pages. One-page e-mail which includes in subject line "Notes from NTIA planning meeting" has been released in its entirety, with seven-page attachment withheld except for title "NTIA Planning Meeting 7/14-7/15/05" on first page of attachment. The withheld portions consist of recommendations and opinions relating to planning for NTIA's future course.

**EP19   June 17, 2005** - 5 pages. One-page e-mail which includes in subject line "Draft Talkers and Email Response" and an attached one-page Presidential Proclamation entitled "Protection From Pornography Week, 2003" have been released in their entirety. Withheld

16

in their entirety are a one-page draft form response to members of the public regarding their e-mails to the DOC on .xxx (which is similar to one of the two draft form e-mail responses withheld in EP107, as described on p. 13 above) and a two-page draft "Discussion Paper for .xxx" (which is the same as the attachment to EP124, as described on p. 14 above). The justifications for withholding the foregoing two attachments in EP19 are the same as for the respective documents listed above (EP107 and EP124).

## II. Documents Withheld in their Entirety Solely Under the Deliberative Process Privilege

### A. Talking Points on .XXX

The following documents are withheld in their entirety under the (b)(5) deliberative process privilege. They were prepared by DOC employees for DOC decisionmakers to consider in making presentations related to .xxx and in responding to inquiries concerning DOC views on .xxx. The decisionmakers did not adopt them wholesale, but picked the information they felt was most useful for their presentations. They constitute recommendations on how to present DOC views for decisionmakers to evaluate. To the extent that factual information is included in the recommendations, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by DOC in developing policy.

Additionally, certain documents below are, as noted in their document descriptions, drafts. Draft documents are withheld under the deliberative process privilege as they contain the opinions and recommendations of the drafter as to what information should be included in the final version of the document.

All the following documents are predecisional deliberative documents, the release of which would discourage open, frank discussions on DOC's public presentations related to .xxx and on responding to inquiries concerning DOC views on .xxx., disclose opinions and recommendations, and could create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent final agency decisions on the matters contained therein.

**The following documents (TP1-TP9) have the title "Talking Points for .XXX." at the top of the page (or at the top of the first page, if the document includes more than one page).**

**TP1**   **Undated** – 1 Page. This document is a draft, as handwritten notations of an unnamed DOC employee on the document show. The name "Clyde Ensslin" and the title of the document are printed at the top of the page, indicating that Mr. Ensslin printed the document from his computer.

17

**TP2**    **Undated** – 1 Page.  Same as TP1 except that TP2 has no name printed at the top, and there are no handwritten notations.

**TP3**    **Undated** – 2 Pages.

**TP4**    **Undated** – 2 Pages.  Same as TP3 except TP4 has the name "Michael Gallagher" and the title of the document printed at the top of the page, whereas TP3 has no name and title printed at the top.

**TP5**    **Undated** – 1 Page.  Same as TP4 except TP5 has a different name printed at the top: James Wasilewski.

**TP6**    **Undated** – 1 Page.  Same as TP4 except TP6 has a different name printed at the top: Clyde Ensslin.

**TP7**    **Undated** - 1 Page.  Similar to TP3; only the wording of one paragraph (paragraph 7 of 8) is different in the two versions.

**TP8**    **Undated** – 1 Page.  Same as TP7 except that TP8 has the name "Michael Gallagher" and the title of the document at the top; TP7 has nothing printed at the top.

**TP9**    **Undated** – 1 Page.  Similar to TP2 except for differences in the wording of one paragraph (paragraph 7 of 8).

**The following documents (TP10-TP11) have the title "Background on .XXX/sTLDs" at the top of the page.**

**TP10**   **Undated** – 1 Page.

**TP11**   **Undated** - 1 Page.  A different version of TP10.

**The following three documents (TP12-TP14) have the title ".XXX" at the top of the page.**

**TP12**   **Undated** – 1 Page.  Includes "James Wasilewski" and the title of the document printed at the top.

**TP13**   **Undated** – 1 Page.  Same as TP12 except that TP13 has a different name (Clyde Ensslin) printed at the top.

**TP14**   **Undated** - Same as TP12 except that TP14 has no name or document title printed at the top.

**The first three documents below (TP15-TP17) have the title "Draft talking points on .XXX letter Aug 11" at the top of the page. The fourth document (TP18) is entitled "Draft .XXX talking points, August 11, 2005." Draft documents are withheld under the deliberative process privilege as they contain the opinions and recommendations of the drafter as to what information should be included in the final version of the document.**

