UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ICM Registry, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. |
| | )       06-0949 (JR) |
| Department of State et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

DECLARATION OF MARGARET P. GRAFELD

I, Margaret P. Grafeld, declare and state as follows:

1.    I am the U.S. Department of State's Information
and Privacy Coordinator and the Director of the
Department's Office of Information Programs and Services
(IPS).  In these capacities, I am the Department official
immediately responsible for responding to requests for
records under the Freedom of Information Act (FOIA), 5
U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other
applicable records access provisions.  I have been in the

employ of the Department of State since 1974, and have
served with the Department's Information Access Program
for most of my tenure with the Department.  I am
authorized to classify and declassify national security
information pursuant to Executive Order (E.O.) 12958, as
amended, and Department of State regulations set forth in
22 CFR §§ 9.7, 9.14.  I make the following statements
based upon my personal knowledge, which in turn is based
on a personal review of the records in the case file
established for the processing of the subject request, and
upon information furnished to me in the course of my
official duties.  I have read the complaint filed by the
plaintiff in the above-captioned matter, and I am familiar
with the efforts of Department personnel to process the
subject request.

    2.   The core responsibilities of IPS include records
access requests made by the need-to-know community, the
public (under the FOIA, Privacy Act, the mandatory
classification review requirements of E.O. 12958, as
amended, or the Ethics in Government Act), members of
Congress, other government agencies, and those that have
been made pursuant to judicial processes, such as
subpoenas, court orders, and discovery requests; records
management; privacy protection; national security

classification management and declassification review;

corporate records archives management; research; the

Department's Library; and the technology that supports

these activities.

3.    The purpose of this declaration is to inform the

Court of the efforts of the Department to respond to

plaintiff's FOIA request.  An explanation of the claimed

exemptions for the withholding of information contained in

records responsive to plaintiff's request, as well as a

detailed description of the Department's rationale for

non-disclosure, follows.

## I.    ADMINISTRATIVE PROCESSING

4.    By faxed letter dated October 18, 2005 (Exhibit

1), to the Office of Information Programs and Services,

Ronald G. London, Counsel for ICM Registry (plaintiff),

requested copies of records relating to the following:

> 1) All records, correspondence, memoranda,
> transcripts, notes, documents, reports,
> emails or audiovisual or other materials
> consisting of or reflecting, representing,
> recording, or otherwise disclosing
> communications, written or oral, between
> March 1, 2005 and the present, regarding
> approval by the Internet Corporation for
> Assigned Names and Numbers ("ICANN"),
> and/or by its Board of Directors, of the
> new ".xxx" sponsored top-level domain
> ("STLD"), and/or ICANN's or its Board's

approval of ICM Registry contract to operate the .xxx Stld. This request does not encompass documents submitted to the agency by the general public as part of any mass mailing campaign(s) or similarly duplicative emails/documents.

2) All records, correspondence, memoranda, transcripts, notes, documents, reports, emails, or audiovisual or other materials consisting of or reflecting, representing, recording or otherwise disclosing communications, written or oral, between March 1, 2005 and the present, between any personnel at the State Department and the ICANN Board of Directors and its staff, ICANN's Governmental Advisory Committee ("GAC"), any GAC member country, or any individuals or agency in a GAC member country, regarding the .xxx Stld.

Counsel stated plaintiff's willingness to pay up to $5,000 for search and duplication costs.

5.    IPS contacted plaintiff's counsel by telephone on November 28, 2005, explained that the Department of State may not have responsive documents, and suggested that the Department of Commerce would be more likely to have responsive documents.

6.    By fax dated November 29, 2005 (Exhibit 2), plaintiff's counsel provided a copy of the Department of Commerce's response to an identical FOIA request and some documents which indicated that the Department of Commerce may have coordinated on the subject matter of plaintiff's FOIA request with individuals at the Department of State.

7.    By letter dated December 13, 2005 (Exhibit 3),
IPS acknowledged plaintiff's request and assigned it case
control no. 200504606.  Plaintiff was informed that the
Department would begin processing its request and that the
cut-off date for retrieving records was either the date
that was specified in the FOIA request or (if no date were
specified) the date the search was initiated.  Plaintiff
was informed that it had been placed in the "other"
requester category for fee purposes.  Plaintiff was also
advised that while IPS would make every effort to meet the
time limits cited in the FOIA, unusual circumstances might
arise for extending the time limit.

