

7 October 2005

The Honorable Michael D. Gallagher
Assistant Secretary for Communications and Information
United States Department of Commerce
1401 Constitution Avenue NW
Washington, DC 20230

**RE:    ICM Registry's application to ICANN for a sponsored top-level domain**

Dear Mr. Gallagher:

I greatly appreciate the opportunity Robert Corn-Revere, Kelli Emerick, and I had to meet with you on September 9th to discuss the proposed Registry Agreement between ICM and the Internet Corporation for Assigned Names and Numbers (ICANN). We agreed at that meeting to provide additional information about ICM's application and to address certain issues in greater detail. Accordingly, the attached document entitled "Questions and Answers on the Proposed .xxx Top-Level Domain" addresses the various misconceptions that have arisen with respect to our proposal. This material explains why prominent child-protection advocates and responsible online businesses from around the world have concluded that creation of a .xxx top level domain will serve the interests of children, families, educators, the sponsored community, and the Internet community as a whole.

From the outset, ICM recognized that the application for a new sponsored top-level domain (sTLD) would be controversial, and would elicit comments from individuals and organizations with strong views about adult content on the Internet. As a result, we brought child safety experts and free expression advocates into this process from the start, and our application was submitted with broad support from these communities. In the process, we briefed governments and law enforcement agencies around the world to understand and respond to their concerns.

In the past 18 months, our application has been publicly vetted, debated, commented upon, questioned, and commented upon again. The .xxx domain has been the subject of reporting by major news outlets in the US and around the world, including the *Financial Times*, the *Times* of London, the *New York Times*, the *Washington Post*, the *Chicago Tribune*, *USA Today*, and the *San Jose Mercury News*. Parry Aftab and Donna Rice Hughes debated the topic on national television (though NBC's *Today* program is broadcast internationally) before over 7 million American viewers.

The ICM Registry application has progressed through every single step of ICANN's very thorough - and very public - process. We have demonstrated that the TLD meets the ICANN-adopted eligibility criteria, which were themselves the subject of public debate and comment. When the ICANN Board determined on June 1 to move forward with the sTLD, we entered into contract negotiations with the ICANN staff. We reached agreement on contract terms with the ICANN staff in mid-July, in significant part because ICM agreed to accept the terms and conditions proposed by ICANN, negotiated in depth, and subsequently agreed to by the registries for .travel, .jobs, and .mobi. We looked forward to ratification of the contract by the ICANN Board, scheduled for August 16th. Then, in the final days before the August board meeting, we learned that the United States government - which had previously charged ICANN with responsibility for establishing *predictable procedures and objective criteria* by which to evaluate proposed new top level domains - had questioned the adequacy of the ICANN process and called upon ICANN not to ratify the ICM registry agreement on August 16th, but to provide additional time for a "proper" process.

Ironically, ICM had offered on several occasions and in a variety of fora, to meet with any interested government - including the United States - and/or ICANN's Government Advisory Committee (GAC) as a whole - to respond to any questions or concerns about the proposal. These offers were made directly to the GAC chair, to the GAC secretariat, and to individual GAC members, including representatives of the United States.[1] Indeed, in March of 2005, a full year after the ICM proposal was submitted, in response to correspondence from ICANN CEO Paul Twomey regarding ICANN's ongoing policy initiatives (including, specifically, the new sTLDs under consideration), GAC Chairman Tarmizi indicated that no government had raised any questions about any of the sTLD proposals in the GAC.

In the absence of direct input from any government, ICM has attempted since August to understand the governmental concerns from the publicly available record. That record demonstrates that the primary objection from governments other than the United States is not to the proposed sTLD itself, but to the unilateral authority of the US government to control changes to the Internet's authoritative root. These process and authority concerns are neither new nor specific to the ICM Registry TLD, and were thoroughly vetted as part of ICANN's evolution and reform process. Only the United States Commerce Department felt the need to object on policy grounds wholly unrelated to the stability and security of the Internet.[2]

---

[1]        Just this week we offered to meet with a group of GAC participants from EU member states who are gathering in Brussels on 10 October. Unfortunately, the group was unable to make room on its agenda to meet with us.

[2]        World Inter Press Service reported that Brazil and Spain are concerned that approving a .xxx TLD inevitably paves the way for creation of sponsored top level domains for Nazis or other hate groups. It does not strike us as at all plausible, however, that a .nazi or .hate sTLD would meet the ICANN-issued criterion of protecting the rights of others, to name just one. We also understand that Sweden has objected to the domain on the grounds that adult material is demeaning to women, but we have been unable to review that letter. Finally, we understand that USG representatives have been actively soliciting letters of objection from governments around the world. We have been told that a few communications have been or are forthcoming in response to that solicitation. We have not seen any such letters, but understand that the objections are largely procedural, which for the reason discussed in this letter, we reject.

The Honorable Michael Gallagher
October 8, 2005
Page 3 of 3

Public opposition to the .xxx proposal in the United States on content grounds appears to be limited to those who would prefer that *all* adult material on the Internet be treated as illegal obscenity.  Whatever opinion one may have about adult content, this position is simply inconsistent with settled constitutional law involving the United States' most cherished values of free speech and free association.  In addition, this approach is <u>exactly</u> the kind of market-driven, industry-led approach to Internet governance that the United States has so frequently endorsed.

ICM will continue to address any lingering concerns about the impact of the creation of the .xxx domain on children and families.  We have also reiterated to Chairman Tarmizi that ICM Registry stands ready to meet with the GAC and/or GAC participants "any time, any where" to explain our plans.  We pledge to consult widely with affected stakeholders throughout the pre-launch phase and afterward, and of course, all such stakeholders will, through IFFOR, be invited to participate in the policy development process.  But the road to contract approval has been long and thorough.  ICM has overcome hurdles no other sTLD applicant faced.  Further delay not only imposes significant additional costs on ICM, it delays the introduction of important new tools, technologies and programs to support parents, children, and other Internet users, delays financial support for the work of organizations combating child pornography, undermines the credibility of the ICANN process, and calls into question the U.S. government's commitment to private sector management of the DNS.  Further delay, moreover, will not provide any greater insights into a proposal that has already been thoroughly reviewed by both the general public and expert evaluators throughout ICANN's extensive approval process.

Sincerely,

Stuart Lawley
President
ICM Registry LLC

Cc:    Ambassador David Gross
       Dr. Paul Twomey
       Robert Corn-Revere
       Kelli Emerick