## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ICM REGISTRY, LLC,                   )
                                            )
               Plaintiff,      )
                                            )
     v.                           )
                                            )    Case No. 1:06CV00949 (JR)
UNITED STATES DEPARTMENTS   )
OF COMMERCE and STATE,       )
                                            )
             Defendants.     )
_____)

## PLAINTIFF'S REPLY IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(d) and 56.1, Plaintiff ICM Registry, LLC ("ICM"), by its attorneys, hereby replies to Defendants' response (Doc. No. 13) ("Def. Opp.") to ICM's Cross-Motion for Summary Judgment.  As there continue to be no genuine issues of material fact bearing on ICM's Complaint seeking access to records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), [1] and ICM is entitled to judgment as a matter of law except as otherwise noted herein, *see infra* Section I, the Court should grant ICM's Cross-Motion for Summary Judgment for reasons stated in its Memorandum in Support thereof ("Pl. Mem.") and in this Reply.  *Bennett v. DEA*, 55 F.Supp.2d 36, 38-39 (D.D.C. 1999).

## INTRODUCTION

In response to FOIA requests for documents related to ICM's pursuit of approval from the Internet Corporation for Assigned Names and Numbers ("ICANN") to operate a .xxx domain

---

[1] Defendants did not respond to Plaintiff's Statement of Material Facts Not in Dispute, and accordingly the facts therein may be deemed admitted (as may those not contested in Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute).  Local R. 7(h) ("court may assume that facts identified by the moving party in its statement of material facts are admitted, unless … controverted in the statement of genuine issues filed in opposition").

on the world-wide web, the Departments of Commerce and State each have now had four oppor-tunities to justify redacting and withholding responsive records: their respective initial responses that included redacted and/or withheld documents, their respective decisions on administrative appeals of the redactions and withholdings, a summary judgment motion before this Court, and the instant Reply. It is only on this fourth attempt that the government, for a few isolated records, has finally provided the level of detail necessary to properly evaluate its withholdings and redactions. *See* Section I, *infra*. In most examples, however, it continues to offer the kinds of boilerplate recitations of legal standards and generalities – predominantly under protection afforded by FOIA "Exemption 5," 5 U.S.C. § 552(b)(5), for agency deliberative processes – that are insufficient to satisfy the government's burden of justifying redaction or withholding of any agency record under the FOIA. *See, e.g.*, *Campbell v. DOJ*, 164 F.3d 20, 31 (D.C. Cir. 1999).

For the most part, trying to secure a clear answer from the government regarding exactly what deliberative processes justify nondisclosure continues to be not unlike what parents face in trying to pry weekend plans out of uncooperative teens who only answer the inquiry "where are you going" with "out," and "what are you going to do" simply by saying "stuff." Responsible parents insist on more detailed responses, and the Court should do likewise. Plainly the Com-merce Department was doing "stuff" that related or reacted to news that ICANN was to execute a contract with ICM to operate the .xxx domain. *See generally* Def. Opp. at 8-9. But an agency cannot simply say it was doing "stuff" generally related to a subject matter whenever it wishes to withhold records – which are presumptively disclosable – under FOIA exceptions that "Congress intended to confine … 'as narrowly as is consistent with efficient Government operation.'" [2]

---

[2] *Senate of the Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 584 (D.C. Cir. 1987) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). *See National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2003) ("At

Here, mindful that "providing information material for monitoring the Government's activities is a core purpose of FOIA," [3] the Court must grant ICM summary judgment wherever Defendants continue to offer "[c]onclusory and generalized" explanations that are "unacceptable as a means of sustaining" nondisclosure. *National Parks & Conserv. Ass'n v. Klepper*, 547 F.2d 673, 680 (D.C. Cir. 1976). The government's Reply provides a more detailed explanation than at any previous point to outline the scope of Commerce and State Department authority and responsibilities as they relate to Internet governance generally and to domain name approval. *See, e.g.*, Def. Opp. at 2, 6-8, 11-12. But there continue to be only the most tenuous of links − and in some cases no identifiable connection at all − between material the agencies declined to produce and the exercise of any authority and responsibilities in a policy-making capacity. [4] This may be partly because the government's description of the records in its defenses for withholding and redacting are so vague and boilerplate-laden, [5] but ultimately it has the burden of drawing these

---

all times courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure … and that the statutory exemptions … are to be narrowly construed.") (internal quotes and citations to Supreme Court authority omitted).

[3]   *Southern Utah Wilderness Alliance, Inc. v. Hodel*, 680 F.Supp. 37 (D.D.C. 1988). *Cf. Coastal States Gas*, 617 F.2d at 861 (FOIA encourages agencies to disclose even "exempt material for which there is no compelling reason for withholding").

[4]   *Coastal States Gas*, 617 F.2d at 868 (agency must establish "what deliberative process is involved and the role played by the documents"); *Senate of Puerto Rico*, 823 F.2d at 585 & n. 38 (without "identification of the specific final decisions to which the advice or recommendations" contributed, the Court is "not positioned to pass upon the applicability *vel non* of this privilege").

