## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ICM REGISTRY, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| COMMERCE and | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, | ) |
| Defendants. | ) |

Civil Action No. 06-0949 (JR)

### DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff brings this suit pursuant to the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552. As instructed by the Court, Defendants, United States Department of State and United States Department of Commerce, by and through counsel, pursuant to Fed. R. Civ. P. 56, respectfully renew their motion for summary judgment on the grounds that there are no material facts in dispute, and that Defendants are entitled to judgment as a matter of law.

To facilitate review of this matter, the Court is respectfully referred to the Declaration of Richard C. Beaird, Senior Deputy Coordinator for International Communications and Information Policy, United States Department of State, (attached hereto as Exhibit A); the Declaration of Margaret P. Grafeld, Information and Privacy Coordinator and Director of Office of Information Programs and Services, United States Department of State, which was filed with the Court on August 28, 2006 with Defendants' initial Motion to Dismiss and for Summary Judgment; the Second Supplemental Declaration of Kathy Smith, Chief Counsel, National Telecommunications Information Administration, United States Department of Commerce (attached hereto as Exhibit B); the Supplemental Declaration of Kathy Smith which was filed

with the Court on October 16, 2006 with Defendants' Reply to Plaintiff's Consolidated

Opposition to Defendants' Motion to Dismiss and for Summary Judgment, and Cross-Motion for

Summary Judgment; the Declaration of Kathy Smith, which was filed with the Court on August

28, 2006 with Defendants' Motion to Dismiss and for Summary Judgment; and attachments

thereto as well as the entire record in this case.  A proposed Order consistent with this Motion is

attached hereto.

<div style="margin-left:40%">

Respectfully submitted,


_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_/s/_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ICM REGISTRY, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| COMMERCE and | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, | ) |
| Defendants. | ) |

Civil Action No. 06-0949 (JR)

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7.1(h), Defendants respectfully submit this statement of material facts as to which there is no genuine dispute. Defendants refer to the following declarations in support of this statement: (1) Declaration of Richard C. Beaird, Senior Deputy Coordinator for International Communications and Information Policy, United States Department of State ("Department of State") (attached hereto as Exhibit A); (2) Declaration of Margaret P. Grafeld, Information and Privacy Coordinator and Director, Office of Information Programs and Service, Department of State, filed with the Court on August 28, 2006 with Defendants' Motion to Dismiss and for Summary Judgment; (3) Second Supplemental Declaration of Kathy Smith, Chief Counsel, National Telecommunications Information Administration, United States Department of Commerce ("Department of Commerce") (attached hereto as Exhibit B); (4) Supplemental Declaration of Kathy Smith, filed with the Court on October 16, 2006 with Defendants' Reply to Plaintiff's Consolidated Opposition to Defendants' Motion to Dismiss and for Summary Judgment, and Cross-Motion for Summary Judgment; and (5) Declaration of Kathy Smith, filed with the Court on August 28, 2006 with Defendants' Motion to Dismiss and for

Summary Judgment.

    I. <u>Department of State- Freedom of Information Act Request, Case Control No.</u>
    <u>200504606</u>

    1. By letter dated October 18, 2005, sent via facsimile to the Department of State Office

of Information Programs and Services ("IPS"), plaintiff requested copies of records relating to

the following:

> (1)    All records, correspondence, memoranda, transcripts, notes, documents,
> reports, emails or audiovisual or other materials consisting of or reflecting,
> representing, recording, or otherwise disclosing communications, written or oral,
> between March 1, 2005 and the present, regarding approval by the Internet
> Corporation for Assigned Names and Numbers ("ICANN"), and/or by its Board of
> Directors, of the new ".xxx" sponsored top-level domain ("STLD"), and/or
> ICANN's or its Board's approval of ICM Registry contract to operate the .xxx
> Stld. This request does not encompass documents submitted to the agency by the
> general public as part of any mass mailing campaign(s) or similarly duplicative
> emails/documents.

> (2)    All records, correspondence, memoranda, transcripts, notes, documents,
> reports, emails, or audiovisual or other materials consisting of or reflecting,
> representing, recording or otherwise disclosing communications, written or oral,
> between March 1, 2005 and the present, between any personnel at the State
> Department and the ICANN Board of Directors and its staff, ICANN's
> Governmental Advisory Committee ("GAC"), any GAC member country, or any
> individuals or agency in a GAC member country, regarding the .xxx Stld.

<u>See</u> Defendants' Motion to Dismiss and for Summary Judgment ("First Motion for Summ.

Judg."), Declaration of Margaret Grafeld ("Grafeld Dec.") at ¶ 4 and Exhibit 1. Plaintiff

indicated its willingness to pay up to $5,000 for search and duplication costs. <u>Id</u>.

    2. By letter dated December 13, 2005, IPS acknowledged plaintiff's request and assigned

it Case Control No. 200504606 ("Request No. 04-606.") <u>Id</u>. at ¶ 7 and Exhibit 3.

    3. In a series of telephone calls and emails between June 12 and June 22, 2006, IPS and

plaintiff agreed that a file of approximately 1,100 pages of potentially relevant press clippings

from the Bureau of Economic and Business Affairs would be produced in its entirety without a document-by-document review for responsiveness.  Id. at ¶ 10.

4.  By letter dated July 5, 2006, IPS released to plaintiff, without excision, a file of press clippings containing 1,155 pages.  Id. at ¶ 11 and Exhibit 6.

5.  By letters dated July 14, 2006 and August 17, 2006, IPS identified an additional 71 responsive documents of which thirty-one were released in full, eleven were withheld in part, 29 were withheld in full, and six were referred to another agency for direct reply to plaintiff.  Id. at ¶¶ 12-13.

6.  On August 28, 2006, defendants Department of State and Department of Commerce filed a Motion to Dismiss and for Summary Judgment.  See Docket Entry No. 9.  With respect to the Department of State, the motion explained why the Department of State's search was adequate, as well as the exemptions supporting the eleven documents withheld by Department of State in full and the twenty-six documents withheld in part.

7.  On September 21, 2006, plaintiff filed a Consolidated Opposition to Defendants' Motion to Dismiss and for Summary Judgment, and Cross-Motion for Summary Judgment ("Consolidated Opposition").  See Plaintiff's Consolidated Motion, Docket Entry Nos. 11 and 12.  Plaintiff did not challenge the adequacy of th3 Department of State's search, but it did challenge several of the withholdings asserted by the Department of State.

8.  On October 16, 2006, defendants filed a Reply to Plaintiff's Consolidated Motion ("Reply").  See Docket Entry Nos. 13 and 14.

9.  On March 29, 2007, the Court issued a Memorandum and Order ("Court's Memorandum") which, *inter alia,* granted in part and denied in part defendants' Motion for

Summary Judgment, and denied plaintiff's Motion for Summary Judgment.  See Docket Entry

No. 17.  The Court found that twenty-five of the thirty-seven documents withheld or redacted by

the Department of State were properly exempt, and it requested that the Department provide

additional justification for the withholding, or release to plaintiff, the remaining twelve withheld

or redacted documents.  See id. at 19.

10.  By letter dated April 27, 2007, the Department of State released, in full, to plaintiff

three of the twelve redacted and/or withheld documents that had been identified in the Court's

Memorandum.  See Declaration of Richard C. Beaird, Exhibit 1.

II.  Department of Commerce - Freedom of Information Act Request CRRIF No. 06-068

1.  By letter dated October 18, 2005, addressed to the Department of Commerce Freedom

of Information Act ("FOIA") Office, plaintiff filed a FOIA request for all records from March 1,

2005, to the present:[1]

> . . . consisting of or reflecting, representing, recording or otherwise disclosing
> communications, written or oral . . . regarding approval by the Internet
> Corporation for Assigned Names and Numbers ("ICANN"), and/or by its Board of
> Directors, of the new ".xxx" sponsored top-level domain ("sTLD"), and/or
> ICANN's or its Board's approval of ICM Registry's contract to operate the .xxx
> sTLD . . . .

> . . . consisting of or reflecting, representing, recording or otherwise
> disclosing communications, written or oral . . . between any personnel at
> the Department of Commerce, or any Bureau or other component thereof,
> and the ICANN Board of Directors and its staff, ICANN's Governmental
> Advisory Committee ("GAC"), any GAC member country, or any
> individuals or agency in a GAC member country, regarding the .xxx
> sTLD.

---

[1] Under Commerce regulations in effect at the time ICM's request was received, records
responsive to a request shall include only those records within the Department's possession and
control as of the date the proper component receives the request.  15 C.F.R. § 4.5(a).

See First Motion for Summ. Judg., Declaration of Kathy Smith ("First Smith Dec.") at ¶ 5 and Exhibit 1.

2.  In accordance with standard Department of Commerce policies, the FOIA Office logged the request and assigned it Department of Commerce tracking number CRRIF No. 06-068 ("Request No. 06-068"). Id. at ¶ 6.  On October 19, 2004, in accordance with 15 C.F.R. § 4.5(a) and based on a determination that the National Telecommunications Information Administration ("NTIA") would be likely to have the majority of the documents responsive to the request, lead responsibility for responding to the request was assigned to NTIA. Id.

3.  Commerce's Immediate Office of the Secretary was tasked to determine whether it possessed any records responsive to the request.  This Office located responsive documents and provided them to NTIA. Id.

4.  NTIA conducted a search for additional responsive records in every location where documents could reasonably be expected to be located, including NTIA electronic and hard copy files, computers, computer disks, desks, filing cabinets, storage areas and common areas. Id. at ¶ 7.

5.  By letter dated November 18, 2005, NTIA disclosed certain responsive records to plaintiff. Id. at ¶ 8 and Exhibit 2.  Plaintiff was informed that certain documents were being withheld in full or in part based on the deliberative process privilege of 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)"). Id.  Plaintiff also was informed that NTIA had identified documents from other agencies which might be responsive to the request. Id.  NTIA indicated that it would respond to plaintiff regarding those records after coordinating with the other agencies. Id.  Finally, the November 18, 2005 letter informed plaintiff of the right to appeal the partial denial

5

of records under 15 C.F.R. § 4.9.  Id.

