# ICM Registry, LLC v. U.S. Department of Commerce and U.S. Department of State
## Civil Action No. 06-0949

## Declaration of Richard C. Beaird
### Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ICM REGISTRY, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF STATE ET AL.,<br><br>        Defendants. | Civil Action No.<br>06-0949 (JR) |

DECLARATION OF RICHARD C. BEAIRD

I, Richard C. Beaird, declare and state as follows:

    1.  I am Senior Deputy Coordinator for International Communications and Information Policy at the Department of State and Director of the office of Multilateral Affairs (MA) in the office of Communications and Information Policy (CIP), within the Bureau of Economic, Energy and Business Affairs (EEB) at the Department of State. I came to the State Department in 1988 from the National Telecommunications and Information Administration (NTIA) at the Department of Commerce, where I served as Associate Administrator for International Affairs. Prior to my work

at NTIA, I held positions with the Corporate and Strategic Planning Groups at the American Telephone and Telegraph Company (AT&T). I have been in my current position at the State Department for nineteen years and I hold a Ph.D. in Political Economy from the University of Colorado.

2. I have extensive experience in international telecommunications policy matters in multilateral and bilateral contexts. In my current position, I manage the State Department's activities across a broad range of international telecommunication and policy areas, including matters arising in the International Telecommunication Union (ITU), in the Organization for Economic Cooperation and Development (OECD) and in connection with the U.N. World Summit on the Information Society (WSIS). I have served as Vice-Chairman of U.S. delegations to the 1994, 1998, 2002 and 2006 ITU Plenipotentiary Conferences. I am the U.S. representative on the ITU Council, which is the ITU governing body between Plenipotentiary Conferences, and I was Alternate United States Representative to both the Geneva (2003) and Tunis (2005) phases of the WSIS. I have conducted bilateral negotiations with countries in Europe, Africa and Asia on a variety of telecommunications and information policy subjects.

3. The Department of State has primary responsibility within the United States government for foreign policy related to international telecommunications and information policy under 22 U.S.C. § 2707, and EEB/CIP has primary responsibility within the Department of State for these issues. Although I did not draft the documents discussed in this declaration, they are all from EEB/CIP files and I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the documents described in this declaration as well as my personal knowledge of the subjects covered in those documents.

4. The Court's Opinion and Order dated March 29, 2007 required the Department of State either to provide additional justifications for withholding the 12 documents withheld in whole or in part, or to provide those documents to plaintiff. The Department of State has now released three of the 12 documents to plaintiff -- document numbers E18, E31 and E32. See Exhibit 1 (April 27, 2007 letter to plaintiff). This declaration provides additional explanations for the Department's withholdings in the other nine documents identified by the Court -- documents E54, E59, E3, E36, E68, E69, E70, E2, and E71.

I. Factual background

5.  Since at least 2003, a set of issues referred to collectively under the heading "Internet governance" has been raised with the U.S. government by a variety of entities, including foreign governments, the private sector, civil society and the press. Included among this group of issues is the alleged United States government "control" over the Internet by virtue of the legal relationships that presently exist between the Internet Corporation for Assigned Names and Numbers ("ICANN") and the United States Department of Commerce.

6.  Issues concerning "Internet governance," including the relationship between the United States government and ICANN, were a major topic at the two-phase United Nations-sponsored World Summit on the Information Society (WSIS), which was held in December 2003 in Geneva, Switzerland and in November 2005 in Tunis, Tunisia. As noted above, I was the Alternate United States Representative to both of those meetings. At both phases of the Summit, the United States delegations were headed by Ambassador David Gross, United States Coordinator for International Communications and Information Policy at the Department of State, who is the head of EEB/CIP.

4

7. At the first WSIS Summit in 2003, the participating governments requested the United Nations Secretary General to establish a "Working Group on Internet governance" (WGIG), with participation by governments, the private sector and civil society. See Geneva Declaration of Principles, paragraphs 48-50 (found at http://www.itu.int/wsis/index.html). The United States government did not participate in the work of the WGIG, although it followed its deliberations closely. The WGIG began its work shortly after the first WSIS summit and its report was released in 2005. The WGIG Report criticized the current management of the Internet (including the relationship between the United States Government and ICANN) and proposed four alternative "models" for "Internet governance." In this same time period, the European Union (EU) also raised concerns over the existing United States-ICANN relationship and called for a "new cooperation model" that was widely viewed as a call for the United States government to relinquish its alleged "control" over the Internet.

