# ICM REGISTRY, LLC

v.

# UNITED STATES DEPARTMENT OF COMMERCE
## and
# UNITED STATES DEPARTMENT OF STATE

## Civil Action No. 06-0949

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ICM REGISTRY, LLC,                )
                                  )
        Plaintiff,                )
                                  )
     v.                           )   Civil Action No
                                  )      06-0949 (JR)
DEPARTMENT OF STATE ET AL.,       )
                                  )
        Defendants.               )
                                  )

### DECLARATION OF MARILYN S. CADE

I, Marilyn S. Cade, declare and state as follows:

1. I am the CEO and managing partner of ICT Strategic Consulting, mCADE llc, a consulting business I created in 2005. Previously, I worked at AT&T for over 20 years, including a number of years in the computer and Internet business areas and, more recently, approximately 13 years in advocacy and policy development. By the time I retired from AT&T, I was responsible for policy and advocacy concerning the Internet and ecommerce.

2. I have extensive experience and expertise in Internet and telecommunications policy areas, and particularly in Internet policy issues, including issues of Internet Governance. I frequently speak by invitation at industry events, and I chair an industry

association committee focused on global policy issues. During the proceedings of the World Summit on the Information Society (WSIS) and the Working Group on Internet Governance (WGIG), I provided leadership to industry efforts to develop consensus positions among global businesses about the role of the Internet Corporation for Assigned Names and Numbers (ICANN), other topics related to private sector leadership in the Internet, and the role of the various United Nations agencies in the management and governing of the Internet.

5. Working with others from industry and the technical community, I played an active role with industry in the organizing of activities that led to the creation of ICANN by the private sector in the late 1990's, including the organizing of many public consultations that involved interactions with government. Issues concerning Internet Governance continue to form part of my core business as a consultant. In addition, since its inception I have been actively involved as a volunteer participant in the ICANN community. From 2002 to 2007 I was an elected representative of the business and commercial user constituency at ICANN's Generic Names Supporting Organization (GNSO), which is responsible for policy on generic top level domains. I am also a member of ICANN's President's Strategy Committee (PSC). After leaving AT&T, my participation in ICANN has been as an expert and voluntary member of the ICANN stakeholder community. This has made my interactions at ICANN especially sensitive since I have endeavored to develop a very high degree of trust among many members of the Internet and ICANN

community, including many governments who attend the [ITU] meetings and the Internet Governance meetings.

4. After leaving AT&T, I have continued to interact with Ambassador Gross and others at the Department of State on a variety of topics related to my ongoing involvement in Internet Governance and ICANN in a variety of settings, and on a variety of topics. For example, I have occasionally convened meetings of industry representatives with various parties in government, including the Department of State, regarding industry's collective views on various Internet and telecommunications topics. I have also attended most of the public consultations held regarding the WGIG and the WSIS. From time to time, I have initiated contact with Ambassador Gross, among others, from a variety of governments, to provide my private view on activities taking place in areas relevant to Internet Governance, including ICANN. None of these interactions were ever invited by the Department of State or Ambassador Gross, or by any member of the U.S. government.

I wrote the emails quoted in the document attached to this litigation. I understand that all but approximately [three lines] of what I wrote in document E2 have already been released to the plaintiff in this case, including all the information that relates to the .xxx domain name. This declaration provides information in support of the Department of State's decision not to release the material redacted from document E2. I make the statements in this declaration based upon my personal knowledge, which is based on a personal review of document E2 (including my knowledge of those sections of document E2 that have been redacted by the Department of

3

State), my personal knowledge of the circumstances under which I wrote and transmitted the contents of that document, and my personal knowledge of the subjects at issue in that document.

6. Pages 1 and 2 of document E2 consist of an email that I wrote and sent to Ambassador Gross on or about July 17, 2005. The first part of the email invited Ambassador Gross to speak at an event that was in support of a training session with developing countries. This was a commercially sponsored program, which I was helping to organize and which concerned policy and regulatory aspects of various international Internet and telecommunications issues. This part of the email has been released in full.

7. After detailed discussion of this invitation, I wrote in my email that the "rest of the email is private," and in the remainder of the email I discussed my own personal activities and my view of recent events involving ICANN, including my impressions of the July 2005 meeting in Geneva at which the Working Group on Internet Governance (WGIG) report was presented to stakeholders.

8. The redacted text is situated in this latter part of the email and conveys particularly private views of mine concerning Internet governance and arising largely from conversations I had had with interested parties. These conversations were confidential and private discussions, and the resulting opinions and impressions I communicated in my email to Ambassador Gross are both sensitive and confidential in nature, having derived from circumstances in which third parties interacted with me in private conversations. The redacted portions of the email contain information that, if disclosed, would be likely to compromise the nature of my

4

relationship with other parties, and may cause irreparable harm to the business reputation of mCADE llc, as well as to my personal and professional relationships with businesses, industry groups, and a number of governments. Releasing this information would have the effect of inhibiting further candid discussions and candid exchanges of views and perspectives and ideas with me, in my business capacity. In addition, I note that the redacted information is irrelevant to the .xxx issue.

9. I provided the redacted information to the United States government on my own initiative without any request, or indication of interest by Ambassador Gross or anyone else in government. I provided this information voluntarily; the United States government did not solicit the information I provided and I had no obligation to provide it. It is certainly information that I would not customarily make available to the public, because such a release could affect the underlying issues and (as discussed above) the interests of my business as a consultant. If the government could not withhold such private commercial information in response to a Freedom of Information Act request, I would not provide it to the government in the first place. Accordingly, as I have previously informed the Department of State, I oppose release of the information redacted from document E2.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 26 day of June 2007.

*Marilyn S. Cade*
Marilyn S. Cade

5