**TP15  Undated** – 1 Page.

**TP16  Undated** – 1 Page. Same printed text as TP15, but TP16 includes handwritten notations.

**TP17  Undated** – 1 Page. Includes handwritten notations.

**TP18  Undated** – 1 Page.

**Miscellaneous Talking Points/Discussion Papers/Questions and Answers**

**MD5  October 18, 2005** - 1 page. Entitled "Communications on .xxx" and stamped "draft."

**MD6  Undated** - 2 pages. Entitled "Discussion Paper for .xxx" and stamped "draft."

**MD7  August 12, 2005** - 2 pages. Entitled ".xxx top Level Domain (TLD) Q & A [DRAFT #1 of August 12, 2005]."

**MD8  August 12, 2005** - 2 pages. Entitled ".xxx top Level Domain (TLD) Q & A (August 12, 2005)."

**MD9  August 12, 2005** - 1 page. Entitled ".xxx top Level Domain (TLD) Q & A (August 12, 2005)." Includes computer-generated underlining and printed comment in the margin showing editorial changes that had already been made in the document.

**MD10 September 8, 2005** - 2 pages. Entitled ".xxx top Level Domain (TLD) Q & A (September 8, 2005)."

**L2  June 8, 2006** - 2 pages. **N.B.: This document was produced by the Department of State.** Stamped "Draft," consists of background and talking points concerning a 2006 NTIA letter to ICANN prepared by an unnamed DOC employee in anticipation of a June, 2006, ICANN Board meeting.

**B. Draft Letters**

The following documents are draft letters written by DOC employees on various subjects, such as responses to individuals who wrote to the DOC about .xxx and draft letters to ICANN, as well as staff comments on those draft responses, and are withheld in their entirety under the deliberative

19

process privilege. They are recommendations to a DOC decisionmaker as to how to address various issues in a final letter, and what that letter should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within the DOC about what the final letters should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision making process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in determining how best to respond to the requests for information.

**The following documents (DT1-DT5, DT7) consist of draft form e-mail responses (which reflect that they would be signed by DOC employee Michael Gallagher, unless indicated otherwise below) to members of the public regarding their e-mails to the DOC on .xxx.**

**DT1**   **Undated** - 1 page. Includes two draft e-mail responses.

**DT2**   **Undated** - 1 page. Same as DT1 except that DT2 includes at the top of the page the name of the individual who printed the e-mail from her computer (Maureen Lewis) and the title of the document.

**DT3**   **Undated** - 1 page. Consists of one draft e-mail response.

**DT4**   **Undated** - 1 page. Same as DT3 except that DT4 includes at the top of the page the name of the individual who printed the e-mail from her computer (Maureen Lewis) and the document title.

**DT5**   **Undated** - 1 page. Another draft response, which includes no indication who would sign the letter.

**DT7**   **Undated** - 1 page. Includes no indication who would sign the letter. Includes questions in the text about possible editorial changes, and computer-generated printed comments in the margin showing what editorial changes had already been made in the letter.

**The following documents (DT8-DT10) are drafts of the Gallagher Letter (referenced on pp.7, 12 above).**

**DT8**   **Undated** - 1 page.

**DT9**   **Undated** - 1 page. Same as DT8 except that D8 includes a cc with the name of an individual at the bottom left-hand side of the page, whereas DT9 includes no cc line but

20

includes similar information: a statement that the letter should be sent to the same individual identified in the cc line of DT8, and the name and address of that individual.

**DT10  Undated** - 1 page. Includes handwritten notations.

**Miscellaneous Draft Letters**

**DT11  Undated** - 1 page. Draft form letter from DOC employee Michael Gallagher to members of the public who wrote to the DOC to share their views on the creation of a new .xxx top level domain.

## C. Miscellaneous Draft Documents (excluding draft letters)

The following documents are drafts written by DOC employees on various subjects, such as invitations and briefing statements, and staff comments on those drafts, and are withheld in their entirety under the deliberative process privilege. They are recommendations to a DOC decisionmaker on how to address various issues in a final document, and what that document should contain. The information withheld is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within the DOC about what the final documents should contain on various matters, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response. The material withheld does not represent final agency decisions on the matters contained therein.

To the extent that factual information is included within the withheld material, it is protected by the deliberative process privilege because the facts were selectively chosen as part of the decision making process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in determining how best to respond to the requests for information.