8.    By letter dated December 22, 2005 (Exhibit 4),
plaintiff's counsel appealed the Department's lack of a
response to plaintiff's FOIA request.

9.    By letter dated January 3, 2006 (Exhibit 5), IPS
advised plaintiff's counsel that its FOIA request was yet
not subject to administrative appeal, since no specific
material had been denied in response to the request.  IPS
confirmed that the request was being processed.

10.    In a series of telephone calls and emails
between June 12 and June 22, 2006, IPS and plaintiff's
counsel agreed that a file of approximately 1,100 pages

of potentially relevant press clippings from the Bureau
of Economic and Business Affairs would be produced in
its entirety without a document-by-document review for
responsiveness.

11. By letter dated July 5, 2006 (Exhibit 6), IPS
advised plaintiff that searches had been initiated of
the following records systems: the Central Foreign
Policy Records (the Department's principal records
system), the Bureau of Economic and Business Affairs,
and the Office of the Legal Adviser.[1] A copy of the
file of press clippings retrieved by the Bureau of
Economic and Business Affairs was enclosed. Plaintiff
was informed that IPS had not reviewed these documents
for responsiveness to its request, and that the total
number of pages duplicated was 1,155. No charge was

---

[1] IPS "tasks" FOIA requests to any offices within the Department of
State that may have responsive records. In this case, IPS tasked
the request to two offices: the Bureau of Economic and Business
Affairs ("EB") and the Office of the Legal Adviser ("L"). EB was
tasked because documents forwarded by plaintiff's counsel
identified personnel in EB who may have responsive records. L was
tasked because personnel in EB indicated that personnel from L may
have also been involved with the subject matter of the request.
The search for responsive records in EB and L was conducted by
Department personnel who worked on or who were otherwise familiar
with the subject matter of the request. IPS also conducted an
electronic search of the Central Foreign Policy Files, which is a
word-searchable database of millions of Department of State
documents (mostly telegrams to and from Embassies and other posts
abroad). This search was conducted by an IPS case analyst familiar
with the subject matter of the request. The Department's search,
including the searches of the records of EB, L, and the Central
Foreign Policy Files, was conducted in good faith and was
reasonably calculated to uncover all relevant documents.

*ICM Registry v. Department of State et. al*
*Grafeld Declaration*

made for the first one hundred pages of duplication;
therefore, the total fees incurred thus far were
$158.25, representing 1055 pages duplicated @ $.15 per
page.  Plaintiff was advised that no fees were due at
this time; IPS would inform plaintiff of its final fee
total when the processing of its request was completed.
Plaintiff was also informed that the search of the
Central Foreign Policy Records had been completed, and
resulted in the retrieval of no responsive documents.
Plaintiff was further informed that the review of other
material returned from the Bureau of Economic and
Business Affairs and the Office of the Legal Adviser was
in progress.

    12.  By letter dated July 14, 2006 (Exhibit 7), IPS
informed plaintiff that the search of the records of the
Office of the Legal Adviser had been completed, and
resulted in the retrieval of 10 documents responsive to
its request.  Of these, four documents were being
released in full and six were being denied in full.
Plaintiff was informed that the search of the records of
the Bureau of Economic and Business Affairs had been
completed, and resulted in the retrieval of 64 documents
responsive to its request (in addition to the 1,155

*ICM Registry v. Department of State et. al*
*Grafeld Declaration*

pages of documents that were released to plaintiff in
IPS letter dated July 5, 2006).  Of these, 26 documents
were being released in full, six were being released in
part, and 27 were being denied in full.  Plaintiff was
informed that the remaining five documents required
interagency coordination and were referred for review
and direct reply to plaintiff.[2]  Plaintiff was advised
that the Freedom of Information Act provides for the
recovery of the direct costs of duplicating records
requested for non-commercial use.  No charge was made
for the first two hours of search time or the first one
hundred pages of duplication.  Total fees due in this
case were $549.60, representing: 12.5 hours of executive
search time @ 30.00 per hour ($375) and 1,164 pages
duplicated @ $0.15 per page ($174.60).  Plaintiff was
informed that IPS had completed the processing of its
request.