[5]   This might be addressed by review under 5 U.S.C. § 552(a)(4)(B), which allows courts to "examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions." *See Judicial Watch, Inc. v. Dep't of Army*,  402 F.Supp.2d 241, 249 (D.D.C. 2005); *Senate of Commonwealth of Puerto Rico v. DOJ*, No. 84-1829, 1992 WL 119127, at *4 (D.D.C. May 13, 1992). *But see also Animal Legal Defense Fund v. Dep't of the Air Force*, 44 F.Supp.2d 295, 298 (D.D.C. 1999) ("Vaughn index and the agency affidavits must disclose as much information as possible without thwarting the exemption[]") (internal editing and quote omitted). In this regard, it is notable that ICM suggested at several points in its summary judgment motion that *in camera* review might be

connections to invoke any of FOIA's "limited exceptions" that are designed to ensure "the basic policy that disclosure, not secrecy, [remains] the dominant objective." *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Where the agencies fail to draw such connections, the Court should enter summary judgment in favor of ICM and order the disclosure of the material withheld.

## ARGUMENT

### I.    GOVERNMENT SPECIFICITY IN A FEW NARROW AREAS PERMITS SOME DOCUMENTS TO BE TAKEN OUT OF DISPUTE BUT ALSO UNDERSCORES THE PAUCITY OF ITS CASE FOR OTHER RECORDS

If viewing the government's instant Reply as a whole reveals anything, it is that when they wish to do so Defendants can provide the necessary level of specificity to properly invoke FOIA exemptions and that, conversely, their failure to do so for the bulk of the documents is obvious by comparison. In this regard, after three prior attempts to properly invoke attorney work-product privilege under FOIA Exemption 5, the Department of Commerce finally manages on its fourth try to provide sufficient detail to justify nondisclosure.[6] To claim the privilege, an agency must show that the withheld records were prepared in response or relation to an articulable claim likely to lead to litigation that was fairly foreseeable at the time the records were created. *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 75 (D.D.C. 2003). This requires identification of a specific claim supported by concrete facts that made litigation likely. *Coastal States Gas*, 617 F.2d at 865. However, Defendants' Motion to Dismiss and for Summary Judgment ("Def. S.J. Mot.") and the supporting declaration and *Vaughn* index offered only Commerce's recitation of black-letter law that the records "were prepared in contemplation of

---

necessary or appropriate in several regards, Pl. Mem. at 20-21, 34, 39, and the government's Reply is silent with respect to any opposition to the possibility of such review.

[6]  *See* Def. Opp. at 18-20 & Supplemental Declaration of Kathy Smith ("Smith Sup. Decl."), *passim*.

litigation" and claimed they "consist[] of information prepared by Commerce attorneys in contemplation of litigation brought … by ICM," that would somehow relate to "creation of a new .xxx" domain. *See* Pl. Mem. at 35-36 (citing Def. S.J. Mot. at 31; Smith Decl. at 8, 28). No further explanation, evidence, or support was provided for the belief that such litigation was foreseeable, or to show that it was "likely" to occur. [7]

The insufficiency of this proffer stands in contrast to – and is highlighted by – the instant Reply, which cites specific facts on which the agency based its belief that litigation was likely, and supports its claim with documents and a sworn declaration explaining how the belief arose. [8] Without commenting on the efficacy of forming a belief that the meeting with and correspondence from ICM portends litigation, or whether litigation is or remains likely or foreseeable, we note the Reply and accompanying declaration offer the degree of factual specificity that agencies must furnish in order to invoke the FOIA Exemption 5 privileges. In short, it is precisely the kind of "factual support … for an essential element of the claimed privilege" that precedent in this Circuit demands. [9]

---

[7] Of course, even less detail was provided when Commerce redacted and withheld records in initially responding to ICM's FOIA request, at which time it simply stated that it "withheld certain documents in whole or in part … as predecisional or privileged," and in Commerce's administrative appeal ruling, which did not even mention the work-product privilege or the legal standard for invoking it. *See* Pl. Mem. at 10 & Exh. 2; Smith Decl. Exh. 8.

[8] *See* Def. Opp. at 18-20; Smith Supp. Decl. at 2-3 & Exhs. A-B (citing ICM letter to then-DOC Assistant Secretary for Communications and Information Michael Gallagher conveying free speech concerns, and Q&A attachment thereto discussing, *inter alia*, constitutional and administrative law bearing on Commerce intervention into ICANN domain approval process).

[9] *Senate of Puerto Rico*, 823 F.2d at 585. *See also Coastal States Gas*, 617 F.2d at 866 (requiring "sufficient facts … to permit a conclusion that in fact specific claims had arisen and were likely to be pursued to the point of litigation"). In addition, without conceding the matter, ICM acknowledges the extent to which drafts of documents, not shared outside the agency, *see* Smith Sup. Decl. at 2, could qualify as "predecisional," thus allowing them to be removed from dispute as well. *But see Judicial Watch, Inc. v. United States Postal Serv.*, 297 F.Supp.2d 252, 261 (D.D.C. 2004) ("drafts are not presumptively privileged"). However, *in camera* review to ensure the documents are what the government claims would not be inappropriate. *See Ash*

However, Defendants' claims of work-product protection apply only to documents AC20 and AC21. Smith Decl. at 28. Meanwhile, its current showing on this one exemption reflects a level of factual specificity missing from the government's other FOIA exemption claims. Whereas on attorney work-product the Court can now see how the government finally has addressed the necessary elements of the legal standard and understand how the particular documents relate to the claimed privilege, the same cannot be said for the claims of deliberative process and attorney-client privilege, or the invocation of FOIA "Exemption 4," 5 U.S.C. § 552(b)(4), which protects "trade secrets and commercial or financial information" that is "privileged or confidential."