6.  By letter dated December 2, 2005, plaintiff appealed the initial partial denial.  Id. at ¶ 9 and Exhibit 3.

7.  By letter dated December 19, 2005, NTIA disclosed to plaintiff additional responsive records.  Id. at ¶ 10 and Exhibit 4.  NTIA informed plaintiff that it was withholding other documents, in full or in part, based upon the deliberative process privilege, Exemption b(5).  Id.

8.  By letter dated December 21, 2005, NTIA informed plaintiff that NTIA was disclosing the final set of documents responsive to the initial request, and that certain portions of the documents were being withheld under the deliberative process privilege, Exemption b(5).  Id. at ¶ 11 and Exhibit 5.

9.  By letter dated January 3, 2006, plaintiff confirmed a telephone conversation with Commerce's Office of General Counsel, in which plaintiff agreed to treat NTIA's November 18, December 19 and December 21, 2005 decisions as one appeal.  Id. at ¶ 12 and Exhibit 6.  The letter also mentioned the possibility of holding the appeal in abeyance for two weeks.  Id.

10.  By letter dated January 4, 2006, Commerce's Office of General Counsel confirmed the aforementioned telephone conversation regarding the appeals as well as a January 4, 2006 telephone conversation in which plaintiff indicated that it agreed to grant Commerce a two-week extension in responding to the appeal.  Id. at ¶ 12 and Exhibit 7.

11.  On May 19, 2006, plaintiff filed the instant Complaint.  Id. at ¶ 12

12.  By letter dated July 13, 2006, the Department of Commerce responded to the appeal.  Id. at ¶ 13 and Exhibit 8.

13.  On August 28, 2006, defendants filed a Motion to Dismiss and for Summary

6

Judgment.  See Docket Entry No. 9.

14.  On September 21, 2006, plaintiff filed a Consolidated Opposition to Defendants'
Motion to Dismiss and for Summary Judgment, and Cross-Motion for Summary Judgment.  See
Docket Entry Nos. 11 and 12.

15.  On October 16, 2006, defendants filed a Reply to Plaintiff's Consolidated Motion
See Docket Entry Nos. 13 and 14.

16.  On March 29, 2007, the Court issued a Memorandum and Order which *inter alia*
granted in part and denied in part defendants' Motion for Summary Judgment, and denied
plaintiff's Motion for Summary Judgment.  See Docket Entry No. 17.

III.  Department of Commerce - Freedom of Information Act Request CRRIF No. 06-127

1.  By letter dated December 2, 2005, plaintiff filed a FOIA request with the Department
of Commerce.  This request was assigned Department of Commerce tracking number CRRIF 06-
127 ("Request No. 06-127").  See First Motion for Summ. Judg., Declaration of Andrew W.
McCready ("McCready Dec.") at ¶ 4 and Exhibit 1.

2.  By letter dated January 19, 2006, the National Telecommunications Information
Administration responded to this FOIA request by providing certain information requested, and
denying the remaining information based on exemptions under 5 U.S.C. § 552(b)(2), (b)(5), and
(b)(6) of FOIA.  Id. at ¶ 5 and Exhibit 2.  The letter informed plaintiff that an appeal must be
received by the Assistant General Counsel for Administration within thirty calendar days of the
date of the  letter.

3.  By letter dated February 21, 2006, plaintiff appealed the initial determination
regarding Request No. 06-127.  Id. at ¶6 and Exhibit 3.

7

4.  By letter dated March 2, 2006, The Department of Commerce's Assistant General Counsel for Administration informed plaintiff that the appeal would not be considered because it was untimely.  Id. at ¶ 7 and Exhibit 4.

5.  On August 28, 2006, defendants filed a Motion to Dismiss and for Summary Judgment.  See Docket Entry No. 9.

6.  On September 21, 2006, plaintiff filed a Consolidated Opposition to Defendants' Motion to Dismiss and for Summary Judgment, and Cross-Motion for Summary Judgment ("Plaintiff's Consolidated Motion").  See Docket Entry Nos. 11 and 12.

7.  On October 16, 2006, defendants filed a Reply to Plaintiff's Consolidated Motion. See Docket Entry Nos. 13 and 14.

8.  On March 29, 2007, the Court issued a Memorandum and Order which, inter alia, denied Defendant Department of Commerce's Motion to Dismiss.  See Docket Entry No. 17.

9.  By letter dated April 30, 2007, The Department of Commerce released one document to plaintiff that previously had been withheld.  See Second Supplemental Declaration of Kathy Smith ("Second Supp. Smith Dec."), Exhibit 1.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ICM REGISTRY, LLC,                                 ) | |
|                           **Plaintiff,**            ) | **Civil Action No. 06-0949 (JR)** |
|           **v.**                                    ) | |
|                                                     ) | |
| **UNITED STATES DEPARTMENT OF**                     ) | |
| **COMMERCE and**                                    ) | |
| **UNITED STATES DEPARTMENT OF**                     ) | |
| **STATE,**                                          ) | |
|                           **Defendants.**           ) | |
| | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**SECOND MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully submit this Memorandum of Points and Authorities in support of their Second Motion for Summary Judgment.

## I.  INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and concerns three FOIA requests filed by plaintiff - - one with the Department of State and two with the Department of Commerce - - regarding plaintiff's proposal before the Internet Corporation for Assigned Names and Numbers ("ICANN") to create a new '.xxx' sponsored top-level domain ("STLD").  See Motion to Dismiss and for Summary Judgment ("First Motion for Summ. Judg."), Declaration of Kathy Smith ("First Smith Dec.") at ¶ 5 and Declaration of Margaret Grafeld ("Grafeld Dec.") at ¶ 4.

In defendants' initial Motion to Dismiss and for Summary Judgment, the Department of State moved for summary judgment regarding Freedom of Information Act Request No. 04-606 filed with it by plaintiff, and the Department of Commerce moved for summary judgment

1

regarding one of the Freedom of Information Act requests filed with it by plaintiff - - Request No. 06-068.  Each defendant argued that there were no material facts in dispute and that it was entitled to judgment as a matter of law.  See First Motion for Summ. Judg. at pp. 15-44.

Defendant Department of Commerce also moved to dismiss the second Freedom of Information Act request filed with it by plaintiff - - Request No. 06-127 - - arguing that plaintiff failed to exhaust its administrative remedies.  See First Motion for Summ. Judg. at pp. 6-8.

In a Memorandum and Order dated March 29, 2007 ("Court's Memorandum"), the Court granted in part and denied in part defendants' motion for summary judgment regarding FOIA Request No. 04-606, filed with the Department of State, and FOIA Request No. 06-068 filed with the Department of Commerce.  The Court also denied the Department of Commerce's motion to dismiss FOIA Request No. 06-127.  Court's Memorandum at p. 1.

Department of State - Freedom of Information Act Request No. 04-606

The Department of State withheld information from three documents pursuant to 5 U.S.C. § 552(b)(4) ("Exemption (b)(4)") which permits the withholding of "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."[1] In its Memorandum, the Court agreed that the information withheld by the Department of State was "commercial" and "obtained from a person" for purposes of Exemption (b)(4), but the Court requested further briefing on whether the information withheld was "confidential" for purposes of Exemption (b)(4).  See Court's Memorandum at pp. 15-19.

The Department of State also withheld information from thirty-four documents pursuant to the deliberative process privilege with is incorporated into the FOIA at 5 U.S.C. § 552(b)(5)

---

[1]The three withheld documents were Document Nos. E2, E18 and E71.

("Exemption (b)(5)").  In its Memorandum, the Court agreed that most of the Department's

withholdings under Exemption (b)(5) were proper.  See Court's Memorandum at p. 11.

However, with respect to nine documents withheld under Exemption (b)(5),[2] the Court

determined that the government had not adequately explained how the deliberative process

privilege applied, and ordered the Department of State to "either provide additional justification

for the withholding of the[ twelve documents] or to provide them to [plaintiff]."  See id. at 19.

Department of Commerce - Freedom of Information Act Request No. 06-068

The Department of Commerce withheld 183 documents in part and sixty documents in

full pursuant to 5 U.S.C. § 552(b)(5).  However, in its Memorandum, the Court determined that

the Department of Commerce did "not meet its burden to demonstrate how exemption (b)(5)

applie[d to twenty-six of these documents]."[3]  See Court's Memorandum at pp. 20-25.  The

Court ordered defendant Department of Commerce to "either provide additional justification for

the withholding of these materials or release them to [plaintiff]."  See id. at 25.

Department of Commerce - Freedom of Information Act Request No. 06-127

In its Memorandum, the Court ordered the Department of Commerce  "to submit a

Vaughn index and supporting material explaining its denials of materials responsive to FOIA

Request No. 06-127."  Id. at 28.

The Department of State and Department of Commerce, herein, have fully and

appropriately responded to the FOIA requests, and satisfied their obligation under the Freedom of

---

[2]The nine withheld documents were E54, E31, E32, E59, E3, E36, E68, E69 and E70.

[3]The withheld documents were E59 through E69, E90 through E92, EP116, EP117, EP125,
EP126, EP98, EP46, EP7, MPW3, EP33, EP34 and MPW 14.

Information Act.