8. At the second phase of the WSIS in November 2005, the participating governments requested the United Nations Secretary General to convene an "Internet Governance Forum" (IGF), for a multi-stakeholder policy dialogue to discuss

public policy issues related to various aspects of "Internet governance." See Tunis Agenda for the Information Society, paragraphs 67-78 (found at http://www.itu.int/wsis/index.html). Department of State officials participated in the first IGF, which was held in Athens, Greece from October 30-November 2, 2006, and are expected to participate in the second IGF, which is scheduled to be held in Rio de Janeiro, Brazil from November 12-15, 2007.

9. Because of the increased international focus on the range of issues falling under the general heading of "Internet governance," as described above, the Department of State has been involved since at least 2003 in internal United States government policy deliberations as to how the United States government should deal with and respond to these issues and the Department of State has helped devise the United States government's positions on these issues, both domestically and internationally.

## II. Document descriptions

### Document E54

10. <u>Document E54</u> is an unsigned, undated three-page draft memorandum, which (had it been finalized) would have been sent by me to the then-Assistant Secretary for Economic and Business Affairs, entitled "1/19/06 Wall

Street Journal Article on Threats to Internet." Withheld in full, exemption b(5).

11. Document E54 is a draft memorandum that was never finalized by its drafter, a former member of my staff. I never reviewed or approved this memorandum and it was not forwarded to the then-Assistant Secretary for Economic and Business Affairs. The document is only marginally responsive to plaintiff's FOIA request; the only mention of .xxx is the drafter's comment that the .xxx issue was one of several factors that the international community raised with respect to the legitimacy of ICANN.

12. Had Document E54 been finalized, it would have provided frank commentary to the Assistant Secretary on the Wall Street Journal article, which discussed attempts by other countries to create alternatives to the Internet's domain name system (which is managed by ICANN). My office forwards assessments and analyses similar to Document E54 to the Assistant Secretary and other high-level State Department officials on an ongoing basis in order to assist them in developing United States government policy related to Internet governance, as described above.

Document E59

13. Document E59 is an undated two-page paper that discusses a September 6, 2005 meeting between Department of

7

State officials and a Japanese delegation. Withheld in full, exemption (b)(5).

14. Document E59 is a draft, which was most likely authored by a former member of my staff. It was not finished or finalized (there are place-markers within the document to indicate which portions remain to be filled in), and it does not necessarily reflect an accurate portrayal of the meeting. The document is only marginally responsive to plaintiff's FOIA request; the only mention of .xxx is the author's one-sentence insight as to a Japanese official's view of the implications of the .xxx issue in Japan.

15. The meeting described in document E59 was convened to discuss the respective United States and Japanese positions concerning "Internet governance" in advance of the WSIS Tunisia meeting in November 2005. Had document E59 been finalized, it would have provided insights to United States policymakers concerning Japanese views on issues related to Internet governance as the United States prepared to represent the United States at the upcoming WSIS meeting. Document E59 reflects the author's frank impressions of a Japanese official's views concerning Internet governance and the proper role for the United States in relation to that subject.

## Documents E3, E36, E68, E69 and E70

16. <u>Documents E3, E36, E68, E69 and E70</u> (each of which were released in part under Exemption (b)(5)) consist of summaries of and/or commentaries on periodic United States government interagency conference calls, chaired by the White House Office of Science and Technology Policy, to discuss and coordinate United States government policy on a variety of current telecommunications and high technology issues. These conference calls help ensure that the various federal government entities with telecommunications and technology responsibilities coordinate responses and policy on matters of common interest.

17. Attached as Exhibits 2 through 6 are the redacted versions of Documents E3, E36, E68, E69 and E70, which have been released to plaintiffs. These documents were prepared by EEB/CIP staff members who participated in the calls to keep Ambassador Gross, the head of EEB/CIP, informed of the discussions that took place in those calls. They reflect interagency deliberations on a variety of then-current telecommunications issues.