**MPW3 Undated** - 1 Page. Draft invitation to briefing by Ambassador David Gross and Assistant Secretary Michael Gallagher relating to role of United Nations in control of the Internet. Includes computer-generated printed comments in the margin showing editorial changes that had already been made in the letter.

**MD2  Undated** - 2 Pages. Draft briefing paper for meeting with Japanese Vice Minister Aritomi of the Ministry of Internal Affairs and Communications, on "Internet Governance and WSIS Issues." Includes computer-generated printed comments in the margin showing editorial changes that had already been made in the document.

**MD1  September 1, 2005** - 1 Page. Draft background section of MD2. Includes computer-generated printed comments at the top and bottom of the page showing editorial changes that had already been made in the document.

**MD3**  **October 20, 2005** - 2 Pages.  Consists of briefing paper entitled "Americans for a Secure Internet Lunch, October 21, 2005 12:00-1:30 pm."

**MD4**  **October 20, 2005** - 8 Pages (all stamped "draft").  Consists of two-page briefing paper which is the same as MD3 except that MD4 includes the name "Clyde Ensslin" and the title of the document printed at the top of the page, whereas MD4 has no name or title at the top; one-page "Meeting Announcement/Invitation" for a lunch briefing on United Nations involvement with the Internet; one-page "U.S. Principles on the Internet's Domain Name and Addressing System;" two-page "WSIS/Internet Governance Q & A's;" two-page "EU/UK Proposal" concerning international cooperation on internet governance.

**MM2**  **November 2, 2005** - 4 Pages.  Draft memorandum prepared by a DOC employee, which concerns discussing Internet Governance and the World Summit on the Information Society (WSIS) with editorial boards.

## D. Handwritten Notes

The following documents are withheld in their entirety under the (b)(5) deliberative process privilege.  The withheld documents consist of notes taken by DOC employees at various meetings, as well as notes made by employees as part of the decision making process itself.  The notes reflect the DOC employees' deliberations concerning issues such as how to respond to public inquiries on the possible creation of a new .xxx domain.  They represent opinions and recommendations for decisionmakers to evaluate. To the extent that factual information is included in the recommendations, it is protected by (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process.  The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in developing its views.

These are predecisional deliberative documents, the release of which would discourage open, frank discussions, and disclose opinions and recommendations about issues such as those mentioned in the preceding paragraph, and could create public confusion due to disclosure of reasons and rationales that were not ultimately the grounds for action. They do not represent  final agency decisions on the matters contained therein

**HW1**  **Undated** – 1 page.  Handwritten notes of DOC employee Clyde Ensslin regarding deliberations about how to respond to e-mails from the public about the .xxx matter.

**HW2**  **Undated** – 3 pages.  Handwritten notes of Mr. Ensslin with "Amended Talkers" at top of first page, consisting of his deliberations in preparing talking points on DOC's relationship with ICANN under the 1998 Memorandum of Understanding between the two parties.

**HW3**  **June 16, 2005** – 3 pages.  Handwritten notes of Mr. Ensslin concerning a discussion with the DOC Office of Public Affairs on developing a public statement on the DOC's relationship with ICANN.

22

**HW4**  **August 10, 2005** – 1 page.  Handwritten notes of Mr. Ensslin based on a voice mail message, consisting of deliberations on developing talking points on the Gallagher Letter (referenced on pp. 8, 13, and 21 above).

**HW5**  **August 10, 2005** – 1 page.  Handwritten notes of Mr. Ensslin consisting of deliberations on how to respond to public inquiries about the letter identified in HW4 above.

**HW6**  **August 11, 2005** – 4 pages.  Handwritten notes of Mr. Ensslin consisting of (1) draft talking points for DOC employee John Kneuer on the letter identified in HW4 above, and (2) questions for a discussion with a DOC Office of Public Affairs employee on developing a DOC public response to the Gallagher Letter.

**HW7**  **August 11, 2005** – 2 pages.  Handwritten notes of Mr. Ensslin from a discussion with DOC employee Gallagher on developing a DOC public response to the letter identified in HW4 above.

**HW8**  **August 11, 2005** – 1 page.  Handwritten notes of Mr. Ensslin consisting of notes on a conversation between a DOC employee and a media source concerning the letter identified in HW4 above, and bullets consisting of either talking points for a response to that call, or summarizing the response actually conveyed.