13.  By letter dated August 17, 2006 (Exhibit 8),
IPS informed plaintiff that after re-review of the
documents, one document (E67) initially withheld in full

---

[2] That other agency – the Department of Defense – responded to
plaintiff by letter dated August 15, 2006  (Exhibit 9).  As is
evident from that letter, plaintiff and the Department of Defense
reached an agreement as to how the five referred documents would be
processed.

was released in full, five documents (E24, E36, E68,

E69, and E70) initially withheld in full were released

in part, and one document (L2) initially withheld in

full originated in NTIA, Department of Commerce and it

had been referred to Commerce for inclusion in its

Vaughn declaration.

## II.  **FOIA EXEMPTIONS CLAIMED**

### FOIA Exemption (b)(4) – Confidential Commercial Information

14. Title 5 U.S.C. Section 552(b)(4) states that

the FOIA does not apply to:

> trade secrets and commercial or financial
> information obtained from a person and privileged or
> confidential.

15.  The courts, notably the D.C. Circuit, have

held that for the purposes of exemption 4 commercial

information is confidential if disclosure is likely to:

1) impair the government's ability to obtain necessary

information in the future; or 2) cause substantial harm

to the competitive position of the person from whom the

information was obtained.  The same court subsequently

limited this competitive harm test to information

required to be furnished to the government.  As to

voluntarily furnished information, the test is now

whether such information is "customarily" disclosed to the public.

16.   Various types of information can fall within the scope of the tests mentioned above.   Information is withheld from three documents in this case because the information, concerning commercial aspects of the ICANN process, was offered voluntarily to the government and would not "customarily" be made public.   Disclosure of the information could impair the government's ability to obtain similar important information in the future. Accordingly, the information is exempt from disclosure under FOIA exemption (b)(4).

### FOIA Exemption (b)(5) -- Deliberative Process

17.   Title 5 U.S.C. Section 552(b)(5) states that the FOIA does not apply to:

> inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.

18.   This exemption is meant to protect the candid views and advice of U.S. Government officials in their predecisional deliberations respecting policy formulation and administrative direction.   Disclosure of material containing such deliberations or of material on which such deliberations are based would prejudice the

free flow of internal recommendations and other
necessary exchanges.  It would severely hamper the
ability of responsible officials to formulate and carry
out executive branch programs.  There are thirty-four
documents in this case from which information has been
withheld by the Department of State under this
exemption.  Disclosure of this information which is
predecisional and contains selected factual material
intertwined with opinion would inhibit candid internal
discussion and the expression of recommendations and
judgments regarding current problems and preferred
courses of action.  It would also inhibit the exchange
of views between State Department officials and
officials of other departments and agencies regarding
policy formulation and tactics and strategy generally.
All reasonably segregable facts have been disclosed
except in those instances where the selection of facts
is clearly deliberative.  The withheld information is,
accordingly, exempt from release under FOIA exemption
(b)(5).

### III.  **DOCUMENT DESCRIPTIONS**

19.  Document No. L5 is handwritten notes, dated
February 16, 2006, on the topic of "Meeting - w/NTIA re:

*ICM Registry v. Department of State et. al*
*Grafeld Declaration*

GAC." One page. Authorship not indicated. Denied in full. Exemption (b)(5).

These notes, many of them illegible, appear to reflect discussion of possible changes in the U.S. Government's relationship with the GAC. The only responsive part of the document appears to be two lines on the ".xxx issue," which appear to reflect a recommendation on dealing with the issue. The notes are deliberative and pre-decisional, and as they are abbreviated and indistinct, subject to differing interpretations and therefore potentially misleading. The information is exempt from disclosure under the (b)(5) exemption, and there is no meaningful information that may be segregated and released.

20. Document No. L6A is an untitled memorandum or notes, dated December 5, 2005, from "Richard" to "David." Five pages. Denied in full. Exemption (b)(5).