## II.    THE GOVERNMENT HAS NOT PROVIDED SUFFICIENT DETAIL TO SUSTAIN ITS EXEMPTION 5 DELIBERATIVE PROCESS CLAIMS

While the government has embellished its explanation of possible policy roles the State and Commerce Departments might play in Internet governance and domain-name approvals in the abstract, its showing remains insufficient to meet its burden under the deliberative process privilege due to ongoing failure to link the records at issue to discernible policy-making activity. In moving for summary judgment, ICM agreed not only with the government's statement that "the privilege does not turn on the ability … to identify a specific decision in connection with the material withheld," but also with its recognition that agencies must "establish what deliberative process is involved and the role played by the documents" therein. Pl. Mem. at 24 (quoting Def. Mot. at 21 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975); *Coastal States Gas*, 617 F.2d at 868)) (internal quotes omitted). But on reply, the government appears to back away from this recognition of its burden and instead chafes at the notion that Exemption 5

---

*Grove Cement Co. v. FTC*, 511 F.2d 815, 817 (D.C. Cir. 1975). *See also supra* note 5 (discussing government silence on prospect of *in camera* review).

requires that it "identify specific aspects of" decision-making to which the withheld and redacted records relate. [10] At the same time, it acknowledges that courts must "seek to identify 'an agency decision or policy to which the document contributed,'" and that applicability of the deliberative process privilege depends on "the individual document and the role it plays in the administrative process." *Id*. at 5-6 (quoting *Senate of Puerto Rico*, 823 F.2d at 585).

Ultimately, regardless whether it is characterized as establishing the deliberative process and the document's role in it, identifying specific policy-making at issue, or some other appellation, it is clear the government is attempting to play semantic games in lieu of providing the level of detail required to claim the privilege. The government does not dispute the basic rule that it is "not enough that a record was prepared as part of agency consideration of some matter" but rather it also must "bear on the formulation or exercise of policy-oriented judgment" and "reflect the give-and-take of the consultative process." Pl. Mem. at 23 (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994); *National Inst. of Military Justice v. DOD*, 404 F.Supp.2d 325, 347 (D.D.C. 2005)) (internal quotes omitted). Yet the government falls short of this mark. Rather, it simply describes general activities related to Internet governance and domain-naming in which State and Commerce engage, and asserts that the records at issue relate in some un-

---

[10] Def. Opp. at 2, 4-5. The government continues to devote considerable attention to the privilege's "ultimate aim," the allegedly "peripheral" relationship of withheld material to ICM's interest in matters related to .xxx, and to how "very little information relating to .xxx" was withheld. *Id*. at 4, 13, 15. However, it matters little if an agency's withholding of records that the law requires it to disclose meets the rationale underlying a FOIA exemption if the agency cannot satisfy the legal test for invoking the exemption. *See Ditlow v. Shultz*, 517 F.2d 166, 171 n.18 (D.C. Cir. 1975) (courts lack "equitable discretion to permit withholding of information which does not fall within one of the specific exemptions"). *See also Association of Nat'l Advertisers, Inc. v. FTC*, No. 75-1304, 1976 WL 1294 at *2 (D.D.C. July 15, 1976). Further, the fact that withheld material may be "peripheral," or represents only a small portion of that sought, does not diminish an agency's obligation either to provide access under the FOIA or to satisfy a specific exemption that permits nondisclosure. *See Morton-Norwich Prods., Inc. v. Mathews*, 415 F.Supp. 78, 81 (D.D.C. 1976); *Hall v. DOJ*, 26 F.Supp.2d 78, 780 & n.1 (D.D.C. 1998).

defined way to those activities.  In doing so, it fails to explain what documents relate to what activity, how specific documents contributed to the policymaking associated with the activity, or how the records factored into "give-and-take" processes underway at the time they were created.

With respect to the Department of Commerce, the government provides a laundry-list of Internet-related responsibilities and potential actions falling to that agency, but fails to explain how the specific records at issue pertain to particular policy initiatives. [11]  As a threshold matter, the government incorrectly claims ICM "suggests that the United States government has no public policy role to play regarding ICANN, Internet governance, or … establish[ment of] a .xxx top-level domain."  Def. Opp. at 2.  Rather, ICM's argument was that Commerce was far too secretive about its backstage role in, among other Internet-related matters, approval of .xxx, and that by playing hide-the-ball it had obscured the relationship between whatever policy-making authority it may have and the records at issue, so as to preclude claiming the deliberative process privilege.  In any event, while Commerce's decision to finally shed some light on what it was "up to" [12] and to describe some of the actions it is empowered to take are essential prerequisites to asserting the deliberative process privilege, its limited showing remains insufficient.  *See Wilderness Soc'y*, 344 F.Supp.2d at 12 (court must be able to "clearly identify an agency decision to which the advice, recommendations, thoughts and opinions … in the withheld documents

---

[11]  Def. Mot. at 2, 6-8 (describing DOC's "consultative, advisory, and oversight functions vis-à-vis ICANN," the United States' "provi[sion of] advice to ICANN on matters of public policy" through the "Governmental Advisory Committee ("GAC"), United States "policy control over and operational oversight responsibility for … the 'authoritative root zone file,'" and the extent to which "NTIA must approve [any] recommendation [to add a domain] and provide written direction … to modify the authoritative root zone file before the domain is live").  *Cf. id.* at 2 (describing State Department's "lead role in implementing foreign policy" and explaining that "Internet governance is a subject of [U.S.] foreign policy").