## II. STANDARD OF REVIEW

### Motions for Summary Judgment

Where matters outside the pleadings are presented to the court in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the motion shall be treated as a motion for summary judgment and disposed of under Fed. R. Civ. P. 56. Fed R. Civ. P. 12. Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[4] See Cappabianca v. Comm'r, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. U.S. Internal Revenue Serv., 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the

---

[4]For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1979).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. FTC, 141 F. Supp.2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also McGhee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Comm. on Human Rights v. U.S. Food and Drug Admin., 45 F.3d 1325, 1329 (9th Cir. 1995).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

## III.  ARGUMENT

### A.  The Department of State and Department of Commerce Have Properly Responded to the Freedom of Information Act Requests

#### 1- Defendants Have Submitted Vaughn Indices

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA plaintiffs." Judicial Watch v. U.S. Dep't of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). The declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. U.S. Fed. Commc'n, 976 F.Supp. 23, 35 (D.D.C. 1997), aff'd 172 F.3d 919 (D.C. Cir. 1998). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. U.S. Internal Revenue Serv., 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. U.S. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988). "All that is required, and . . . the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. at 128. The specificity of itemization needed depends upon the nature of the document and the exemption asserted. Info. Acquisition Corp. v. U.S. Dep't of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Comm. on Human Rights, 45 F.3d at 1325. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is

actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

With this motion, the Department of State is submitting a declaration from Richard C. Beaird in order to provide additional justification for the Department's withholding of information from the documents identified by the Court in its Memorandum.[5]  Mr. Beaird is Senior Deputy Coordinator for International Communications and Information Policy and Director of the Office of Multilateral Affairs in the Office of Communications and Information Policy ("CIP"), within the Bureau of Economic, Energy and Business Affairs, ("EEB"), Department of State.[6]  <u>See</u> Beaird Dec. at ¶ 1.  Prior to joining the Department of State, Mr. Beaird was Associate Administrator for International Affairs at the Department of Commerce's National Telecommunications and Information Administration ("NTIA").[7]  <u>See</u> <u>id</u>.  Mr. Beaird "manage[s] the State Department's activities across a broad range of international telecommunication and policy areas, including matters arising in the International Telecommunication Union ("ITU"), in the Organization for Economic Cooperation and Development ("OECD"), and in connection with the U.N. World Summit on the Information Society ("WSIS").  <u>Id</u>.

---

[5]Mr. Beaird's declaration supplements the declaration of Margaret Grafeld, which was submitted by the Department of State in support of its initial Motion for Summary Judgment.  <u>See</u> First Motion for Summ. Judg., Exhibit C.

[6]"The Department of State has primary responsibility within the United States government for foreign policy related to international telecommunications and information policy under 22 U.S.C. § 2707, and EEB/CIP has primary responsibility within the Department of State for these issues."  Beaird Dec. at ¶ 3.

[7]NTIA is the President's principal adviser on telecommunications and information policy issues.

In support of its motion for summary judgment regarding FOIA Request Nos. 06-068[8]
and 06-127, the Department of Commerce has submitted a Second Supplemental Declaration as
well as a Supplemental <u>Vaughn</u> Index ("Commerce Supp. Vaughn") (attached hereto as Exhibit
C). The declaration was prepared by Kathy Smith, Chief Counsel, National Telecommunications
Information Administration, Department of Commerce. <u>See</u> Second Supplemental Declaration
of Kathy Smith ("Second Supp. Smith Dec.") at ¶ 11. In the course of Ms. Smith's duties, she
"supervise[s] a staff of attorneys which is responsible for providing legal advice to NTIA." <u>Id</u>.
Ms. Smith also supervises NTIA's Freedom of Information Act Office. <u>Id</u>.

The declarations from the Department of Commerce and Department of State which are
submitted in support of this motion meet the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d at 820,
thus providing the Court with the requisite basis to grant defendants' Second Motion for
Summary Judgment.

### 2- The Searches For Responsive Records Were Reasonable

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search
for responsive records. <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990);
<u>Cleary, Gottlieb, Steen & Hamilton v. U.S. Dep't of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C.
1993); <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). The established
reasonableness standard by which FOIA searches are judged "does not require absolute

---

[8]This declaration supplements the declaration of Kathy Smith which was submitted by the
Department of Commerce in support of its initial Motion for Summary Judgment, <u>see</u> First
Motion for Summ. Judg., Exhibit B, and the supplemental Declaration of Kathy Smith ("Smith
Supp. Dec.") which was submitted with its Reply to Plaintiff's Consolidated Motion. <u>See</u> Reply
to Plaintiff's Consolidated Opposition to Defendants' Motion to Dismiss and for Summary
Judgment, and Cross-Motion for Summary Judgment ("Reply"), Exhibit 1.

exhaustion of the files; instead it requires a search reasonably calculated to uncover the sought materials." Miller v. U.S. Dep't of State, 779 F.2d 1378, 1384-85 (8th Cir. 1985). Thus, "the issue in a FOIA case is not whether the agencies' searches uncovered responsive documents, but rather whether the searches were reasonable." Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996); see also Fitzgibbon v. U.S. Secret Service , 747 F. Supp. 51, 54 (D.D.C. 1990); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

An agency demonstrates that it conducted a reasonable search by showing "that it made a good faith effort to conduct a FOIA search for requested records by using methods that can reasonably be expected to produce the information requested." Western Center for Journalism v. U.S. Internal Revenue Serv., 116 F. Supp.2d 1, 9 (D.D.C. 2000); Oglesby, 920 F.2d at 68. Indeed, the search standards established under the FOIA do not require an agency to search every record system, but rather, the agency need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. U.S. Central Intelligence Agency, 982 F.2d 546, 564 (1st Cir. 1993). Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for

10

those documents was adequate." Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The government's first motion for summary judgment and to dismiss explained that the search undertaken by the Department of State in response to Request No. 04-606, and the Department of Commerce in response to Request No. 06-068 were reasonably calculated to locate responsive records. See First Motion for Summ. Judg., Grafeld Dec. at ¶¶ 11-12; Smith Dec. at ¶¶ 6-7; see also Second Supp. Smith Dec. at ¶16. Plaintiff has not challenged the adequacy of these searches.

Similarly, regarding Request No. 06-127, the Second Supplemental Declaration of Kathy Smith describes the search undertaken by the Department of Commerce. See Second Supp. Smith Dec. at ¶¶ 15-16. As Ms. Smith explains, this search also was reasonably calculated to uncover all responsive documents. See id. Therefore, the Department of Commerce has demonstrated that its search regarding Request No. 06-127 was adequate.

**B. The Department of State Withholding in Response to FOIA Request No. 04-606**

**1- The Department of State has Released Additional Documents**

The Court's Memorandum ordered the Department of State to "either provide additional justification for the withholding of [twelve documents] or to provide them to [plaintiff]." See Court's Memorandum at p. 19. By letter dated, April 27, 2007, the Department of State released to plaintiff three documents identified by the Court to plaintiff -- Document Nos. E18, E31 and E32. See Beaird Dec. at ¶ 4. Accordingly, in this motion, the Department of State has provided additional justification for the remaining nine documents identified by the Court -- E54, E59, E3, E36, E68, E69, E70, E2, and E71.

11

## 2- The Department of State Properly Applied Exemption (b)(4)

Pursuant to Freedom of Information Act Exemption (b)(4), 5 U.S.C. § 552 (b)(4), the Department of State has withheld, in part , Document No. E2, and withheld, in full, Document No-E71.  Beaird Dec. at ¶¶ 24-31.[9]

As explained in the Court's Memorandum, "Exemption (b)(4) permits agencies to withhold otherwise responsive material that is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  Court's Memorandum at 15 (citing 5 U.S.C. § 552(b)(4) and Gulf & W. Indus. v. United States, 615 F.2d 527, 529 (D.C. Cir. 1979)).  The Court held that the information in documents E2 and E71 was "commercial or financial" and "obtained from a person," but it requested additional briefing on the "privileged or confidential" nature of the documents.  See Court's Memorandum at 15 n.7, 17-19.

As the Court noted, "[i]n analyzing the third prong of this test [the "privileged or confidential" prong], courts apply different standards depending upon whether the person was compelled to submit the commercial or financial information to the agency, or whether such information was submitted voluntarily.  If the commercial or financial information was submitted voluntarily, it is confidential – and therefore protected under exemption (b)(4) – so long as it is the type of information that is not customarily publicly disclosed by the submitter.  If the submission of the commercial or financial information was obligatory the test is more stringent: the information is "confidential" and protected only if its disclosure under FOIA is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause

---

[9] As explained above, the other document initially withheld under Exemption (b)(4) -- Document No. E18 -- has been released to plaintiff.

12

substantial harm to the competitive position of the person from whom the information was obtained."  Court's Memorandum at 15-16 (citations omitted).

As explained below and in the attached Declaration of Richard Beaird, the two documents withheld or redacted by the Department of State under exemption (b)(4) – Documents E2 and E71 – qualify as "confidential" under the test articulated above because they were provided voluntarily to the Department of State and they consist of information that is not customarily disclosed to the public.

Document No. E2.  This document "is a five-page series of e-mails, dated July 18, 2005, from telecommunications consultant Marilyn Cade to Ambassador David Gross."  Beaird Dec. at ¶ 24 and Exhibit 7.[10]  All of the information from Document E2 that is responsive to plaintiff's FOIA request (i.e., all information related the .xxx domain name issue) has been released, and less than 10 lines have been redacted from the document.  Id. at ¶ 25.  The series of e-mails concerned Ms. Cade's "impressions of the July 2005 meeting in Geneva at which the [Working Group on Internet Governance's] report was reported to stakeholders."  Id. at ¶ 26.[11]  This email was provided voluntarily to the Department of State, and Ms. Cade indicated in the text of her email that parts of her e-mail were 'private.'"  Id. at ¶¶ 26-27 and Exhibit 7 at p. 2.  Clearly, the information withheld "would customarily not be released to the public by the person from whom it was obtained."  Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992).   Nevertheless, the Department of State released the maximum amount of

---

[10]  Ambassador Gross is the head of Mr. Beaird's office.  See Beaird Dec. at ¶ 6.