18. The redacted passages in Document E3 (Exhibit 2) reflect deliberations on possible federal government action related to an upcoming ICANN board meeting; internal federal government reactions to a proposed Senate bill on

9

identity theft and other legislation; interagency reactions to the WGIG report of July 2005; and other similar deliberations.

19. The redacted passages in document E36 (Exhibit 3) reflect deliberations on proposed telecommunications legislation; analyses and predictions regarding a vote on .xxx and other matters at an upcoming ICANN board meeting; discussion of FTC investigations into phone record theft; and other similar deliberations.

20. The redacted passages in document E68 (Exhibit 4) reflect deliberations on securing funding to overcome communications-related problems associated with Hurricane Katrina; strategies for seeking support for U.S. government positions at a WSIS preparatory meeting; discussions of proposed telecommunications legislation; and other similar deliberations.

21. The redacted passages in document E69 (Exhibit 5) reflect deliberations on international meetings; digital television legislation; an upcoming FCC meeting and other similar deliberations.

22. The redacted passages in document E70 (Exhibit 6) reflect deliberations on digital television and other telecommunications legislation; reactions to the proposed ICANN/Verisign settlement; discussions regarding holding

another interagency meeting to discuss ICANN and other similar deliberations.

23. The factual portions of documents E3, E36, E68, E69 and E70 have been released to plaintiff.

### Document E2

24. Document E2 is a five-page series of emails, dated July 18, 2005, from telecommunications consultant Marilyn Cade to Ambassador David Gross. Released in part, exemption (b)(4).

25. Attached as Exhibit 7 is a redacted version of Document E2. All of the information from Document E2 that is responsive to plaintiff's request (i.e., all information related to the .xxx domain name issue) has been released. Less than 10 lines of text have been redacted from this document, under exemption b(4). (Pages 3 and 4 of the document were not redacted; they are as they appear in the original.)

26. In Document E2, Ms. Cade, a consultant to the telecommunications industry, provided Ambassador Gross (who is the U.S. Coordinator for International Communications and Information Policy at the State Department and who has headed U.S. delegations to the WSIS, as described above) with her impressions of the July 2005 meeting in Geneva at which the WGIG report was presented to stakeholders. Ms.

11

Cade had no obligation to provide this information to Ambassador Gross. She and other private industry consultants provide information like this to the United States government on a voluntary basis.

27. Ms. Cade indicated in Document E2 that parts of her email were "private" (see Exh. 7 at page 2, fourth paragraph). The Department of State attempted to release the maximum amount of information from this document without violating Ms. Cade's request for confidentiality. Accordingly, the only parts not disclosed were those limited portions which Ms. Cade clearly would not have made public. Further, the Department has confirmed with Ms. Cade that she has not made the information in Document E2 public, and that she opposes making it public in this case.

### Document E71

28. Document E71 is a five-page series of two emails, dated June 8, 2006, from two different ICANN personnel to a recipient not named in the document. Withheld in full, exemption (b)(4).

29. Document E71 consists of the impressions and observations of ICANN personnel from two meetings that these ICANN personnel held with European Union (EU) staff in October 2005 (in the lead-up to the second-phase WSIS meeting in Tunisia) to discuss the EU's proposals for

changing the existing governance structure of the Internet. The document is, at most, marginally relevant to the FOIA request in this lawsuit; it includes only one reference to .xxx issue, which appears in only one line of text.

30. The ICANN personnel who authored Document E71 had no obligation to provide the information in that document to the Department of State and likely provided it to the Department of State because they thought the information in Document E71 would be useful to the United States government as it prepared for the second-phase WSIS meeting in November 2005 in Tunisia.

31. Document E71 consists of information that ICANN would not make public -- candid, real-time assessments from ICANN staff of meetings and private conversations with EU staff on matters relating to "Internet governance" and the proposed EU "new cooperation model" for "Internet governance." The Department has confirmed with officials at ICANN that they have not made the information in Document E71 public, and that they oppose making it public in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __2__ day of May 2007.

_____

Richard C. Beaird