**HW9**  **August 11, 2005** – 1 page.  Handwritten notes of Mr. Ensslin based on a telephone call from a media organization, and deliberating on how to respond to the call, which concerned the DOC's role in approving new top level domains.

**HW10** **August 12, 2005** – 1 page.  Handwritten notes of Mr. Ensslin consisting of deliberations on how to develop a public response to the letter identified in HW4 above.

## E.  Miscellaneous Document

**EP6**  **Undated** - 7 pages.  Three-page "Discussion Paper for .xxx" stamped "Draft, Pre-decisional," with two two-page attachments, labeled A and B.

The draft discussion paper constitutes recommendations to a DOC decisionmaker on how to address various issues in a final document, and what that document should contain. Attachment A consists of recommendations from a DOC employee to a DOC decisionmaker on various proposals outlined in the draft discussion paper.  Attachment B consists of opinions of a DOC employee on matters related to .xxx.  The information withheld in the draft discussion paper and the two attachments is internal pre-decisional deliberative material, the release of which would discourage open and frank discussions within the DOC about what the final document (including the two attachments) should contain, and create public confusion due to disclosure of reasons and rationales that may not have been the grounds for the agency's final response.  The material withheld does not represent final agency decisions on any of the matters contained therein.

23

**III. Documents Partially Withheld Under the Attorney-Client Privilege and Deliberative Process Privilege of Exemption (b)(5)**

The following documents are partially withheld under the (b)(5) attorney-client privilege and deliberative process privilege. The portions of documents withheld consist of requests for legal advice. The withheld portions were either prepared by DOC attorneys to describe legal advice the attorneys were providing to the specifically listed DOC clients in response to requests by those clients for legal advice, or are the actual requests for advice by the client. The withheld documents or portions of documents describe confidential communications among DOC lawyers and clients in NTIA, which have not been disclosed outside of the attorney-client relationship. Disclosing this information would reveal confidential communications among Government attorneys and clients in DOC, which have not been disclosed outside of the attorney-client relationship.

The withheld portions of documents also consist of deliberations concerning the legal matter as to which advice is sought, in the form of a preliminary request for advice from the client, preliminary recommendations, and the legal advice sought. All of the foregoing information is part of the deliberations undertaken by the DOC to address legal issues raised by DOC employees, and is protected by the deliberative process privilege. Even the final legal advice provided to the client is deliberative in that it constitutes a recommendation to the client, which the client may accept or reject before making the final decision (or recommending a course of action for another decisionmaker) for the U.S. Government. The release of this pre-decisional deliberative material would discourage open, frank discussions on those issues, disclose opinions and recommendations which formed an integral part of the decisionmaking process, and create public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for action. The withheld portions of documents do not represent final agency decisions on the matters contained therein. To the extent that factual information is included within the withheld material, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in deciding on the issues, and is not reasonably segregable.

**The following e-mails (EP75-EP79) include in the subject line "PFF Blog on Porn Tax." The information being withheld in each consists of the same confidential request(s) for advice (consisting of just over one line of text) from DOC employee Meredith Attwell to DOC attorney Jeff Joyner concerning .xxx.**

**EP75   July 29, 2005 - 1 page.**

**EP76   July 29, 2005 - 1 page.**

**EP77   July 29, 2005 - 1 page.**

**EP78   July 29, 2005 - 1 page.**

24

**EP79   July 29, 2005 -** 1 page.

**The following e-mails (AC17-AC19) include in the subject line ".xxx discussion paper." The information being withheld in each consists of the same confidential request(s) for advice (consisting of five lines of text) from DOC employee Meredith Attwell to DOC attorney Jeffrey Joyner concerning preparation of an .xxx discussion paper.**

**AC17 July 29, 2005 -** 1 Page.

**AC18 July 29, 2005 -** 1 Page.

**AC19 July 29, 2005 -** 1 Page.

**The following e-mails (AC11-AC13, EP47-EP58) include in the subject line "has ICANN approved .XXX?" The information being withheld in each consists of the same confidential request for advice from DOC employee Robin Layton to DOC attorney Jeff Joyner (or in the e-mails noted below, to DOC attorneys Jeff Joyner and Kathy Smith) concerning ICANN's possible approval of .xxx and, in certain e-mails noted below, also the protected legal advice Mr. Joyner provided in response. All of the foregoing information is protected under the attorney-client privilege. All the following e-mails include a communication from White House employee Helen Domenici to DOC employee Robin Layton concerning the .xxx domain, which is protected solely based on the deliberative process privilege. Certain e-mails noted below include an additional communication from Ms. Domenici to DOC employee Robin Layton consisting of a question concerning the same .xxx matter, which is protected solely based on the deliberative process privilege. The redacted portions of each document consist of 2-4 lines.**

**AC11 July 12, 2005 -** 2 Pages.  From Mr. Joyner to Ms. Layton.  Includes protected legal advice from Mr. Joyner to Ms. Layton.