In the first paragraph of this document, the author explicitly states that he is offering his views on "the ICANN question" in some depth. In the entire five pages of analysis of issues related to ICANN, just one sentence mentions .xxx. The document is deliberative

and pre-decisional, the information is exempt from disclosure under the (b)(5) exemption, and there is no meaningful information that may be segregated and released.

21.  Document Nos. L8A, E50, E51, E55 and E66. These are different versions of an information memorandum for the Deputy Secretary of State from the Assistant Secretary for Economic and Business Affairs on the subject of "Policy Considerations for the Management of the Internet."  Five pages (six when including the page identifying the parties involved in drafting and clearing the memorandum).  Four versions not dated, final version dated December 9, 2005.  Denied in full. Exemption (b)(5).

Document nos. L8A, E50 and E51 are drafts, some with interlineations and in/out tracking information; document no. E55 is labeled "final" but not signed; and document no. E66 is signed, returned to the originator, and has extensive marginalia added by the recipient of the memorandum.  This memorandum was initiated in response to six questions from the Deputy Secretary of State concerning the future relationship of the U.S. Government to ICANN.  Of the six questions discussed,

one relates to the principles that ICANN must apply to
approval of a new sTLD such as .xxx.  Both the questions
posed in the memorandum and the answers supplied are
deliberative and pre-decisional, as are the marginal
notes on document no. E66.  The information is exempt
from disclosure under the (b)(5) exemption, and there is
no meaningful information that may be segregated and
released.

    22.  Document Nos. L9A, L10A, E49, E60 and E65.
These are different versions of an information
memorandum to the Deputy Secretary of State from the
Assistant Secretary for Economic and Business Affairs,
on the subject of "ICANN and the Internet."  Six pages
(one version seven).  Four versions not dated, final
version dated December 1, 2005.  Denied in full.
Exemption (b)(5).

    Document nos. L9A, L10A, E49 and E60 are drafts,
while document no. E65 is signed, returned to the
originator, and has extensive marginalia added by the
recipient.  The document was prepared in response to six
questions from the Deputy Secretary of State on ICANN,
the Internet and the WSIS.  In responding to one of the

six questions posed, the memorandum addresses ICANN's
pending decision to consider a new .xxx TLD.  The
questions posed in the memorandum and the answers
supplied are deliberative and pre-decisional, as are the
marginal notes on document no. E65.  There is some
factual information in this document, but release would
not be meaningful without the underlying question, and
the question is an intrinsic element of the deliberative
process.  (None of the factual material relates to the
issue of a .xxx TLD.)  The information in all of these
documents is exempt from disclosure under the (b)(5)
exemption, and no meaningful information may be
segregated and released.

23.  Document Nos. E52, E57, E58, and E62.  These
are different versions of an information memorandum to
the Deputy Secretary of State from the Assistant
Secretary for Economic and Business Affairs on the
subject of "Internet Corporation for Assigned Names
and Numbers (ICANN)/Internet Governance: Policy
Challenge for 2006."  Two versions undated, two dated
December 20, 2005.  Four pages (five with drafting
page).  Denied in full.  Exemption (b)(5).

Document nos. E52, E57 and E62 are drafts; document
no. E58 is labeled "final" but has neither signature nor
date.  The memorandum endeavors to alert the Deputy
Secretary to issues and policy decisions with respect to
ICANN that are likely to arise in 2006.  There is one
reference in the memorandum to "the .xxx issue," not
related to approval of a .xxx TLD but rather commenting
on the number of FOIA requests related to .xxx and a
correspondingly increased scrutiny of ICANN.  The
document in its various forms deals entirely with
potential issues and their management, and it is thus
deliberative and pre-decisional.  The information is
exempt from disclosure under the (b)(5) exemption, and
there is no meaningful information that may be
segregated and released.

24.  Document No. E54 is a memorandum from the
Acting Director, EB/CIP, to the Assistant Secretary for
Economic and Business Affairs, entitled "1/19/06 Wall
Street Journal Article on Threats to Internet," two
pages, undated and unsigned.  Denied in full.  Exemption
(b)(5).