[12]  *See Center for Int'l Envtl. Law v. OTR*, 237 F.Supp.2d 17, 22 (D.D.C. 2002) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

contributed"); *Judicial Watch v. USPS*, 297 F.Supp.2d at 259 (agency "must correlate facts in or about each withheld document with elements of the privilege").

In this regard, the government spends the better part of four pages detailing "the broad scope of policy-making" by Commerce as relates to domain-name approval and ICANN over-sight that allegedly is "subject to protection under the deliberative process privilege." Def. Opp. at 9. Specifically, it explains how NTIA holds ultimate power over domain approvals via control of the authoritative root zone file, the ability to ensure that ICANN's processes for new domains are as "open and transparent" as the U.S. deems necessary, and DOC's "official role with respect to [ ] creation of new domains" through recommendations to the GAC. [13] But the government stops short of explaining how the documents at issue relate to any of these policy prerogatives, and instead simply offers the generality (in a related but slightly different context) that "in light of the broad scope of policy-making subject to protection" the possibility that "predecisional, deliberative communications made in … formulating DOC positions would not be protected is preposterous." *Id*. at 9. *See also id*. at 16. This statement merely confuses bluster with explana-tion. Such general references to agency activities and powers relating to "Internet governance," "ICANN oversight" and "domain-name approvals" are no different from failed attempts to in-voke the deliberative process privilege by "vaguely suggest[ing]" records at issue "relate[d] to 'wilderness issues,' 'wilderness review,' 'wilderness policy,' and 'wilderness matters.'" *Wilder-ness Soc'y*, 344 F.Supp.2d at 11. *See Judicial Watch v. USPS*, 297 F.Supp.2d at 264 ("It is not enough to say that the documents relate, in some way, to actions taken or proposed in response to

---

[13]   *Id*. at 6-8.  It is a mystery how "ensuring that the process for creating new domains is open and transparent," *id*. at 7, is furthered by Commerce Department redaction and withholding of documents in its possession that relate to ICANN's approval of the .xxx domain.

the discovery of anthrax in the mail, for if they did not, the documents would not be before the court at all.") (internal quotation from and citation to pleading omitted).

With respect to whether the documents here are "predecisional" and "deliberative," the government mischaracterizes ICM's position by claiming the "primary argument … is not that the withholdings fail to satisfy the basic legal requirements for the privilege, namely that the documents are 'predecisional' and 'deliberative,' but rather that the DOC did not identify … any legitimate agency policy to provide a basis for the privilege." *Id*. at 4 (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)) (internal citation omitted).  This distortion has things exactly backwards.  While the foundation of ICM's position was the agencies' failure to articulate what policymaking was at stake, the point is that failure to place disputed records in the context of agency action thwarts any ability to dispute – and the Court's ability to decide – whether documents are predecisional or deliberative.  *See* Pl. Mem. at 26, 31 n.27.  Needless to say, this enduring failure to link the records in dispute to the policymaking allegedly at issue continues to preclude finding they were in fact "predecisional" or "deliberative," as the privilege requires. [14]

In most cases the State Department does a somewhat better job than Commerce in showing how specific documents relate to particular policymaking initiatives, though in some cases it continues to deal in generalities. [15]  For example, the government claims that Document L6A, an "internal DOS memorandum … providing the author's in-depth views on 'the ICANN question'" is part of a "prototypical 'deliberative process' because it consists in its entirety of 'suggestions

---

[14]    Similarly, other than reciting the "broad scope" of Commerce Department policymaking in this area and the fact that "DOC and other Government agencies have Offices of Public Affairs" that "respond[ ] to inquiries form the press and public," Def. Opp. at 9, the government does little to respond to ICM's showing that, to the extent documents reflect the agencies were engaged in non-policymaking and instead, for example, were politicking or massaging public opinion, the documents cannot reasonably said to be "deliberative" within the meaning of the privilege.  *See* Pl. Mem. at 31-32 and cases cited therein.

[15]    *See* Def. Opp. at 14-18.  *Cf. supra* n.9 (removing draft documents from disputed status).

or recommendations as to what agency policy should be'" on "foreign policy and other issues

implicated by the U.S. Government's relationship with ICANN."  Def. Opp. at 15 (quoting

*Coastal States*, 617 F.2d at 868).  But such generalized recitation of an area of State Department

responsibility is exactly the kind of "vague" statement that constitutes only "the briefest of

references to … subject matter" that this Court has found insufficient to invoke the deliberative

process privilege.  *See Wilderness Soc'y*, 344 F.Supp.2d at 11-12.  Similarly, efforts to defend

redactions simply by claiming generally that they summarize "conference calls [that] served as

interagency fora for discussing and deliberating on current high tech policy issues," Def. Opp. at

18, are insufficiently specific with respect to "formulation of policy-oriented judgment" and the

"give-and-take" of "consultative processes" to satisfy the standard for invoking the privilege. [16]

## III.    THE GOVERNMENT HAS NOT PROVIDED SUFFICIENT DETAIL TO SUSTAIN EXEMPTION 5 ATTORNEY-CLIENT PRIVILEGE CLAIMS

The single paragraph in the instant Reply dedicated to defending the government's claim

of attorney-client privilege fails to remedy the fact that its invocation of Exemption 5 on this

ground "'consists of boilerplate' that once stripped to its essence, 'like a Persian cat with its fur

shaved, is alarmingly pale and thin.'"  Pl. Mem. at 37 (quoting *Schurz Communications, Inc. v.*