[11]  For more information on the Working Group on Internet Governance, or WGIG, see Beaird Decl. at ¶¶ 6-8.

information from the e-mail series without "violating Ms. Cade's request for confidentiality." Beaird Dec. at ¶ 27.  The remaining information was properly withheld.  See Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Document No. E71.  This document is a five-page series of two e-mails, dated June 8, 2006, from two different ICANN personnel to a person not named in the document.  Beaird Dec. at ¶ 28. This entire document has been withheld.  Id.  It is only marginally relevant to plaintiff's FOIA request as it includes only one reference to the .xxx domain name issue.  Id. at ¶ 29.  The document "consists of impressions and observations of ICANN personnel from two meetings these individuals held with European Union staff in October 2005" in the days leading up to the second phase of the World Summit on the Information Society, or "WSIS," a UN-sponsored international meeting on Internet governance which was to be attended by the Department of State.  Id. at ¶¶ 6-8, 29.  The email was provided voluntarily – most likely "because [the authors] thought it would be useful to the United States as it prepared for the second phase WSIS meeting in November 2005."  Id. at ¶ 30.   The email consists in its entirety of information not typically made public by the submitter of the email, i.e., candid "assessments from ICANN staff of meetings and private conversations with European Union staff on matters relating to 'Internet governance' and the proposed EU 'new cooperation model' for 'Internet governance.'"  Id. at ¶ 31.  The Department of State has confirmed with officials at ICANN that they have not made the information in Document No. E71 public, and that they oppose making it public in this case.  Id. Accordingly, this document qualifies for withholding under Exemption (b)(4) as information voluntarily provided by a submitter and of the type that "would customarily not be released to the public by the person from whom it was obtained."   Critical Mass Energy Project v. Nuclear

14

Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992).

### 3- The Department of State Properly Applied Exemption (b)(5).

The Court requested further briefing, or release to plaintiff, with respect to nine

documents withheld or redacted by the Department of State pursuant to Freedom of Information

Act Exemption (b)(5) 5 U.S.C. § 552 (b)(5), which applies to "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the

agency." See Court's Memorandum at 11-15 (requesting further briefing on documents E3, E31,

E32, E36, E54, E59, E68, E69 and E70). The Department of State subsequently released two of

these nine documents – Documents E31 and E32 – to plaintiff. Beaird Dec. at Exhibit 1.

All seven documents withheld under Exemption (b)(5), and identified above, have been

withheld pursuant to the deliberative process privilege. In its Memorandum Opinion (at 10-11),

the Court described the privilege as follows:

> The purpose of this privilege is to "prevent injury to the quality of agency decisions," by protecting from disclosure confidential, pre-decisional advice and counsel on matters of policy. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). The privilege protects documents that are both pre-decisional and deliberative, including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). In order to invoke the deliberative process privilege, agencies much demonstrate both (1) that the communication is predecisional or "antecedent to the adoption of an agency policy," Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), and (2) that the document is deliberative, Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). In order to show that the material is deliberative, the agency must identify "what deliberative process is involved, and the role played by the documents in issue in the course of the [deliberative] process." Coastal States, 617 F.2d at 868. As I have previously noted, however, the application of exemption (b)(5) "does not depend on the agency's ability to identify a specific decision to which the documents relate." Balderrama v. Dep't of Homeland Security, 2006 U.S. Dist. LEXIS 19421, *22 (D.D.C. 2006), citing

Sears, 421 U.S. at 151 (1975).

As explained below, the declaration of Richard Beaird provides ample justification as to why the seven documents redacted and/or withheld pursuant to the deliberative process privilege qualify for the privilege.

       (1)  Document No. 54.  This document is an "unsigned, undated, three-page draft memorandum" which was withheld in full.  Beaird Dec. at ¶ 10.  The document was drafted by a member of Mr. Beaird's staff.  Id. at ¶ 11.  However, it was not reviewed, approved or forwarded.  Id. at ¶ 10.  If finalized, the document would have been sent by Mr. Beaird to the "then-Assistant Secretary for Economic and Business Affairs."  Id.  The only mention of information pertinent to plaintiff's FOIA request, is the drafter's comment that the .xxx issue was one of several factors that the international community raised with respect to the legitimacy of ICANN."  Id. at ¶ 11.  The draft included "frank commentary" on a Wall Street Journal article that "discussed attempts by other countries to create alternatives to the Internet's domain name system (which is managed by ICANN)."  Id. at ¶ 12.

This document meets the two requirements of the deliberative process privilege.  First, it is a draft document, and plaintiff does not dispute that drafts are properly withheld.  See Plaintiff's Consolidated Motion at nn.9 and 14.  Even if the document had been finalized, it is deliberative in nature because, "on an on-going basis," Mr. Beaird's office sends similar analyses to the Assistant Secretary for Economic and Business Affairs and other high-level State Department officials.  Id. at ¶ 12.  The purpose of these analyses is to assist the officials "in developing United States government policy related to Internet governance."  Id. Therefore, the document is "a direct part of the deliberative process in that it makes recommendations or

expresses opinions on . . . policy matters." <u>Vaughn v. Rosen</u>, 523 F.2d at 1143-44.  The

document is also predecisional in that it was drafted antecedent to the adoption of U.S.

Government policy on Internet governance.  <u>See</u> <u>Jordan</u>, 591 F.2d at 774.  Because agencies are

"engaged in a continuing process of examining their policies, . . . memoranda containing

recommendations [or suggestions] which do not ripen into agency decisions [will be generated];

and the lower courts should be wary of interfering with this process."  <u>NLRB v. Sears, Roebuck</u>

<u>& Co.</u>, 421 U.S. at 151 n.18.

      (2) <u>Document No. E59.</u>   This document "is an undated two-page paper that discusses a

September 6, 2005 meeting between Department of State officials and a Japanese delegation.[12]

<u>Id</u>. at ¶ 13.  The document was withheld in full.  <u>Id</u>.  According to Mr. Beaird, it appeared that the

document was drafted by a former member of his staff.  <u>Id</u>.  However, the document was not

complete and did "not necessarily reflect an accurate portrayal of the meeting."  <u>Id</u>. at ¶ 14.  The

only mention of the .xxx issue was "the author's one-sentence insight [regarding] a Japanese

official's view of the implications of the .xxx issue in Japan."  <u>Id</u>.

      Even if this document had been finalized, it would meet the two requirements of the

deliberative process privilege.[13]  The document is deliberative in nature because the purpose of

the paper was to "provide[] insight[] to United States policymakers concerning Japanese views

on issues related to Internet governance as the United States prepared to represent its interests at

---

[12]This meeting "was convened to discuss the . . . United States and Japanese positions concerning "Internet governance" in advance of the WSIS Tunisia meeting in November of 2005.  <u>Id</u>. at ¶ 15.

[13]Like Document No. E54, Document No. E59 is a draft document, and plaintiff does not dispute that drafts are properly withheld.  <u>See</u> Plaintiff's Consolidated Motion at nn.9 and 14.

the upcoming WSIS meeting." Id. at ¶ 15. Therefore, the document is "a direct part of the deliberative process in that it ma[de] recommendations or expresse[d] opinions on . . . [upcoming] policy matters." Vaughn v. Rosen, 523 F.2d at 1143-44. The document is also predecisional in that it was drafted antecedent to the adoption of United States policy regarding Internet governance and in preparation for the WSIS meetings later in 2005. See Jordan, 591 F.2d at 774.[14]

    (3) Document Nos. E3, E36, E68, E69 and E70. These documents are "summaries of and/or commentaries on" United States government interagency conference calls addressing telecommunications and high technology issues. Id. at ¶ 16. Only portions of these documents were redacted. Id.

    The redacted passages of Document No. E3 (attached hereto as Beaird Dec., Exhibit 2), "reflect deliberations on possible government action related to an upcoming ICANN board meeting. . . ." Id. at ¶ 18. The passages also reflect, *inter alia* "internal . . . government reactions to a proposed Senate bill on identity theft [as well as] interagency reactions to the WGIG report of July 2005. . . ." Id.

    The redacted passages of Document No. E36 (attached hereto as Beaird Dec., Exhibit 3), "reflect deliberations on proposed telecommunications legislation as well as analyses and predictions regarding a vote on .xxx and other matters at an upcoming ICANN board meeting . . . ." Id. at ¶ 19. The redacted passages of Document No. E68 (attached hereto as Beaird Dec., Exhibit 4 "), reflect, *inter alia*, "deliberations on securing funding to overcome communications-related problems associated with Hurricane Katrina [as well as] strategies for seeking support for

---

[14]The Court agreed that this document was predecisional. See Court's Memorandum at p. 14.

U.S. government positions at a WSIS preparatory meeting . . . ." <u>Id</u>. at ¶ 20.

The redacted passages of Document No. E69 (attached hereto as Beaird Dec., Exhibit 5), "reflect  deliberations on international meetings; digital television legislation; [as well as] an upcoming Federal Communications Commission meeting . . . ." <u>Id</u>. at ¶ 21.

The redacted passages of Document No. E70 (attached hereto as Beaird Dec., Exhibit 6), reflect, *inter alia*, "deliberations on . . . telecommunications legislation . . .and discussions regarding holding another interagency meeting to discuss ICANN . . . ." <u>Id</u>. at ¶ 22.

Each of these documents is predecisional because it was created prior to the adoption of any agency's policy.  <u>Jordan</u>, 591 F.2d at 774.  In addition, these documents are deliberative in that their redacted portions reflect the give-and-take of the consultative process, <u>Coastal States</u>, 617 F.2d at 866, that took place during interagency conference calls aimed at developing coordinated policies.  Because the main purpose of the deliberative process privilege is to prevent harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning used in the decision making process of the government, <u>see</u> <u>Morgan IV</u>, 313 U.S. at 422, information in these documents was properly withheld.

### C.  <u>The Department of Commerce  - FOIA Request No. 04-068</u>

The Court requested further briefing, or release to plaintiff, with respect to twenty-six documents withheld or redacted by the Department of Commerce, pursuant to Freedom of Information Act Exemption (b)(5), 5 U.S.C. § 552 (b)(5).  <u>See</u> Court's Memorandum at p. 25.

The individuals who created the twenty-six documents at issue were members of the staff of NTIA, the Department of Commerce's Office of the Secretary, or the White House who held jobs with responsibilities related to telecommunications policymaking, or to the approval and

presentation of these policies to the public.  <u>See</u> Second Supp. Smith Dec. at ¶ 6.  Their opinions

and recommendations on issues related to the creation of an .xxx domain were relevant to the

development of a final Government position on the matter.  In exchanging opinions among

themselves and discussing and refining different aspects of the issues, these individuals were

laying the groundwork for the development of a final Government position regarding the .xxx

domain.  Any final decision on this matter would be made by the Secretary of Commerce, based

on the recommendation of the Assistant Secretary for Communications and Information, which

in turn would be based on the recommendations of the staff members.