**AC12 July 12, 2005 -** 3 Pages.  From Ms. Domenici to Ms. Layton.  Includes additional communication from Ms. Domenici.

**AC13 July 12. 2005 -** 1 Page.  Includes additional communication from Ms. Domenici.

**EP47   July 12, 2005 -** 2 pages.  From Ms. Layton to Mr. Joyner and Ms. Smith.

**EP48   July 12, 2005 -** 2 pages.  Same sender, recipents, and redactions as EP47.

**EP49   July 12, 2005 -** 2 pages.  From Mr. Joyner to Ms. Layton.  Includes protected legal advice from Mr. Joyner to Ms. Layton.

**EP50   July 12, 2005 -** 2 pages.  Same sender, recipient, and redactions as EP49.

25

**EP51**  **July 12, 2005** - 2 pages.  From Ms. Layton to Ms. Domenici.

**EP52**  **July 12, 2005** - 3 pages.  From Mr. Joyner to Ms. Domenici and Ms. Layton.

**EP53**  **July 12, 2005** - 3 pages.  From Ms. Domenici to Ms. Layton.  Includes additional communication from Ms. Domenici.

**EP54**  **July 12, 2005** - 2 pages.  From Ms. Layton to Mr. Joyner.  Includes an additional redaction of one line from Ms. Layton to Mr. Joyner on the first page, which is protected solely under the deliberative process privilege.  The redaction consists of Ms. Layton's statement of her intentions and opinions with regard to preparing an e-mail to be sent to the White House.

**EP55**  **July 12, 2005** - 3 pages.  From Ms. Layton to Ms. Domenici.  Includes additional communication from Ms. Domenici.

**EP56**  **July 12, 2005** - 3 pages.  From Ms. Layton to Mr. Joyner.  Includes additional communication from Ms. Domenici.

**EP57**  **July 12, 2005** - 3 pages.  From Ms. Layton to Ms. Domenici and Mr. Joyner, with same redactions as EP54.

**EP58**  **July 12, 2005** - 3 pages.  From Ms. Layton to Ms. Domenici and Mr. Joyner, with same redactions as EP54.

**Miscellaneous Attorney-Client Document**

**AC9**  **June 15, 2005** - 2 Pages.  One-page e-mail (which has already been released in its entirety) with one-page attachment withheld in its entirety.  The attachment was prepared at the request of the client DOC employee Meredith Attwell, and consists of legal advice of DOC attorney Kathy Smith on interpreting legal agreements involving the DOC, ICANN, and VeriSign, Inc.

## IV.  Documents Withheld In Their Entirety Under the Attorney-Client Privilege and Deliberative Process Privilege of Exemption (b)(5)

The following documents are withheld in their entirety under the (b)(5) attorney-client privilege and deliberative process privilege.  They contain requests for legal advice from DOC employees to DOC attorneys relating to the U.S. Government's response if ICANN were to recommend the creation of a proposed new .xxx domain and/or enter into a contract with ICM to operate an .xxx domain.  The documents were either prepared by DOC attorneys to describe legal advice the attorneys were providing to the specifically listed DOC clients in response to requests by those clients for legal advice, or are the actual requests for advice by the client.  The documents describe confidential communications among DOC lawyers and their DOC clients, which have not been disclosed outside of the attorney-client relationship.  Disclosing this information would reveal the questions asked by the clients and/or the advice provided by the attorneys.  The attorneys who are asked to provide or who are providing advice in these documents are all U.S. Government

attorneys. The clients to whom the attorneys listed in the documents provided legal advice or with whom the advice was shared are all U.S. Government employees. The withheld information is covered by the privilege because it is an integral part of the process of clients seeking advice from their attorneys on legal matters, and of the attorneys providing advice to their clients on those matters. Its disclosure would reveal confidential attorney-client communications regarding matters on which the clients sought legal advice.