This is a draft memorandum commenting on the press
article, which discusses threats to the Internet and

proposed alternatives to the DNS.  The memorandum notes
the increased attention to ICANN and briefly cites
several factors, including the proposed .xxx TLD.  It
makes no further comment on .xxx.  The memorandum's
analysis is deliberative.  The information is exempt
from disclosure under the (b)(5) exemption, and there is
no meaningful information that may be segregated and
released.

25.  Document Nos. E2, E18 and E71.  These are
emails that convey information received from officials
of non-governmental entities with interests in Internet
governance.

Document no. E2, dated July 18, 2005, 5 pages, from
Marilyn Cade, a consultant in the telecommunications
industry, to David Gross, EB/CIP.  Released in part.
Exemption B4.

All material related to .xxx was released.
Portions of the information provided by this individual
were volunteered with the expectation that it would be
held in confidence.  Release of these passages could in
the future impair the ability of U.S. officials to
obtain information from that source, and they should

continue to be withheld under the (b)(4) exemption.
There is no meaningful material that may be further
segregated and released.

Document no. E18, dated October 27, 2005, one page,
from Timothy Finton, EB/CIP, to David Gross, EB/CIP,
reporting on information from a source in a business
organization in Washington, deals with the WSIS and
Internet governance.  One of three specific points
discussed in the memorandum relates to approval of a
.xxx TLD.  Denied in full.  Exemption B4.

The information in this message was provided with
the expectation that it would be held in confidence, and
release could impair the future ability of U.S.
officials to obtain information from this source.  The
document is exempt from release under the (b)(4)
exemption.  There is no meaningful material that may be
segregated and released.

Document no. E71 is a chain of two emails, dated
June 8, 2006, five pages, from two different ICANN
personnel to a recipient not named in the document.
Denied in full.  Exemption (b)(4).

These linked messages deal with ICANN, the GAC and
the WSIS.  Just one line in one of the two messages

*ICM Registry v. Department of State et. al*
*Grafeld Declaration*

mentions .xxx. The information in this message was provided with the expectation that it would be held in confidence, and release could impair the future ability of U.S. officials to obtain information from these sources. The document is exempt from release under the (b)(4) exemption. There is no meaningful material that may be segregated and released.

26. <u>Documents No. E14, E20, E31 and E32.</u> These are emails from and to U.S. Government employees. Document no. <u>E14</u> is a three-message chain, two pages, subject "Comments from the Deputy DG Peter Zangl (INFO SOC) and MEP Erika Mann on Internet Governance at conference today," October 21, 2005; <u>E20</u> is a two-message chain, two pages, subject "NYT/IHT op-ed on internet governance," November 2, 2005; <u>E31</u> is a two-message chain, one page, subject "AFP Report on New EU Internet Addresses," December 8, 2005; and <u>E32</u> is a four-message chain, one page, subject "AFP Report on New EU Internet Addresses," December 8, 2005. All released in part. Exemption (b)(5).

Parts of these documents are essentially factual and have been released. Other portions, however, offer interpretation or analysis, or summarize events in such

a way as to reveal the underlying analysis.  It is noted
that in document no. E14, all of the material related to
.xxx is released.  In document no. E20, the excised
passage mentions .xxx, but does not mention ICANN
approval of a new TLD or ICM Registry's contract to
operate .xxx's TLD.  In document no. E31, the excised
comment briefly refers to .xxx and the new .eu TLD; in
document no. E32, an additional brief comment refers to
ICANN.  The withheld portions of these documents are
deliberative and pre-decisional, and the passages are
exempt from release under the (b)(5) exemption.  No
meaningful additional material may be segregated and
released.

27.   Documents No. E15, E16, E28, E29, E30 and E34.
These are emails from and to U.S. Government employees.
Document no. E15 is a three-message chain on meetings
concerning Internet governance, two pages, October 21
and 24, 2005; E16 is a single message, one page, subject
"WSIS Media TPs for E.doc," October 24, 2005; E28 is a
three-message chain, one page, subject "Internet memo to
D," December 7, 2005; E29 is a four-message chain, two
pages, subject "D comments on your IM re ICANN and the
Internet," December 7 and 8, 2005; E30 is a five-message

chain, two pages, subject 120605 WSIS Internet

memo_D.doc," December 8, 2005; and E34 is a five-message

chain, two pages, subject "E short fuse tasker: tasking

request: U/S Shiner's Interview with Economist's Kenn

Cukier," March 14, 2006.  All denied in full.  Exemption

(b)(5).