---

[16]    *Ethyl Corp.*, 25 F.3d at 1248; *National Inst. of Military Justice*, 404 F.Supp.2d at 347. *See Chavez-Arellano v. DOJ*, No. 05-2503, 2006 WL 2346450, *7 (D.D.C. Aug. 11, 2006) (statement that document "contains discussions between the [U.S. Attorney's Office in Southern District of Texas] and other state and federal agencies regarding possible prosecutions" was too generic to invoke deliberative process privilege).  With respect to records the agencies withheld rather than redacted on grounds the protectable information was not segregable, the government did not respond to the fact that "'blanket declarations' … that 'all facts are so intertwined as to prevent disclosure,'" falls short of the obligation that "for each entry the defendant is required to specify in detail which parts of the document are disclosable."  Pl. Mem. at 22 n.23 (quoting *Vaughn* Index at 1, 12, 13, 16, 17, 20, 21, 22, 24, 27, 28; *Wilderness Soc'y*, 344 F.Supp.2d at 19). Accordingly, the agencies must better substantiate their claims of non-segregability or disclose the full records.  *Dorsett v. Department of Treasury*, 307 F.Supp.2d 28, 40-41 (D.D.C. 2004). *See also Morton-Norwich Prods.*, 415 F.Supp. at 82; *Judicial Watch v. USPS*, 297 F.Supp.2d at 257 (discussing document-by-document justification vis-à-vis segregability).

*FCC*, 982 F.2d 1043, 1050 (7th Cir. 1992)).  The government mischaracterizes ICM's position by claiming its "fundamental objection to the DOC's assertion of attorney-client privilege is that matters as to which DOC clients were seeking legal advice were not within DOC's authority, and thus not legitimate subjects" for "DOC attorneys to provide legal advice."  Def. Opp. at 20.  But that was not ICM's "fundamental objection" – or even the main point – of ICM's showing of that the government failed to carry its burden on this privilege.  Rather, the vagueness with which the government described Commerce's ICANN- and .xxx-related activities under Exemption 5 contributed to failure of its attorney-client privilege claim, and ICM properly pointed this out.  Pl. Mem. at 38.  But the fatal flaw ICM highlighted is that Commerce's justification for claiming attorney-client privilege was "far too slight and conclusory to satisfy its burden of justifying non-disclosure."  *Id.*

Specifically, the government may invoke the attorney-client privilege under Exemption 5 only if it shows a withheld record involves confidential communications made in pursuit of legal advice and it provides sufficient facts to substantiate the claim of privilege.  *Wilderness Soc'y*, 344 F.Supp.2d at 16; *Animal Legal Defense Fund*, 44 F.Supp.2d at 301.  But on this privilege, ICM explained that:

> The argument in the government's brief on this point, which comprises but a portion of a single paragraph, consists solely of one factual sentence quantifying what was withheld, two sentences that simply paraphrase in conclusory terms the formal legal requirements, and a third sentence that describes the documents in the context of the relevant legal standard without explaining how it is satisfied.  Similarly, the Smith declaration combines these statements into a single paragraph that claims the standard is met simply by restating the components thereof and inserting the word "Commerce" where appropriate [while the] Vaughn index uses much the same language, with descriptions of … allegedly privileged documents that are only slightly more revealing.

Def. Mem. at 37 (internal citations, quotations and footnotes omitted). In short, the government explained what it takes to substantiate an attorney-client privilege claim and named the records for which it was asserting the privilege, but utterly failed to explain <u>how</u> the records qualify for nondisclosure.

Accordingly, that fact that the instant Reply "explains that the DOC has official responsibilities related to ICANN and its creation of new domains" that might "rais[e] legal issues" is entirely non-responsive to the larger problem that the government made no attempt to show how the documents actually *satisfy* the relevant legal standard for attorney-client privilege. Def. Opp. at 20-21. The instant Reply does nothing to further the government's cause in this regard. Consequently the Court should order Commerce to release the withheld records and unexpurgated versions of those it redacted, or at least should conduct an *in camera* review to ensure the records support the conclusory government assertions regarding attorney-client privilege. *See* Pl. Mem. (citing *Coastal States*, 617 F.2d at 863; *Judicial Watch, Inc. v. Department of Commerce*, 83 F.Supp.2d 105, 112 (D.D.C. 1999)).

## IV.  THE GOVERNMENT'S EXEMPTION 4 CLAIMS ARE LITTLE MORE THAN *IPSE DIXIT* EXPLANATIONS

As with Exemption 5, the government's attempt to defend its withholdings and redactions under FOIA Exemption 4's protection for trade secrets and confidential commercial or financial information boils down to recitations of buzz words and phrases from the legal standard that fail to apply the standard to the material at issue to justify nondisclosure. As a threshold matter, the government claims "plaintiff cannot seriously dispute that the information in question is 'commercial.'" Def. Opp. at 21. To the extent this is true, it primarily is because the government did not sufficiently describe the documents or explain how they satisfy the requirements of being "commercial or financial" and "privileged or confidential" within the meaning of Exemption 4.

*See id.* (citing *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)).  And this is, in microcosm, the fundamental flaw with the Exemption 4 claim – it is so "conclusory and generalized," *Nat'l Parks & Conservation*, 547 F.2d at 680, that it "fail[s] to supply … even the minimal information necessary" to support withholding.  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 150 (D.C. Cir. 2006) (quoting *Coastal States Gas*, 617 F.2d at 861) .