Some of the information that properly was redacted from selected documents reflects the

larger deliberative process of "how to respond if ICANN were to recommend the creation of a

proposed new .xxx domain, and/or enter into a contract with ICM to operate an .xxx domain."

<u>Id</u>. at ¶ 5.  Other redacted materials reflect the deliberative processes which are ancillary to, but

remain an integral part of the larger deliberative processes.  This material also was properly

redacted because courts have determined that "smaller policy decisions legitimately make up

major policy positions," <u>Sierra Club v. U.S. Dep't of Interior</u>, 384 F. Supp.2d 1, 16 (D.D.C.

2004), and that the deliberative process privilege applies equally to both.  <u>See</u> <u>id</u>.

### 1-  The Department of Commerce Properly Applied Exemption (b)(5)

Twenty-five documents, Document Nos. EP59 through EP 69, EP 90 through 92, EP116,

EP 117, EP125, EP126, EP102, EP98, EP46, EP7, MPW3, EP33, EP34 and MPW14, were

withheld in part.  <u>See</u> Commerce Supp. Vaughn at pp. 1-8; Second Supp. Smith Dec. at ¶ 4.  One

document, MPW3, was withheld in its entirety.  Commerce Supp. Vaughn at p. 8; Second Supp.

Smith Dec. at ¶ 4.  As explained below, the Second Supplemental Declaration of Kathy Smith

provides ample justification as to why the deliberative process privilege was appropriately applied.

  (1) <u>Document Nos. EP59, EP60 and EP61</u>

      a- <u>Document No. EP59</u>. This document is a one-page e-mail, dated June 2, 2005, which was from Department of Commerce employee, Michael Gallagher, to Department of Commerce employee, Meredith Attwell. <u>See</u> Commerce Supp. Vaughn at p. 1. The withheld portion of the e-mail "consists of Mr. Gallagher's opinions on the possible effects of [the] creation of an .xxx domain on children's access to pornographic material." <u>Id</u>.

    b- <u>Document No. EP60</u>. This document is a two-page e-mail, dated June 2, 2005, which was from Ms. Attwell to Mr. Gallagher. <u>See</u> Commerce Supp. Vaughn at p. 1. The withheld portion consisted of Mr. Gallagher's opinions which also were redacted from Document No. EP59, as well as Ms. Attwell's comments on a draft document she was preparing about .xxx.

    c- <u>Document No. EP61</u>. This document is a two-page e-mail from Department of Commerce employee Fred Schwien to Ms. Attwell. <u>Id</u>. at 2. The redacted portions of the e-mail concern Ms. Attwell's opinion on the possible effects of an .xxx domain on children's access to pornography, <u>id</u>., as well as Mr. Schwien's opinion concerning what websites would be part of the .xxx domain. <u>Id</u>.

  In its Memorandum, the Court stated that:

  [t]he deliberative process privilege d[id] not support withholding material [from these documents' simply because [they] contain[ed] Gallagher's, Attwell's, or Schwien's opinions; the fact that a document expresses its authors views is not dispositive if the agency has neither identified the deliberative process to which the document contributed nor explained how the materials are pre-decisional.

Court's Memorandum at  pp. 20-21.

The information in Document Nos. EP 59, 60 and 61 include opinions of Department of Commerce employees shared with each other concerning certain matters that would have to be addressed if an .xxx domain were created. The deliberative process to which the redacted material in EP59 and E60 contributed was the development of a position on how to respond if ICANN were to recommend the creation of a proposed new .xxx domain, and/or enter into a contract with ICM to operate a .xxx domain.[15] The deliberative process to which the redacted material in EP61 contributed consisted of Ms. Attwell's deliberations on the possible effects of creation of a .xxx domain on children's access to pornographic material, and Mr. Schwien's deliberation relating to which websites would be in a .xxx domain. Each of these deliberative processes was an integral part of the broader deliberative process of the Government on developing a position on how to respond if ICANN were to recommend the creation of a proposed new .xxx domain, and/or enter into a contract with ICM to operate a .xxx domain. These authors' opinions were shared with other Department of Commerce employees as part of the ongoing deliberations concerning the Department of Commerce's response to the creation of a .xxx domain.

The deliberations of Ms. Attwell and Mr. Gallagher were relevant to the development of final Government positions because these individuals held jobs with responsibilities related to telecommunications policymaking. In fact, at the time these e-mails were written, Mr. Gallagher was Assistant Secretary for Communications and Information, and Ms. Attwell was the Senior

---

[15]Additional material redacted from EP60 consisted of Ms. Attwell's opinion of her progress in preparing a draft paper on .xxx, and her question to Mr. Gallagher concerning the timing of his review of it.

Adviser to Mr. Gallagher.  Any final decision on the .xxx domain would be made by the

Secretary of Commerce, based on the recommendation of the Assistant Secretary for

Communications and Information, which in turn would be based on the recommendations of his

staff.   Mr. Schwien's opinions would be relevant on this issue because he was an employee of

the Department of Commerce's Office of the Secretary who had job responsibilities related to the

approval and presentation of the policies at issue to the public.  These documents were

deliberative because they reflected candid debate and consideration of alternatives the agency

would have to address if the .xxx domain were created.  See Crocker, 670 F.2d at 1051.

Protecting this type of information improves the quality of agency decisions.  See id.  Therefore,

this information met the first part of the deliberative process privilege.

    The redacted information also meets the second part of the deliberative process privilege.

This information is necessarily predecisional because "ICANN did not approve ICM's

application for a proposed new .xxx domain[,] and did not enter into contract with ICM to

operate the .xxx domain."  Second Supp. Dec. at ¶ 7.   Moreover, the Department of Commerce

never made a decision regarding how to respond to the creation of the .xxx domain.  Therefore,

the redacted information was "antecedent to the adoption of agency policy," Jordan, 591 F.2d at

774 and was properly withheld.

    (2) Document Nos. EP 62 through EP 69.  All of these documents are two-page e-mails,

dated June 16, 2005, which were sent to, or received by, Department of Commerce employees.

These documents were released in part.  Commerce Supp. Vaughn at pp. 2-3.  The subject line of

each e-mail is "Michael Regan Supports .xxx[,]" and the same paragraph has been redacted from

each e-mail.  Id.  The redacted paragraph "consists of Ms. Attwell's opinions regarding the

Department of Commerce's authority to make changes to the authoritative root zone file[,][16] id.,
and her opinions regarding ICANN's decision to negotiate a contract for the .xxx domain.  Id.

The Court stated that "these e-mails . . . have the same problem as the Court identified for
EP59-EP61 . . .: the lack of a description of how the redacted opinions are predecisional or relate
to a deliberative process."  Court's Memorandum at p. 21.

The deliberative process to which the redacted material in EP62-EP69 contributed is the
Department of Commerce's discussion of its authority to make changes to the authoritative root
zone file.[17]  The redacted communications convey Ms. Attwell's opinions to other employees
regarding what the Department of Commerce's position should be regarding the root zone file.
These deliberations were an integral part of the larger deliberative process regarding the
development of a position on how to respond if ICANN were to recommend the creation of a
proposed new .xxx domain, and/or enter into a contract with ICM to operate a .xxx domain.  The
redacted material also consisted of the opinions of NTIA employee Clyde Ensslin.  Mr. Ensslin's

---

[16]"[T]he authoritative root zone file is the highest level of the domain name system and contains
the databases enabling an Internet address query to be routed to its proper destination."  See id.
n.2.

[17] The authoritative root zone file is the highest level of the domain name system and contains the
databases enabling an Internet address query to be routed to its proper destination.  See Reply at
pp. 2-3.  The authoritative root zone file is the master database from which copies are
downloaded and disseminated through the Internet on a daily basis.  A root zone file directs an
address query to the proper top level domain zone file, which contains the location and other
information about the numerous generic top level domains and country code top level domains.
See Name.Space, Inc., v. Network Solutions, Inc., 202 F.3d 573 (2nd Cir. 2000).  Before any new
domain can be established, the ICANN  Board must not only approve its creation, but must also
submit an official recommendation to NTIA to add the new domain to the authoritative root zone
file.  After the ICANN Board makes an official recommendation, NTIA must approve the
recommendation and provide written direction to VeriSign, Inc. to modify the authoritative root
zone file before the domain is live within the Internet domain name system.

opinions are relevant on these issues because he was the communications director for NTIA, and thus was responsible for conveying NTIA policy decisions to the public.

Further, the redacted material is deliberative because it reflects Ms. Attwell's opinions which are "an integral part of the Government's deliberations on developing a position on how to respond" if the .xxx domain were created and operated.  Id.  Shielding Ms. Attwell's opinions from the public was appropriate because it would prevent harm to the agency's overall decision-making process.  See Morgan IV, 313 U.S. at 422.  The redacted material is also predecisional in that it preceded the Government's final decisions on the Department of Commerce's authority to change the authoritative root zone file because ICANN ultimately did not approve ICM's application for a proposed new .xxx domain or enter into a contract with ICM to operate the .xxx domain.

(3)  Document Nos. EP90, EP91 and EP92.  These documents were one or two-page e-mails between Department of Commerce employees Clyde Ensslin and Christine Gunderson, dated June 17, 2005.  Commerce Supp. Vaughn at pp. 2-3.  The subject line of each is "Quote from June 6 Cnet news report by Declan McCullah, June 12 AP."  Id. at 3.  Three lines were redacted from each of the e-mails.  The three lines were created by Ms. Gunderson and Mr. Ensslin.  They concerned "Mr. Ensslin's opinions relating to how a news reporter interpreted a conversation Mr. Ensslin had with [the reporter regarding] ICANN's decision to negotiate a contract for the .xxx domain."  Id.  Two additional lines were redacted from Document No. 92 concerning Mr. Ensslin's additional opinions regarding the same matter.  Id. at 4.