The documents also consist of deliberations concerning the legal matter as to which advice is sought, in the form of a preliminary request for advice from the client and, preliminary recommendations, and the legal advice sought. All of the foregoing information is part of the deliberations undertaken by the DOC to address legal issues raised by DOC employees, and is protected by the deliberative process privilege. Even the final legal advice provided to the client is deliberative in that it constitutes a recommendation to the client, which the client may accept or reject before making the final decision (or recommending a course of action for another decisionmaker) for the U.S. Government. The release of this pre-decisional deliberative material would discourage open, frank discussions on those issues, disclose opinions and recommenda-tions which formed an integral part of the decisionmaking process, and create public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for action. These documents do not represent a final agency decision on the matter contained therein. To the extent that factual information is included within these documents, it is protected by (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in deciding on the issues, and is not reasonably segregable.

**ACW1** Undated - 1 Page. Prepared at request of client Assistant Secretary Gallagher's office, consists of legal advice of DOC attorney Kathy Smith on interpreting legal agreements involving the DOC, ICANN, and VeriSign, Inc.

**The following documents (ACW2-ACW7) consist of e-mail exchanges among a DOC client and U.S Government legal counsel seeking legal advice on the .xxx issue. They consist of information provided by the DOC client to the U.S. Government legal counsel to enable them to provide effective legal advice, and their responses. This information is protected under the attorney-client privilege. Additionally, the identities of the other individuals and the identity of the U.S. Government legal counsel are protected under the deliberative process privilege. Releasing this information would chill the deliberative process, as it would discourage DOC employees from seeking advice from other Federal agencies on .xxx and other legal policy issues, and discourage open, frank discussions in the future.**

**ACW2** August 11, 2005 - 2 Pages. Consists of two e-mail messages from the DOC client to the U.S. Government legal counsel (Legal Counsel), with their response.

**ACW3** October 6, 2005 - 1 Page. Consists of e-mail message from the DOC client to the Legal Counsel.

**ACW4** October 6, 2005 - 2 Pages.  E-mail incorporating the text of ACW3, plus the response of the Legal Counsel.

**ACW5** October 11, 2005 - 1 Page.  E-mail from DOC client to Legal Counsel.

**ACW6** October 11, 2005 - 1 Page.  E-mail incorporating the text of ACW5, plus the questions of the Legal Counsel.

**ACW7** October 11, 2005 - 1 Page.  E-mail incorporating the text of ACW6, plus the response of the DOC client to the Legal Counsel's questions.

## V.  Documents Partially Withheld Under the Attorney Work-Product Privilege and Deliberative Process Privilege of Exemption (b)(5)

The following documents are partially withheld under the (b)(5) attorney work-product privilege. The withheld portions consist of information prepared by DOC attorneys in contemplation of litigation brought against the DOC by ICM in connection with the proposed creation of a new .xxx Top Level Domain.  The information protected consists of an e-mail exchange among three DOC attorneys: Kathy Smith, Joan Maginnis, and Tim Conner.  To the extent the protected material includes factual material, it also is protected under the privilege.

The information withheld under the attorney work-product privilege also consist of deliberations concerning the legal matter at issue.  All of the foregoing information is part of the deliberations undertaken by DOC attorneys to address anticipated litigation against the DOC, and is also protected by the deliberative process privilege.  The release of this pre-decisional deliberative material would discourage open, frank discussions on that issue, disclose opinions and recommendations which formed an integral part of the decisionmaking process, and create public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for action.  The withheld portions of documents do not represent final agency decisions on the matters contained therein.  To the extent that factual information is included within the withheld material, it is protected by the (b)(5) deliberative process privilege because the facts in the documents were selectively chosen as part of the decisionmaking process.  The factual information is, therefore, an integral part of the deliberations undertaken by the DOC in deciding on the issues, and is not reasonably segregable.

**AC20** October 11, 2005 - 1 Page.

**AC21** October 11, 2005 - 1 Page.

## VI.  Document Withheld In Part Pursuant To Exemption (b)(6)

A portion of the following document has been withheld in part pursuant to FOIA exemption (b)(6), which protects personal privacy interests and exempts from disclosure information about individuals if the individual's interest in privacy outweighs the public's interest in disclosure.

28

Under the FOIA, disclosure of information is in the public interest if it would contribute to public understanding of the operations or activities of the Government. The information protected below consists solely of an individual's personal cell phone number, which is personal information the disclosure of which would not contribute to public understanding of the operations or activities of the Government. The strong interest of the individual in protecting personal privacy interests outweighs any minimal public interest in disclosure of the information.

**DC1    August 17, 2005** - One page.