In document no. E15, the first message reports on a

meeting at which issues in the ICANN and possible

solutions are discussed; the .xxx issue is noted as an

example of one of those issues.  The second message

provides analysis and proposes action, but .xxx is not

mentioned.  The third message forwards the first two.

The chain as a whole is deliberative and pre-decisional

and is exempt from disclosure under the (b)(5)

exemption.  There is no meaningful material that may be

segregated and released.

Documents E16, E28, E29 and E30 provide commentary

on the various information memoranda on ICANN being

prepared for the Deputy Secretary of State.  They

discuss the questions posed by the Deputy Secretary and

the answers to be provided.  The documents are

deliberative and pre-decisional and are exempt from

disclosure under the (b)(5) exemption.  There is no
meaningful material that may be segregated and released.

The five messages in document E34 all deal with
preparations for a press interview.  The focus of the
messages is the broad issue of Internet governance and
ICANN, and the only mention of .xxx is to note that the
journalist had written an article on the subject.  The
messages are deliberative and pre-decisional and are
exempt from disclosure under the (b)(5) exemption.
There is no meaningful material that may be segregated
and released.

28.  Document No. E59 is a two-page paper, undated,
that discusses a meeting between Department of State
officials and a Japanese official.  Denied in full.
Exemption (b)(5).

This is a draft; neither the author nor the
intended recipients are shown.  The only mention of .xxx
is a brief comment about the implications of the issue
in Japan.  Release of the document, to the extent that
the draft may be inaccurate or incomplete, could be
misleading about what transpired at the meeting.  The
document is deliberative and pre-decisional, and it is
exempt from release under the (b)(5) exemption.  There

is no meaningful information that may be segregated and released.

29.  Document No. E24 is a four-message chain of emails, two pages.  Previously denied in full, currently withheld in part.  Exemption (b)(5).

We have determined that three of the messages in this document – an agenda for a projected conference call of the "ICCP Bureau" and subsequent preparation for the call – may be segregated and released.  The final message in the chain, from the director of EB/CIP to an NTIA officer preparing material for the call, provides views that are deliberative and pre-decisional.  This portion is exempt from release under the (b)(5) exemption.  There is no meaningful material that may be further segregated and released.

30.  Document Nos. E3, E36, E68, E69 and E70. These are summaries of or commentaries on "White House high tech conference calls."

Document no. E3 is a three-page email chain, latest date August 1, 2005, released in part.  Exemption (b)(5).  The released portions disclose essentially factual information.  The six excised passages of this e-mail chain -- just one of which addresses the .xxx

issue -- reflect judgments and analysis that are predecisional deliberative process material exempt from release under the (b)(5) exemption. There is no meaningful material that may be further segregated and released.

Document nos. E36, E68, E69 and E70 are in the form of one-page, undated memoranda, from "Richard" to "David." Previously denied in full, currently withheld in part. Exemption (b)(5).

We have determined that these four documents may be released in part, as they contain factual information that may be released. Of the information that we have continued to withhold, not more than a single excision in any document relates to the .xxx issue. The withheld material contains judgments, analysis or anticipated actions that constitute pre-decisional deliberative process material that is exempt from release under the (b)(5) exemption of passages that reflect. There is no meaningful material that may be further segregated and released.

### CONCLUSION

31. The Department has completed searches of those records systems that are reasonably expected to contain

records responsive to plaintiff's request. As a result of these searches, 1,155 pages of documents were released to plaintiff by letter dated July 5, 2006. By letters dated July 14, 2006 and August 17, 2006, an additional 74 responsive records were identified, of which 31 were released in full, 11 were withheld in part, 26 were withheld in full and six were referred to another federal agency for direct reply to the plaintiff. The Department's final response was forwarded to the plaintiff on August 17, 2006.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___24th___ day of August 2006.

Margaret P. Grafeld