In particular, ICM showed the State Department claim of Exemption 4 protection stated only that the records involved "information concerning commercial aspects of the ICANN process," that they "deal with ICANN, the GAC, and the WSIS," and that for the one partly disclosed record, nothing in the non-redacted portion indicated the missing material is trade secret or commercial or financial information.  Pl. Mem. at 19-20 (citing Grafeld Decl. at 10, 18).  Consequently, the Exemption 4 defense turned solely on the claim – which was unsupported by evidence or explanation – that "[t]he information … was provided with the expectation that it would be held in confidence, and release could impair the future ability of U.S. officials to obtain information." [17]  The further "explanation" in the instant Reply does not remedy this problem.

Rather than explaining what it is about the records that makes the withheld material commercial or confidential, the government focuses on the sources that provided the records in an indirect – and ultimately futile – effort to satisfy its burden.  The government claims there is "obvious commercial interest" in the information, Def. Opp. at 21, but apparently this is so because in one case it "reflects the professional insights of … a consultant" while in another it was "provided … by a source in a Washington, D.C. business organization," *id.* at 22, as if informa-

---

[17]  *Id.* at 20 (quoting Grafeld Decl. at 19).  *See Badhwar v. Department of Air Force*, 615 F.Supp. 698, 705 (D.D.C. 1985) (rejecting as conclusory similar statement in government affidavit to effect that "[r]elease of this type of information outside of the defined flight safety channels would effectively 'dry up' one of the most productive sources of information we have for preventing future accidents").

tion produced by such sources is of necessity confidential, regardless of substance. This supposition finds no support in the law, however, as this Court has found conclusory assertions of commercial harm that were *more* detailed and specific than those offered here. [18]   Untethered from any insight into what the withheld material comprises or what makes it secret or confidential, the government's claims are conclusory assertions that are insufficient to justify nondisclosure. [19]

## V.   ADJUDICABILITY OF DISMISSED ADMINISTRATIVE FOIA APPEAL

With respect to Commerce's refusal to decide the administrative appeal for DoC Request 06-127 filed on the date designated by agency rules but slightly after the 5:00 p.m. cut-off for being treating as filed the next day, Commerce continues to quibble over how to characterize the tardiness and insist on strict application of its rules, but fails to address prudential considerations

---

[18]   *See Physicians Comm. for Responsible Med. v. NIH*, 326 F.Supp.2d 19, 25-26 (D.D.C. 2004) (government failed to show disclosure of grant proposal would harm scientist's commercial interests where it stated "disclosure may affect the grantee[']s ability to publish his research in journals whose policies dictate that they will not publish research that previously has been disclosed," and that "potential commercial harm or competitive disadvantage [would result] if the information is released … as several laboratories are currently working on similar projects").

[19]   *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983); *Nat'l Parks & Conservation Assoc.*, 547 F.2d at 680.  Part of the problem is that Defendants appear not to understand what it means for a statement to be "conclusory" as opposed to actually substantiating a claim of exemption from FOIA disclosure.  For example, the government argues that the fact that "DOS has concluded that release of [certain] information 'could impair the future ability of U.S. officials to obtain information from [a] particular source," Def. Mem. at 22 (quoting *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 878-79 (D.C. Cir. 1992)), "is not 'an entirely conclusory recitation of legal principle.'"  *Id.* (quoting Pl. Mem. at 20).  Rather, the government claims, this recapitulation of State's position "is a factual statement that reflects the sensitive nature of the information."  *Id.*  To be sure, recounting what the State Department concluded may be a "fact," one which may "reflect" what the agency concluded – that the information is "sensitive."  But asserting facts and hinting about what they reflect is not the same as actually explaining the how information is confidential or secret, or whether there is any justification for State's conclusion about future effects of disclosure.  As this Court recently explained, statements that "documents reflect the personal opinions of Agency staff" and similar pronouncements are merely "conclusory" claims and "buzz words" that are insufficient to invoke FOIA exemptions.  *General Elec. Co. v. Johnson*, 2006 WL 2616187, at *9 (D.D.C. Sept. 12, 2006).  *See also Badhwar*, *supra* note 17.

that support adjudicating ICM's claim.[20]  The government admits "exhaustion of a FOIA request is not jurisdictional because the FOIA does not unequivocally make it so" and that whether the Court should accept jurisdiction absent an administrative appeal is jurisprudential.[21]  It also implicitly accepts ICM's showing that justiciability of the appeal for DoC Request 06-127 falls on a continuum between *Wilbur*, which permitted a FOIA case to go forward despite an administrative appeal that was four years late since the agency processed it, and *Center for Biological Diversity*, which declined to proceed because filing of an administrative appeal 12 minutes late, though minimal, resulted in the agency dismissing and losing the opportunity to exercise its discretion and expertise.  *See* Pl. Mem. at 41-42; Def. Opp. at 23-25 (each citing *Wilbur v. CIA* & *Center for Biological Diversity*).  Predictably, in seeking dismissal, the government claims this case is less like *Wilbur* and more like *Center for Biological Diversity*, where the administrative appeal's tardiness allegedly "cut off" the agency's "power to correct or rethink initial judgments or errors" and it "simply respected its regulations and declined to review the appeal."  Def. Opp. at 24 (quoting *Center for Biological Diversity* at *24, *26).  But this fails to recognize that, on these critical points from *Center for Biological Diversity* on which the government relies, prudential considerations favor ICM's position.