In its Memorandum, the court indicated that the redactions in these e-mails appeared to be neither predecisional nor deliberative because they consisted "of mere commentary on a news

report . . . ." Court's Memorandum at p. 22. However, the discussion regarding the conversation with the reporter took place in the context of deliberations regarding how to present to the public the Department of Commerce's role in making changes to the authoritative root zone file. It was not merely commentary on a news report. These deliberative opinions contributed to the larger deliberative process regarding the creation of the .xxx domain. Further, the opinions are predecisional because they preceded the Government's final decision on how to present the Department of Commerce's role to the public, and .xxx was not approved.

Mr. Ensslin's opinions on the issues were relevant to the development of final Government positions on these issues because he was the communications director for NTIA, responsible for conveying NTIA policy decisions to the public. Ms. Gunderson's opinions were relevant on these issues because, at the time the e-mail was drafted, she was a member of DOC's Office of the Secretary with responsibilities related to the approval and presentation of these policies to the public. Such candid internal agency discussions should be protected to allow agencies to be free to engage in frank discussions regarding policy matters. These discussions were part of a larger discussion regarding the development of [the agency's] position on how to respond to the creation of the .xxx domain, and clearly were deliberative. Id. They also were predecisional in that they "preceded the Government's final decisions on how to present to the public the [Department of Commerce's] role in making changes to the authoritative root zone file" id. at 4, because ICANN did not approve the .xxx domain.

(4) Document Nos. EP116, EP117. These documents are one-page e-mails, dated August 1, 2005. Id. at 5. These e-mails are from Ms. Attwell to White House employees Helen Domenici and Richard Russell. Id. The same four lines were redacted from each e-mail. The

26

redacted material consists of Ms. Attwell's answers to unspecified questions regarding "possible legal consequences of taking a certain course of action with respect to .xxx." Id.

In its Memorandum, the Court determined that the justification for withholding these documents was inadequate because no explanation was offered regarding the deliberative or predecisional nature of these documents. See Court's Memorandum at p. 22. However, the discussions of legal consequences regarding .xxx were an integral part of the broader deliberation on what the Government's response should be to possible creation of a .xxx domain. Such discussions should be protected to allow for "creative debate and candid consideration of alternatives within an agency . . . ." Jordan, 591 F.2d at 772. Further, these discussions were predecisional because they were antecedent to any final Government decision regarding the creation of the .xxx domain.

(5) Document No. EP125, EP126. Document EP125 is a one-page e-mail. Document EP126 is a two-page e-mail. They are both dated June 17, 2005. Commerce Supp. Vaughn at p. 5. The information redacted from these e-mails consists of "Ms. Attwell's opinions on ICANN's decision to enter into negotiations on an .xxx contract[,]" id., and Mr. Russell's questions regarding .xxx. Id. Additional information was redacted from Document No. EP126 which consisted of Ms. Attwell's opinions relating to control of child pornography on the Internet, id. at 5-6, and Mr. Russell's questions regarding possible types and names of domains related to .xxx. Id. at 6.

In its Memorandum, the Court asks whether "the questions and answers [in the e-mails] simply concern facts regarding the .xxx sTLD [or whether they] concern [Ms.] Attwell's opinions." Court's Memorandum at pp. 22-23.

27

The redacted material in EP125-EP126 contributed to the Government's deliberative process concerning the Government's role in approving new domains. The redacted material consists of Ms. Attwell's opinions on the roles of ICANN and the Department of Commerce in approving new domains such as .xxx, and of White House employee Mr. Russell's questions concerning approval of the .xxx domain. Ms. Attwell's opinions would be relevant because she was the Senior Adviser to Mr. Gallagher. The questions and opinions offered reflect the give-and-take of the consultative process between the Department of Commerce and the White House. See Coastal States, 617 U.S. at 866. Mr. Russell's opinions would be relevant to the Government's deliberations because he was a White House employee who had job responsibilities related to the approval and presentation of the policies at issue to the public. To the extent that factual information is included in the withheld questions and answers, it is protected by the deliberative process privilege because the factual material is so "'inextricably intertwined with policymaking processes' such that revelation of the factual material would simultaneously expose protected deliberation." City of Virginia Beach, Virginia v. U.S. Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993), citing Envtl. Prot. Agency v. Mink, 410 U.S. 73, 92 (1973).

The additional material redacted from EP126 consists of Ms. Attwell's opinions relating to possible approaches to controlling pornography on the Internet, and Mr. Russell's questions about possible types and names of domains related to .xxx. Each of these opinions is deliberative in that it is part of the broader deliberative process concerning how to respond to an ICANN decision regarding the establishment of a .xxx domain. The redacted material in EP125 and EP126 is predecisional because it precedes the adoption of final positions by the Government

on its role in approving new domains and, it preceded any decision by ICANN.  See Commerce

Supp. Vaughn at p. 6

(6)  Document No. EP102.  This is a two-page e-mail, dated June 20, 2005, which

was sent from Ms. Gunderson to Mr. Ensslin.  Id. at 6.  A portion of Ms. Gunderson's one-line

message which consisted of her opinion regarding outside support for the creation of a .xxx

domain was withheld.  Id.  In its Memorandum, the Court stated that the Department of

Commerce "failed to explain how the redacted portion of this e-mail is a predecisional

component of a deliberative process."  Court's Memorandum at p. 23.

The deliberative process to which the redacted material contributed consist[ed] of

deliberations concerning what position DOC should adopt if a .xxx domain is approved.  In

particular, these redactions involve an assessment of outside support for the creation of a .xxx

domain, and Ms. Gunderson's question concerning this matter.  Ms. Gunderson's opinions were

relevant to this discussion because her job responsibilities related to the approval and

presentation of the policies at issue to the public.  The redacted material in EP102 is

predecisional because it precedes the adoption of final positions by the Government on the

position it should adopt if the .xxx domain is approved.  It also precedes any approval by ICANN

of the .xxx domain.

(7)  Document Nos. EP98 and EP46.  Document No. EP98 is a one-page e-mail

sent to and from Ms. Attwell to Ms. Domenici, dated June 28, 2005.  Id.  Three lines were

redacted which consisted of Ms. Domenici's concern regarding the approval of the .xxx domain.

Id.  Document No. 46 is a two-page e-mail from Ms. Domenici to Department of Commerce

employee Robin Layton, dated July 12, 2005.  In the subject line of the e-mail is "has ICANN

approved .xxx?" <u>Id</u>. Two lines were redacted which consist of Ms. Domenici's questions and opinion regarding the approval of the .xxx domain. <u>Id</u>. at 7.

In its Memorandum, the Court questioned whether the redactions in EP98[18] and EP46 concerned Ms. Domenici's opinions or reflected a particular deliberative process . . . ." <u>See</u> Court's Memorandum at pp. 23-24.

The redacted material in EP98 and EP46 consists of Ms. Domenici's questions and an opinion concerning approval of the .xxx domain. Commerce Supp. Vaughn at pp. 6-7. Her opinions were relevant to the development of final Government positions on how to respond if ICANN approved a .xxx domain because, at the time the e-mail was drafted, she was a White House staff member with responsibilities related to the approval and presentation of these policies to the public. These deliberations between the White House and the Department of Commerce appropriately were withheld to protect debate and consideration of alternatives within the Government, <u>see</u> <u>Jordan</u>, 591 F.2d at 772, and protect the integrity of the decision-making process. <u>See</u> <u>Nat'l Wildlife Fed'n v. U.S. Forest Serv.</u>, 869 F.2d at 1118 ("Exemption 5 was intended to protect not simply the deliberative materials, but also the deliberative process of agencies."). To the extent that factual information is included in the withheld questions and answers in EP98 and EP46, it is protected by the deliberative process privilege because the factual material in the withheld portions is so "'inextricably intertwined with policymaking processes' such that revelation of the factual material would simultaneously expose protected

---

[18] In the Court's Memorandum, the Court refers to "Document EP105" under the heading for "Documents EP98, EP46." Court's Memorandum at p. 23. The Court's description of the document, including its date, appears to indicate, however, that the Court is referring to document EP98, not document EP105.

deliberation." <u>City of Virginia Beach, Virginia</u>, 995 F.2d at 1253.  Again, the redacted material is predecisional because the Government never developed a final opinion on the issue.

(8)  <u>Document No. EP7</u>.  This is a one-page e-mail from Department of Commerce employee James Wasilewski to Ms. Attwell.  Commerce Supp. Vaughn at p. 7.  Six lines were redacted which included Mr. Wasilewski's opinions regarding "the authority of the DOC vis a vis ICANN to approve domain names."  <u>Id</u>.

In its Memorandum, the Court stated that "the words 'draft' and 'opinion', without more, do not fulfill the agency's obligation to demonstrate how the material is covered by the deliberative process privilege.  Court's Memorandum at p. 24.  However, the deliberative process to which the redacted material in EP7 contributed is the Government's reaction to possible ICANN approval of the .xxx domain.  Mr. Wasilewski's opinions on this issue would be relevant to the development of the final Government positions because, at the time the e-mail was drafted, Mr. Wasilewski was a member of NTIA's Office of Congressional Affairs with job responsibilities related to the approval and presentation of such policies to the public.  The redacted material also was predecisional because is was created antecedent to the adoption of a policy by the government.  <u>See</u> Jordan, 591 F.2d at 774.

(9)  <u>Document Nos. EP33, EP34, MPW3 and MPW14</u>.  These e-mails all concern the same matter, the draft WSIS briefing invitation.  Commerce Supp. Vaughn at pp. 7-8; Second Supp. Smith Dec. at ¶¶ 9-14.  EP33 consists of three pages and is dated August 31, 2005.  <u>Id</u>. This e-mail is from Department of Commerce employee Fiona Alexander and was sent to Department of Commerce employees Robin Layton and Tracy Rhoades.  <u>Id</u>.  EP34 consists of two pages, and also is dated August 31, 2005.  This e-mail is from Ms. Alexander to Department

of State employee Sally Shipman.  MPW3 consists of one page.  It is undated and in draft form.