---

[20]  The government continues to describe the appeal as four days late even though (i) in order to do so it must cite a due date that fell on a weekend followed by a federal holiday, and (ii) there is no question – and the government does not deny – that ICM filed the appeal on the correct day, *i.e.*, the first business day after the Saturday deadline.  *Compare* Def. Opp. at 23 *with* Pl. Mem. at 40-41.  In other words, had ICM filed the appeal less than an hour earlier, Commerce would have no argument whatsoever.  Thus, no matter how strenuously it insists the appeal came "four *calendar* days" after the thirtieth day, Def. Opp. at 23 (emphasis added), nothing changes the fact that three of the "calendar" days were weekends and holidays that do not count under agency rules or the FOIA.  *See* 15C.F.R. § 4.6(b); 5 U.S.C. § 552(a)(6)(A)(i)-(ii) (each "excepting Saturdays, Sundays, and legal public holidays" from counting rules).

[21]  Def. Opp. at 24 (citing *Center for Biological Diversity v. Gutierrez*, 2006 U.S. Dist. LEXIS 55437 at *20 (D.D.C. Aug. 10, 2006) (quoting and ultimately distinguishing, *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004)).

First, on whether Commerce had "an opportunity to exercise its discretion and expertise," and/or "correct or rethink initial judgments and errors," *id*., the government does not respond at all to ICM's showing that the agency had every opportunity to take these steps. *See* Pl. Mem. at 41-42. Specifically, it had the opportunity to consider issues raised in the administrative appeal for DoC Request 06-127, because at the time of its filing, an administrative appeal already was pending on DoC Request 06-068 and the two raised identical issues. *See id*. *See also* Compl., Apps. E-F. In fact, the appeal on DoC Request 06-127 reiterated, in summary form, the claims made on administrative appeal for DoC Request 06-068 and "incorporate[d] by reference" arguments in that previously filed appeal. [22] In considering 06-068, Commerce had the chance to decide – and did decide – a closely related and essentially identical case, giving "the parties and the courts benefit of the agency's experience and expertise." *Wilbur*, 355 F.3d at 677 (citation omitted). Accordingly, contrary to the government's claims, this case is unlike *Center for Biological Diversity*, which had no parallel, related request and administrative appeal that permitted the agency to address the issues raised in the dismissed administrative appeal. [23]

---

[22] *See* Compl. App. F, at 2. *Compare also* Compl. App. E, at 8-10 (appeal in DoC 06-068 arguing Commerce asserted Exemption 5 in a conclusory fashion, failed to articulate decisions that purportedly triggered the deliberative processes privilege, withheld or redacted documents that are not predecisional, and shared documents with parties outside of DOC) *with* Compl. App. F (advancing identical arguments with respect to DoC Request 06-127 and stating "[m]any of these same problems plague the present FOIA Response's withholdings and redactions").

[23] The government also completely fails to respond to ICM's showing that requiring the administrative appeal on DoC Request 06-127 to play out to administrative finality would have been futile in any event, as demonstrated by the outcome of the nearly identical appeal in 06-068 and by the fact Commerce did not decide the appeal in 06-608 until *after* ICM commenced the present action. *See* Pl. Mem. at 43 (citing *Randolph-Sheppard Vendors of Am, v. Weinberger*, 795 F.2d 90, 106 (D.C. Cir. 1986)). This, of course, bears directly on whether the exhaustion requirement the government claims is necessary under *Center for Biological Diversity* has been satisfied, or is excused in any event. *See American Fed'n of Gov't Employees  v. Acree*, 475 F.2d 1289, 1292 (D.C. Cir. 1973) (*per curiam*).

Second, with respect to the reliance upon *Center for Biological Diversity* insofar as the agency therein "simply respected its regulations and declined to review the appeal," the government ignores ICM's showing that Commerce did everything but "respect its regulations" in handling ICM's requests.  Here, Commerce utterly ignored requirements in its rules regarding deadlines for deciding FOIA appeals, the obligation to inform ICM when extensions permitted by statute were being exercised, and even in cooperating with its own counsel to allow the case here to proceed on the schedule to which the parties agreed and that the Court endorsed.  Pl. Mem. at 43.  Of course, there is not much the government can say regarding the way Commerce has played fast-and-loose with deadlines but would like to see them applied strictly to ICM.  *See id.* (citing *United States v. One White 1987 Tempest Sport Boat*, 726 F.Supp. 7, 10 (D. Mass. 1989) ("If non-governmental claimants are held to a high standard of forgiveness for their failure to act within … deadlines, fundamental fairness requires that the government be held to the same high standard.")).  But that does not change the fact that it puts the government in a different posture than in *Center for Biological Diversity* when it comes to regularity of agency processes.

Finally, the further point of judicial economy raised by ICM goes unaddressed – and thus undisputed – in the government's instant Reply.  *See id.* at 43-44 (citing *Alaska Excursion Cruises, Inc. v. United States*, 603 F.Supp. 541, 547 (D.D.C. 1984); *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1313 (D.C. Cir. 1991)).  As ICM noted, since the pursuit of judicial review of agency action on DoC Request 06-068 (which the government does not dispute is properly before the Court) and DoC Request 06-127 involves identical issues, it would serve judicial economy to decide both concurrently.  The alternative – that ICM refile its request, obtain the same response from Commerce, then file a new complaint to obtain judicial review – would only mean that the Court would find the same issues before it again.  *See Missouri v. Bowen*, 813 F.2d 864, 872 (8th