Id.  It contains "computer-generated printed comments in the margin showing editorial changes

that had . . . been made in the letter."  Id.  MPW14 consists of two pages.  It is from Ms.

Alexander to Ms. Layton, and is dated September 1, 2005.  Id. at 8.

In its Memorandum, the Court indicated that it was unclear how the text of an invitation

"makes recommendations or expresses opinions on policy matters."  See Court's Memorandum

at pp. 24-25 citing Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  However, all

four of the foregoing documents were part of the Government's deliberations on how to describe,

in the invitation, the content of a public briefing by Department of State and Department of

Commerce officials on the creation of a new .xxx domain.  In each of these e-mails, the opinions

of Ms. Alexander concerning the "draft briefing invitation and how to characterize matters to be

discussed by [officials of the Department of Commerce and Department of State] at the public

briefing on the creation of a new .xxx domain[]" were redacted.  Id.  All of the draft documents

contributed to the deliberative process of preparing a final invitation to the briefing.  The e-mails

were shared with other Government employees, and reflected "internal Government deliberations

on what policy issues should be addressed in public [regarding the creation of the .xxx domain],

and on how [selected] issues should be presented to the public."  Second Supp. Smith Dec. at ¶

11.  Determining how to present the .xxx issue to the public is also an integral part of the broader

deliberative process of developing a Government response to ICANN's possible

recommendation to create a new .xxx domain.  This information is deliberative because it

concerns internal agency recommendations to decision makers and opinions on policy matters.

See Vaughn v. Rosen, 523 F.2d at 1143-44.

Moreover, the documents are predecisional because none were in final form.  Courts have recognized that "[d]raft documents, by their very nature, are typically predecisional and deliberative."  Exxon Corp. v. DMI of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983).  The documents preceded the Government's final decision on the content of the final invitation and how that invitation would characterize policy matters to be presented by the Government officials.  See Commerce Supp. Vaughn at pp. 7-8.  Withholding these documents protects the public from the confusion that would result from premature disclosure of [information to the public] before the policies affecting it actually had been finalized.  Jordan, 591 F.2d at 772-74.

### D.  The Department of Commerce  - FOIA Request No. 06-127

In its Memorandum, the Court denied the Department of Commerce's Motion to Dismiss plaintiff's claim regarding Freedom of Information Act request, and ordered the agency "to submit a Vaughn index and supporting materials explaining its denial of materials responsive to [this] FOIA request . . . ."  Court's Memorandum at pp. 1, 28.  The Department of Commerce has done so.

### 1-  The Department of Commerce Properly Applied Exemption (b)(5)

Pursuant to Exemption (b)(5), the Department of Commerce has withheld thirty-two documents in response to FOIA Request No. 06-127.  Nineteen documents are withheld in their entirety and thirteen documents are withheld, in part, pursuant to the deliberative process privilege of Exemption (b)(5).  Second Supp. Smith Dec. ¶ 20.  These documents consist of internal Government recommendations and opinions relating to the meeting of ICANN, in Vancouver, Canada, on November 30 through December 4, 2005.  Smith Dec. ¶ 21.  Specifically, the material withheld solely under the deliberative process privilege includes the following

33

categories of documents: (1) draft documents; (2) cable; (3) miscellaneous documents; and (4) e-mail messages.  See Second Supp. Smith Dec. at ¶ 23.

(1) Draft Documents

Sixteen documents are withheld, in their entirety, under this category as follows:

-Seven draft "versions of a document entitled 'USG/DOC Options Regarding GAC Consideration of the Proposed .xxx Domain."  Commerce Supp. Vaughn Index at p. 9.  The documents are numbered 000001 through 000007, and were all drafted in November of 2005.  See id.  These documents were working versions, and a final version was never produced.  Id.; Second Supp. Smith Dec. at ¶ 24.

-Three draft versions of a document entitled "USG Opinions for Including .xxx in the Authoritative Root Zone File."  Id. at 10.  These draft documents are numbered 000008 through 000010.  Id.  They were working versions, and a final version was never produced.  Id.

-Three draft versions of a memorandum from employees Robin Layton and Suzanne Sene to Assistant Secretary Gallagher and employee John Kneuer.  Id.  The subject of this memorandum "pertain[ed] to key issues for ICANN's Governmental Advisory Committee meeting in Vancouver."  Id.  The documents are numbered 000013, 000014 and 000015.  These versions were working documents although a final version was later produced.  Id.; see infra at 31-32.

-Draft versions of three documents numbered 000016, 000018 and 000019.  Two of these documents concerned issues regarding the .xxx domain.  Id. at 11.  The other document was entitled, "The Department of Commerce's Role in Additions to the Internet Domain Name System Authoritative Root Zone File."  Id.  None of the documents were in final form.

34

The decisional processes in question involved the formulation of final versions of documents and the formulation of U.S. Government/Department of Commerce policies concerning positions on various matters surrounding the .xxx issue.  See Second. Supp. Smith Dec. at ¶ 24.  The documents are deliberative in that they reflect employees' opinions and recommendations as to what information should be included in the final version of the documents.  See id.

Because these documents were working documents, they reflect the give-and-take of the consultative process.  See Coastal States, 617 F.2d at 866.  None of them should be released because they satisfy the three policy bases for the deliberative process privilege.  First, the withholding of these documents "protects creative debate and candid considerations of alternatives within an agency, and thereby, improves the quality of agency decisions."  Jordan, 591 F.2d at 772.  "Second, it protects the public from the confusion that would result from premature exposure to discussions before the policies affecting it had actually been settled upon."  Id. at 772-73.  See Second Supp. Smith Dec. at ¶ 24. "[T]hird, it protects the integrity of the decision-making process itself by confirming that 'officials should be judged by what they decided[,] not for matters they considered before making up their minds."  Jordan, 591 F.2d at 772-73.

These documents appropriately were withheld because"[d]raft documents, by their very nature, are typically predecisional and deliberative."  Exxon Corp. v. DMI of Energy, 585 F.Supp. 690, 698 (D.D.C. 1983).  Clearly, these draft documents "reflect [the] agency's preliminary positions or ruminations about a particular policy judgment."  Nat'l Ass'n of Home Builders, 309 F.2d 36, 39 (D.C. Cir. 2002).  If an agency were "required to disclose information

35

or documents . . . before [they had] complete[d] the process of . . . issuing a decision[,]" <u>Jordan</u>, 591 F.2d at 773, the agency would not be able to operate effectively.  To the extent that factual information is included within the draft documents, it is protected because the facts were selectively chosen as part of the decision-making process regarding how the final document should look.  Second Supp. Smith Dec. ¶ 25.  The very act of separating significant facts from insignificant ones constitutes an exercise of judgment by agency personnel.  <u>See</u> <u>Montrose Chem. Corp. v. Train</u>, 491 F.2d at 68.  Such "selective" facts are entitled to the same protection as that afforded to purely deliberative material.  <u>Williams v. U.S. Dep't of Justice</u>, 556 F. Supp at 65. These documents are also predecisional because as drafts, they necessarily predate any final documents that may have ultimately been issued, and do not represent final decisions by Commerce on the matters contained therein.  Second Supp. Smith Dec. ¶ 24.  The fact that final versions of some of the draft documents were never created is irrelevant.  <u>Cf</u>. <u>NLRB</u>, 421 U.S. at 151 n.18 (deliberative process protects deliberations that do not ripen into agency decisions.)

(2) Cable

The Department of Commerce has withheld, in its entirety, a cable entitled, "STOCKHOLM 1961 Routine."  Commerce Supp. Vaughn at p. 11; Second Supp. Smith Dec. at ¶ 27.  This cable, dated November 15, 2005, is seven pages in length and was sent from Department of Commerce headquarters to the United States Embassy in Sweden.  Commerce Supp. Vaughn at p. at 11-12.  This cable contained the  opinions and recommendations of officials of the Department of Commerce concerning the development of a U.S. Government/Department of Commerce "position on . . . European Union (EU) proposals . . . to be discussed at  the WSIS."  <u>Id</u>. at 12.

36

The decisional process involved here is the determination of what Department of Commerce policy or policies should be articulated at the Summit.  Second Supp. Smith Dec. at ¶ 27.  The document is deliberative in that it reflects opinions and recommendations concerning the development of a position of the U.S. Government on various matters.  The release of this information would discourage open and frank discussion within the Department regarding the development of its position.

This document is predecisional because it addressed what policies should be articulated by the government at the upcoming WSIS.  It does not represent the final agency decision on the matter.  Commerce Supp. Vaughn at p. 12; Second Supp. Smith Dec. at ¶ 27.

### (3) Miscellaneous Documents

Document Nos. 000011 and 000012 are duplicate copies of the final version of Document Nos. 000013 through 000015.  Commerce Supp. Vaughn at p. 12. Documents 000011 and 000012 contain the opinions and recommendations of Department of Commerce employees which were sent to a senior Department official.  Id.  They reflect what the employees believed were key issues for the Department at the "GAC meeting in Vancouver."  Id.

The documents were part of the larger decisional process of determining what key issues might arise for the Department of Commerce at the GAC meeting.  The documents predate the meeting for which it was prepared.  The documents are deliberative in that they reflect opinions and recommendations concerning potential key issues and their release would discourage frank discussions within the Department.  Second Supp. Smith Dec. at ¶ 20.  The documents also are predecisional because the information withheld "does not represent the final agency decisions on the matter . . . ."  See Commerce Supp. Vaughn at p. 12.

(4) E-mails

Thirteen documents are withheld in part under this category.  Id. at 13-15.  They consist of internal Government e-mails among Commerce employees.[19]  The withheld portions of these documents consist of:  opinions and recommendations concerning issues that might come up at ICANN; proposed weekly report entries; opinions and recommendations concerning potential questions that might arise with respect to the .xxx application; and various draft memoranda. Second Supp. Smith Dec. at ¶ 33; see Commerce Supp. Vaughn at pp. 13-15.