Cir. 1987). It is more logical to address the issues in one case rather than requiring unnecessarily duplicative expenditures of the Court's and the parties' resources. In sum, as the relevant prudential factors clearly favor exercising jurisdiction in 06-127, this Court should deny the government's motion to dismiss that portion of the Complaint on exhaustion grounds. [24]

## VI.   REQUEST FOR EXPEDITED HEARING OR CONSIDERATION ON THE PAPERS

As it has now been over a year since ICM filed the first of the FOIA requests at the heart of this case, which commenced only after several months of inaction following expiration of the statutory deadlines for agency action, *see* Pl. Mem. at 9-13, ICM respectfully requests that the Court schedule the summary judgment motions for hearing at the earliest possible date, or even that it issue an expedited ruling on the pleadings without holding a hearing. As indicated in our opening submission, ICANN's decision not to enter the contract with ICM to operate the .xxx domain remains subject to a request for reconsideration that, among other things, urges reversal on grounds of improper U.S. government influence over the ICANN process. [25]  It is extremely likely that, only if the Court expedites review, will any documents it orders disclosed have any utility in the remaining process to which ICM is entitled under ICANN's rules. [26]

---

[24]  In addition, as previously urged, the Court accordingly should order Commerce to release all redacted or withheld documents sought by DoC Request 06-127 since the government made only procedural arguments and thus waived any merits arguments; at minimum Commerce should be required to submit a *Vaughn* index and supporting material on an expedited basis. *See* Pl. Mem. at 44 (citing *Alexander v. Unlimited Progress Corp.*, 2004 U.S. Dist. LEXIS 21013, at *11 (N.D. Ill. Oct. 20, 2004); *Curcio v. FBI*, No. 89-0941, 1990 U.S. Dist LEXIS 14738, at *9-*15 (D.D.C. Nov. 2, 1990); *Boggs v. United States*, 987 F.Supp. 11, 22 (D.D.C. 1997)).

[25]  Pl. Mem. at 16-17. The date for ICANN to decide the reconsideration, which initially was extended through September 30, 2006, *see id.* at 17, has been extended beyond that date, and as noted ICM has the further right to require ICANN to submit to an arbitration process. *Id.*

[26]  When ICM commenced this case in May 2006, it filed an immediate Motion to Compel Preparation of a *Vaughn* Index (Doc. No. 3), in hopes of expediting the litigation by having the agencies provide at the earliest possible date their justifications for withholding and redacting. The government failed to respond to the motion within the time allotted, *see* Defendants' Motion

Congress and the Courts have explicitly stated that a FOIA case in which the information sought may lose its value if not disclosed promptly, as is the case here, stands as a "paradigmatic example[] of 'good cause'" that justifies expedited treatment. *Ontario Forest Indus. Ass'n. v. United States*, 444 F.Supp.2d 1309, 1319 (Ct. Int'l Trade 2006). "Indeed, the statutory provision which grants the district court jurisdiction over FOIA cases provides that they take precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way." *The Washington Post v. Department of Homeland Sec.*, 2006 WL 2979371, at *4 (D.D.C. Sept. 25, 2006) (citations and internal quotation omitted). For this reason, courts consistently expedite litigation where necessary to preserve the value of time-sensitive information. *See*, *e.g.*, *Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1448 (D.C. Cir. 1994) (expediting appeal involving document disclosure and open meetings under Federal Advisory Committee Act because group would soon finish its work); *Ryan v. DOJ*, 617 F.2d 781, 784, 789 (D.C. Cir. 1980); *Ferguson v. FBI*, 722 F.Supp. 1137, 1144-46 (S.D.N.Y. 1989). Plaintiff urges this Court to decide the summary judgment motions as quickly as possible, lest the window close on ICM's ability to obtain relief from ICANN's refusal to enter the contract for operation of the .xxx domain, which would diminish any ultimate disclosure under the FOIA here to a Pyrrhic victory.

---

for Enlargement of Time to Answer, Move or Otherwise Respond to Plaintiff's Motion to Compel Preparation of a *Vaughn* Index (Doc. No. 4) at 2 ("counsel neglected to respond to plaintiff's motion to compel"), and ultimately had its failure to respond excused as a result of the parties' compromise on the timing of summary judgment pleadings. *See* Proposed Briefing Schedule for Dispositive Motions (Doc. No. 5). This ended any prospect of expedition by the government, as in the course of consulting on scheduling it made clear the agencies required until mid-August to produce their *Vaughn* indices. *Cf.* Motion for Enlargement of Time to File Dispositive Motion (Doc. No. 7) at 2 ("enlargement of time [was] needed because counsel was not provided with the [agency] materials necessary to file [a summary judgment] motion in sufficient time"). The agencies' overly casual attitude toward deadlines makes it all the more imperative that the Court expedite matters now that the parties have fully briefed summary judgment.

**CONCLUSION**

For the foregoing reasons and for those stated in support of its motion initially, Plaintiff ICM respectfully requests that the Court grant Plaintiff summary judgment on its Complaint in this matter to the extent indicated herein.

Dated this 26th day of October, 2006.

Respectfully submitted,

DAVIS WRIGHT TREMAINE L.L.P.


<u>        /s/ Robert Corn-Revere        </u>

Robert Corn-Revere – Bar No. 375415
Ronald G. London – Bar No. 456284
Amber L. Husbands – Bar No. 481565
Davis Wright Tremaine LLP
1500 K Street, N.W., Suite 450
Washington, D.C.  20005
(202) 508-6600

ATTORNEYS FOR PLAINTIFF