Document Nos. 000020 and 000021 are duplicate copies of the same e-mail.  See id. at 13.  They were sent from Fiona Alexander to John Kneuer.  Commerce Supp. Vaughn at p. 13. They contain Ms. Alexander's opinions regarding issues that were likely to be raised at ICANN. Id.  Document No. 000022 is an e-mail from Department of Commerce employee Suzanne Sene to employees Ms. Layton and Ms. Rhoades.  Id.  The redacted portion of this e-mail "consists of a proposed response to the request for information to be included in a weekly report."  Id. Document Nos. 000023 and 000024 also concern a weekly report.  Id. at 13-14.  These e-mails are from Ms. Rhodes to Department of Commerce employee Karen Cowles.  Id.  The subject of these e-mails is "NTIA press events week of 11/28."  Id. at 13-14.   The redacted information consists of a "proposed entry for the weekly report."  Id.  Document No. 000025 is an e-mail from Mr. Kneuer to Ms. Attwell, and contains Mr. Kneuer's "opinions and recommendations [on] potential questions that might arise with regard to the .xxx application."  Id. at 14. Document No. 000027 is an e-mail from Ms. Sene to Department of Commerce employee

---

[19]Some of the e-mails include attachments which are also withheld pursuant to the deliberative process privilege.

Ashley Heineman.  The redacted portion of this e-mail "consists of a proposed entry for the weekly report."  Id.

These documents are deliberative because they were prepared by government employees for Commerce decision makers, and they reflected the opinions, advice, recommendations, and proposed responses of those employees.  Second Supp. Smith Dec. at  ¶¶ 27, 30, and 33.  The withholding of these documents "protects    . . . debate and candid consideration of alternatives within [the department], and thereby improves [the department's] decisions."  Jordan, 591 F.2d at 772 ("[A] government agency cannot always operate effectively if it is required to disclose documents which it . . . received or generated before it completes the process of awarding a contract . . . .").

The withholding of these documents is consistent with the privilege's policy basis to protect against public confusion that would result from disclosure of reasons and rationales that were not ultimately the grounds for the agency's action.  See Russell v. U.S. Dep't of Air Force, 682 F2d 1045, 1048 (D.C. Cir. 1982); Coastal States; 617 F.2d at 866; see also Commerce Supp. Vaughn at p. 13.  Here, if the documents were released, reasons and rationales of Commerce staff would be disclosed when they were not necessarily the ultimate grounds for action.  Second Supp. Smith Dec. at ¶¶ 27, 30, and 33.  See Brinton, 636 F.2d at 604 (Exemption 5 protects "communications related to an agency's deliberative process preceding adoption and promulgation of agency policy.").  To the extent that factual information is included within the opinions, advice and recommendations, it is also properly withheld because the facts were part of a larger group of facts and the selection of which facts to emphasize or exclude is a part of the deliberative process.  See Williams v. U.S. Dep't of Justice, 556 F.Supp. 63, 65 (D.D.C. 1982).

Therefore, these facts were inextricably connected to the deliberative material.  See Washington

Post Co. v. Dep't of Defense, No. 84-2403, slip op. At 5 (D.D.C. April 15, 1988).

The documents are also pre-decisional.  The opinions and recommendations reflected in

Document Nos. 000022, 000023, 000024 and 000027 preceded the final agency decision with

respect to the particular matters.  The opinions in Document Nos. 000020 and 000021 were given

in advance of the ICANN meeting and, therefore, preceded any final agency action.  Commerce

Supp. Vaughn at p. 13.  Finally, Document No. 000025 is predecisional because the opinions

given "concern[ed] matters surrounding the .xxx application . . . [and were provided] in advance

of any final decision regarding the [.xxx] application."  Id. at 14.

(5) Attachment

The Department of Commerce properly withheld the various versions of the attachment

to six e-mails which previously were released to plaintiff (Document Nos. 000028 through

000033).  Id. at 14-15.  The attachment consists of a memorandum from Ms. Layton to Mr.

Gallagher about the "GAC Meeting in Vancouver . . . ."  Id.  The memorandum contained

recommendations to a department decision maker on what the final document should contain and

"how to address various issues in [the] final document . . . ."  Id.  This document is deliberative

in that it provided recommendations for use by an agency decision maker.  See Vaughn v. Rosen,

523 F.2d at 1143-44.  The release of the document would "discourage open and frank discussions

within the Department of Commerce about what [information the] final document should contain

. . . ."  Commerce Supp. Vaughn at p. 14.  In addition, this document is predecisional.  It "was a

working document and a final version was never produced."  Id.

40

### 2- The Department of Commerce Properly Applied Exemption (b)(6)

Exemption 6 of the Freedom of Information Act provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'" Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc). Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6 because the primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

The Department of Commerce has invoked Exemption 6 to withhold, in part, information in Document Nos. 000034, 000035 and 000036. See Commerce Supp. Vaughn at p. 15. The withheld information consists of a personal cell phone number and a social security number. Id.; Second Supp. Smith Dec. at ¶ 36. The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press , 489 U.S. 749, 763 (1989). In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information. See Schell v. HHS, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v. HUD, 746 F.2d 1, 3 (D.C. Cir. 1984). Here, there can be no

question that a viable privacy interest is at stake in an individual's cellphone number and social security number.

Once a privacy interest has been found to exist, a determination regarding whether information can be properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Reporters Comm. for Freedom of the Press, 489 U.S. at 776-80.  If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6.  Id.  In Public Citizen Health Research Group v. Dep't of Labor, 591 F.2d 808 (D.C. Cir. 1978), the Court of Appeals stated:

> Since this a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker.  The threat to privacy thus need not be patent or obvious to be relevant.  It need only outweigh the public interest.

591 F.2d at 809.  Here, there can be no dispute that there is a substantial privacy interest on one side of the balancing equation.  See Second Supp. Smith Dec. at ¶ 36.  When this interest is balanced against a nonexistent public interest in a cellphone number and social security number, it is clear that the withholding of this information under Exemption 6 was appropriate.

### 3-  The Department of Commerce Properly Applied Exemption (b)(2)

The Department of Commerce withheld, in part, information in a cable from Department of Commerce Headquarters, pursuant to Exemptions (b)(2) and (b)(6).  5 U.S.C. §552 (b)(2) and (b)(6); see Commerce Supp. Vaughn at p. 16; Second Supp. Smith Dec. at ¶ 38.

Pursuant to Exemption 2, the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine

or trivial that they could not be "subject to … a genuine and significant public interest," and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  Dep't of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. Nat'l Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992); Nat'l Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker, 670 F.2d at 1073-74.  Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."  Schiller, 964 F.2d at 1207.  An agency may withhold information as "high (b)(2)" if it demonstrates that the information relates to internal agency matters and its disclosure would "significantly risk[] circumvention of agency regulations or statutes."  Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp.2d 146, 165 (D.D.C. 2004), quoting, Crooker, 671 F.2d at 1073-74.

The information that was withheld from this cable, Document No. 000037,  included an individual's security clearance level, date of birth and passport number.  Commerce Supp. Vaughn at p. 16.  Release of security clearance levels would inform the public that certain individuals had access to national security information and could subject them to danger.  This is the very type of information Exemption (b)(2) was designed to protect from disclosure.  Judicial Watch, Inc., 337 F. Supp.2d at 165.  Thus, the application of Exemption (b)(2) was proper.  The application of Exemption (b)(6) here also was proper because there can be no question that a viable privacy interest is at stake in an individual's date of birth and passport number.  When this privacy interest is balanced against a nonexistent public interest in this information, it is clear that the withholding of this information was appropriate.  Commerce Supp. Vaughn at p. 16.

### E.  **All Reasonably Segregable Information Was Disclosed**

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u>

<u>sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C.

Cir. 1999).  FOIA requires that, if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); <u>Mead Data Cent., Inc.</u>, 566 F.2d at 260.

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." <u>Id</u>. at 261.

The agency is not, however, required "to provide such a detailed justification" that the exempt

material would effectively be disclosed.  <u>Id</u>.  All that is required is that the government show

"with 'reasonable specificity'" why a document cannot be further segregated.  <u>Armstrong</u>, 97

F.3d at 578-79.  Moreover, the agency is not required to "commit significant time and resources

to the separation of disjointed words, phrases, or even sentences which taken separately or

together have minimal or no information content."  <u>Mead Data Cent. Inc.</u>, 566 F.2d at 261, n.55.

As demonstrated through the declarations and Vaughn indices, the Department of Commerce and

Department of State have processed and released all reasonably segregable information from the

documents provided to plaintiff.  <u>See generally</u> Beaird Dec.; <u>see also</u> Second Supp. Smith Dec. at

¶¶ 15, 16; Grafeld Dec. at ¶ 31; First Smith Dec. at ¶ 41.

### IV.  **CONCLUSION**

The Department of Commerce and Department of State have demonstrated that they

responded properly to plaintiff's FOIA requests.  In accordance with the Court's Memorandum, with respect to Freedom of Information Act Request No. 04-606, the Department of State has demonstrated that the withheld materials satisfy the requirements of Exemptions (b)(4) and (b)(5).  With respect to Freedom of Information Act Request No. 06-068, the Department of Commerce has demonstrated that the withheld materials satisfy the requirements of Exemption (b)(5).  Finally, with respect to Freedom of Information Act Request No. 06-127, the Department of Commerce has  released to plaintiff all reasonably segregable information.  Accordingly, defendants respectfully request that their Second Motion for Summary Judgment be granted.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531


Of Counsel:

Brian Egan
Attorney Adviser
United States Department of State
Office of the Legal Adviser
2201 C Street, N.W.
Washington, D.C.  20520

Susan Coe
Senior Counsel
Office of the General Counsel
United States Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C.  20230

Andrew W. McCready
Senior Counsel
Office of the General Counsel
United States Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C.  20230

46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of May, 2007, the foregoing was served upon counsel for

plaintiff via the Court's ECF e-mail.


　　　　　　　　　　/s/
_____
　　　　　MARIAN L. BORUM
　　　　　Assistant United States Attorney