**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ICM REGISTRY, LLC,                          :
                                            :
         Plaintiff,                         :
                                            :
    v.                                      : Civil Action No. 06-0949 (JR)
                                            :
U.S. DEPARTMENT OF COMMERCE, *et* :
*al.*,                                      :
                                            :
         Defendants.                        :

**MEMORANDUM**

At bottom, this extended Freedom of Information Act
(FOIA) dispute is about the scope of what might be called the
"misconduct exception" to FOIA's deliberative process privilege.
FOIA exempts from disclosure those "inter-agency or intra-agency
memorandums or letters which would not be available by law to a
party other than an agency in litigation with the agency." 5
U.S.C. § 552(b)(5). The courts have long recognized that this
provision contemplates a privilege for documents reflecting the
"agency give-and-take" which precedes a final decision on agency
policy. Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975);
see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149-153
(1975). Controlling precedent in this Circuit holds, however,
that the deliberative process privilege "disappears altogether
when there is any reason to believe government misconduct
occurred." In re Sealed Case, 121 F.3d 729, 746 (D.C. Cir.
1997). The question is how far this exception extends – whether
any action beyond the direct regulatory authority of the agency

will suffice, or whether something more nefarious must be afoot
before the deliberative process privilege "disappears."  In this
case, because the privilege broader – and the exception narrower
– than the plaintiff submits, the defendant's motion for summary
judgment will be granted.

## Background

Before me are cross-motions for summary judgment.  The
parties first crossed motions in the Fall of 2006.  I denied the
government's motion to dismiss, but granted its motion for
summary judgment in part – finding that certain documents had
been lawfully withheld but that further explanation would be
required to determine whether the remaining documents should be
released.  See [16].  The government has now filed a supplemental
Vaughn index and moved again for summary judgment.

ICM is a technology company that developed a plan to
add a .xxx domain to the global Internet as a way of promoting
self-regulation by the adult entertainment industry.  It
submitted an application for a new .xxx "sponsored top-level
domain" to the Internet Corporation for Assigned Names and
Numbers.  After an extended back and forth, the ICANN Board
determined that the .xxx application met all eligibility criteria
for sponsored domains and authorized ICANN staff to initiate
contract negotiations with ICM.  Negotiations proceeded, but the
Board eventually rejected the application.  ICM submits that the

United States Government, through the Departments of State and Commerce and Commerce's National Telecommunications and Information Administration, intervened behind the scenes to urge ICANN to reject the application, responding to pressure from well-connected and socially conservative groups such as James Dobson's Focus on the Family.

ICM submitted FOIA requests to State and Commerce in an effort to ascertain their involvement with the rejection of its .xxx application.  The departments released many documents, but withheld or redacted others as within the deliberative process privilege.

### Deliberative Privilege

The public policies that support FOIA's deliberative process privilege have been succinctly summarized by the Court of Appeals:

> First, [the privilege] protects creative debate and candid consideration of alternatives within an agency and, thereby, improves the quality of agency policy decisions.  Second, it protects the public from the confusion that would result from premature exposure to discussion occurring before the policies affecting it had actually been settled upon.  And third, it protects the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds.

Jordan v. Dept. of Justice, 591 F.2d 753, 772-773 (D.C. Cir.
1978) (en banc), overruled on other grounds by Crooker v. ATF,
670 F.2d 1051 (D.C. Cir. 1981).

        Two conditions must be met before the privilege will be
applied.  First, the disclosed information must actually have
been predecisional in the sense of being prior in time to the
final decision on agency policy.  Second, the ideas or opinions
expressed must actually have been deliberative in the sense of
contributing to the "give and take of the consultative process."
Coastal States Gas Corp. v. Dept. of Energy, 617 f2d 854, 866
(D.C. Cir. 1980); see also Vaughn, 523 F.2d at 1144.  Thus, the
privilege protects "recommendations, draft documents, proposals,
suggestions, and other subjective documents which reflect the
personal opinions of the writer rather than the policy of the
agency," Coastal States, 617 F.2d at 866, so long as those
recommendations, et cetera, actually predate the relevant agency
decision.

        The so-called misconduct exception to the deliberative
process privilege is a less well-settled doctrine.  Circuit
courts have acknowledged, in dicta, that the deliberative process
privilege does not apply where there is reason to suspect
government misconduct, but this exception to the (b)(5) exemption
has never been applied in a holding at the Circuit level, nor has
the scope of "misconduct" been clearly defined.  See, e.g, Enviro

Tech Int'l, Inc. v. EPA, 371 F.3d 370 (7th Cir. 2004); Subpoena
Duces Tecum Served on the Office of the Comptroller of the
Currency, 145 F.3d 1422 (D.C. Cir. 1998); In re Sealed Case, 121
F.3d 729, 746 (D.C. Cir. 1997).  In this court, the deliberative
process privilege has been disregarded in circumstances of
extreme government wrongdoing.  See, e.g., Alexander v. FBI, 186
F.R.D. 154, 164 (D.D.C. 1999) (no privilege where documents
related to misuse of a government personnel file to discredit a
witness in an ongoing investigation of Clinton administration);
Tax Reform Research Group v. Internal Revenue Service, 419 F.
Supp. 415, 426 (D.D.C. 1976) (no privilege where documents
concerned recommendation to use the powers of the IRS in a
discriminatory fashion against "enemies" of the Nixon
administration).

        ICM submits here that the misconduct exception prevents
the government from using the deliberative process privilege
unless it can point to a legitimate policy decision that it could
have reached with respect to the topic at issue – in this case,
the approval of a .xxx domain.  Because the role of the United
States with respect to the addition of new domains to the
Internet is ministerial – NTIA merely follows the recommendations
of ICANN – ICM believes that the government can point to no
legitimate policy that it could have been deliberating with
respect to .xxx, and so the deliberative process privilege should

not apply.[1]  The government notes that doctrine does not require
it to relate a document to a particular decision that was being
deliberated, see, e.g., NLRB v. Sears, Roebuck & Co., 421 U.S.
132, 151 n.18 (1975); Balderrama v. Dep't of Homeland Security,
2006 U.S. Dist. LEXIS 19421 at *22 (D.D.C. 2006), and it argues
that because Internet policy is within the general area of
responsibility of both NTIA and the State Department, it was
proper for those departments to deliberate possible public
responses if ICANN approved the .xxx domain.

　　　　Whatever the boundaries of the misconduct exception,
they cannot be as expansive as ICM declares them to be.  The
exception runs counter to the purposes that animate the
deliberative process privilege, and it thus makes sense to apply
it narrowly.  If every hint of marginal misconduct sufficed to
erase the privilege, the exception would swallow the rule.  In
the rare cases that have actually applied the exception, the
"policy discussions" sought to be protected with the deliberative
process privilege were so out of bounds that merely discussing
them was evidence of a serious breach of the responsibilities of

---

[1]    ICM does not take the position that the government was
not deliberating any policy with respect to .xxx or ICANN
approval – it plainly was, which is why ICM is interested in
these documents in the first place.  ICM's position is, instead,
that the government could not have been deliberating any
legitimate policies with respect to .xxx or ICANN approval
because the government's involvement is wholly ministerial.
Thus, in ICM's view, any deliberations regarding such policy are
ultra vires and fall under the misconduct exception.

representative government.  The very discussion, in other words, was an act of government misconduct, and the deliberative process privilege disappeared.

Our Court of Appeals has referred to the kind of conduct giving rise to the exception as "nefarious."  See Subpoena Duces Tecum, 145 F.3d at 1425 n.2; see also Enviro Tech, 371 F.3d 376 (also invoking a "nefarious" standard).  In dicta, the Seventh Circuit has suggested a parallel situation in which the misconduct exception might apply. In Enviro Tech, it stated:

> [W]e may assume for the sake of argument that the scope of an agency's authority places some limits on the deliberative process privilege, and that internal communications about something not even arguably within the agency's domain might not be privileged. Perhaps if EPA staff members were to begin mapping out policy on something like school prayer, for example, then the privilege would not apply.

371 F.3d at 376.  Perhaps an agency commits misconduct when it wanders so far from its policy bailiwick because considering such irrelevancies is a serious waste of resources.  This version of the misconduct exception conjures fanciful hypotheticals where agencies work on matters wholly outside their purview, however, and has never been applied.  Indeed, in Enviro Tech itself, the Seventh Circuit refused to apply the exception to a case where the EPA was debating a worker exposure standard for a harmful chemical that was properly a matter for OSHA.  See 371 F.3d at 376-377.

Thus, the misconduct exception will not serve the purpose for which plaintiffs hope to deploy it.  The defendant agencies do not need to show that they had direct regulatory authority over the outcome of ICANN decisions or that they had any control over the addition of .xxx to the root registry. Absent some showing that <u>consideration</u> of domain name and Internet policy is outside these departments' and agencies' domains – and none has been made – or that they opposed .xxx for nefarious purposes, their action is not misconduct within the meaning of the exception to the deliberative process privilege. If the government "leaned on" ICANN or any other decision-maker that it did not directly control, it policy choice to do so is discoverable under FOIA.  That choice (if it was made) was not "political abuse," however, and so the deliberations that underlay it are properly exempt from disclosure.

### Document Analysis for Exemption (b)(5)

In general, the government's current submission shows that the agency was actively considering various responses should ICANN approve the .xxx domain – though a final policy decision was never reached because ICANN did not approve the application. The government need not reveal what those debated options were.

<u>State Department Documents</u>

**Document E54:** This is a draft memorandum containing a staffer's reactions to a <u>Wall Street Journal</u> article that

discussed attempts by other countries to create alternatives to the Internet's domain name system as currently administered by ICANN and the U.S. government.  The draft was not finalized, but it was intended to comment frankly on the article and to contribute to an ongoing debate within the State Department as to how the United States should respond to international pressure to change the current system of Internet governance.  See [19, Exhibit A] at ¶¶ 10-12.  A draft document prepared in the "ongoing process of examining agency policies," is deliberative and is predecisional even if its ideas, recommendations, or suggestions "do not ripen into agency decisions."  See Sears, 421 U.S. at 151 n.18.  Document E54 was thus properly withheld under exemption (b)(5).

**Document E59:** This is a draft memorandum reflecting the author's impressions of a meeting between State Department officials and a Japanese delegation.  See [19, Exhibit A] at ¶¶ 14-15.  Reactions to the views of foreign emissaries make a plain contribution to an agency's ongoing deliberations on foreign policy.  Drafts containing personal opinions on such matters are properly protected by the deliberative process privilege.  See, e.g., Coastal States, 617 F.2d at 866.

**Documents E3, E36, E68, E69, E70:** These are summaries of or commentaries on interagency conference calls.  Each reflects deliberations about matters of telecommunications policy

including proposed legislation, reactions to third party reports, strategies for rousing support for U.S. positions at an ICANN meeting, strategies for dealing with communication problems created by Hurricane Katrina, and the like.  See [19, Exhibit A] at ¶¶ 16-23.  In contrast to its previous submissions, the government's current affidavit enumerates what policy matters were discussed and notes that the documents reflect deliberations about those policy issues.  See id.  Interagency conference calls on policy matters are quintessentially deliberative, and where documents reflect the contents of those calls, they are properly withheld under exemption (b)(5).

Commerce Department Documents

**Document EP59:** This is an e-mail containing a Commerce employee's opinions regarding the effects of a .xxx domain on children's access to pornography.  See [19, Exhibit C] at 1. Such opinions would contribute to an agency decision on whether to support creation of the .xxx domain, and would also contribute to an agency decision on how to respond if ICANN were to approve it.  Although ICM argues that "no conceivable response would have resulted in policy-making" because all U.S. government responses to ICANN approval would be either "ministerial or ultra vires activity," see [21] at 20, this argument is too strong.  One possible response, inter alia, would be to publicly endorse ICANN's decision; another, to publicly excoriate it.  Developing

- 10 -

a "position" on actions that another decision-maker might take is workaday agency business, not nefarious government activity, and opinions meant to contribute towards that deliberative process are covered by the (b)(5) privilege.

**Document EP60:** This contains largely the same redaction as the previous document. The only addition is a further redaction reflecting Ms. Atwell's progress in creating a draft paper related to the .xxx domain, and her question to Mr. Gallagher regarding the timing of his review. See [19, Exhibit C] at 1-2. Any discussion of the ideas in Ms. Atwell's draft paper, or its role in Commerce's decision-making, is part of the agency give and take by which final agency policies are reached. This redaction is therefore within the (b)(5) exemption.

**Document EP61:** This reflects the opinions of Commerce employees on the effects of .xxx on children's access to pornography and on what websites would be in a .xxx domain. See [19, Exhibit C] at 2. These opinions would have contributed to the creation of a final position on .xxx, and are therefore covered by the privilege.

**Documents EP62-EP69:** These are all part of an e-mail chain and all contain the same redaction. The redaction contains the opinions of Ms. Atwell as to Commerce's authority to make changes to the authoritative root zone file. See [19, Exhibit C]

at 2-3.  ICM's position is that Commerce did not have any authority with respect to the authoritative root zone file, other than to ministerially approve of ICANN's recommendations. Whether that is true or not, a consideration of Commerce's authority with respect to the authoritative root zone file was hardly misconduct, and could have contributed to a final agency response should ICANN have approved the .xxx domain.  See Enviro Tech, 371 F.3d at 376 ("Along the way to formulating a policy that is within its power to implement, an agency might legitimately identify and consider a host of alternatives, some within the agency's power to effectuate and some without.  The agency might, indeed, consider the boundaries of its own jurisdiction.").  The agency might even have considered or debated a unilateral breech of its agreement to approve of any changes recommended by ICANN.  FOIA entitles a plaintiff to information if the agency adopted that policy, not if it only thought about it.

        Documents EP90-92: These are part of an e-mail chain and the redactions relate to the opinions of Commerce employees on how to present Commerce's role in making changes to the authoritative root zone file to the public.  See [19, Exhibit C] at 3-5.  ICM argues that these are not deliberations on substantive agency policy, and that there is "no precedent to support the notion that [deliberations] on how to massage the

agency's public image with the White House's conservative base falls within Exemption 5." [21] at 24. Yet deliberations regarding public relations policy are deliberations about policy, even if they involve "massaging" the agency's public image. See, e.g., Sierra Club v. Dept. of Interior, 384 F. Supp. 2d 1, 22 (D.D.C. 2004) ("DOI asserts that this document 'shows the development of the Department's policy regarding how to present its positions on ANWR,' and, as a draft, is predecisional to the Department's final positions. The Court agrees."); Judicial Watch, Inc. v. Reno, 2001 WL 1902811 at *3 (D.D.C. 2001) (deliberations regarding "how to handle press inquiries and other public relations issues" are covered by exemption (b)(5)). The opinions of Commerce employees on public relations policy contribute to a deliberative decision regarding such policy, and are thus protected by the (b)(5) exemption.

Documents EP116-117: These are e-mails and contain the same four-line redaction. The redacted material contains Ms. Atwell's answers to questions regarding "legal consequences of taking a certain course of action with respect to .xxx." [19, Exhibit C] at 5. Consideration of the legality of proposed agency action plainly contributes to a debate on such action, and so Ms. Atwell's opinions on this matter are protected by the (b)(5) exemption.

**Documents EP125-126**: These are e-mails and the redactions include the opinions of Ms. Atwell on the roles of ICANN and Commerce in the approval of the .xxx domain, her opinions regarding control of children's access to pornography, and Mr. Russell's questions regarding .xxx approval and his questions regarding other domain names that might be related to .xxx.  See [19, Exhibit C] at 5-6.  In contrast to its prior Vaughn index, the government's current submission makes clear that the redactions are opinions that reflect the deliberative process of forming a response should ICANN approve .xxx, not factual questions and answers.  The material is properly within the (b)(5) exemption.

**Document EP102**: This is an e-mail from which a one line question has been redacted.  The question concerns "outside support" for the creation of the .xxx domain.  See [19, Exhibit C] at 6.  That question reflects government deliberations on a final position regarding the approval (or appropriate response to the possible approval) of the .xxx domain.  The (b)(5) exemption protects it from discovery.

**Documents EP46, EP98**: These are e-mails from which questions and opinions of White House employee Helen Domenici have been redacted.  These include the status of .xxx approval, as well as opinions regarding approval.  See [19, Exhibit C] at 6-7.  Ms. Domenici had "responsibilities related to approval and

presentation of these policies to the public." Her questions and opinions would reflect discussions among White House and Commerce staff-members regarding an appropriate policy and public relations response should ICANN approve the .xxx domain. <u>Id.</u> The documents are therefore protected.

**Document EP7:** This is an e-mail with the subject line "draft," and the redacted material includes "opinions relating to the authority of the DOC vis a vis ICANN to approve domain names." <u>See</u> [19, Exhibit C] at 7. Consideration of the agency's authority would be an important part of deliberations regarding proper final policy choices, and thus these opinions are protected by the (b)(5) exemption for the same reasons that documents EP116-177 and EP62-69 are protected.

**Documents EP33, EP34, MPW14, MPW3:** These are a draft of an invitation to a public briefing on Internet governance, as well as e-mails regarding the content of that invitation. The documents all reflect internal deliberations on how best to present the issues to be discussed to the public. <u>See</u> [19, Exhibit C] at 7-8; [19] at 32. As illustrated by the discussion regarding documents EP90-EP92 above, such matters of public-relations policy are within the privilege. A draft of a public relations document and e-mails regarding its content are clearly predecisional and deliberative.

- 15 -

**Documents 000001-000007:** These are all drafts of a document entitled "USG/DOC Options Regarding GAC Consideration of the Proposed .xxx Domain."  A final version of the document was never produced.  <u>See</u> [19, Exhibit C] at 9.  This draft contains "options" regarding final agency policy, and thus makes a plain contribution to agency deliberations on final policy.  The discussion of policy options for choices yet to be made is protected – final policy choices are not.  The <u>Vaughn</u> index makes clear that this draft contained options not finally passed upon, and as such, it is not discoverable under FOIA.

**Documents 000008-000010:** These are all drafts of a document entitled "USG Opinions for Including .xxx in the Authoritative Root Zone file."  [19, Exhibit C] at 10.  The withheld material reflects agency opinions on final policy and "does not represent final agency decisions on the matters contained therein."  <u>See</u> <u>id.</u>  These drafts are privileged because they express opinions contributing to a discussion about whether to endorse .xxx, and how to respond if ICANN approved the new domain.

**Document 000016:** This is a draft entitled "USG Procedural Options Regarding the Creation of .xxx" and it too "does not represent final agency decisions on the matters contained therein."  <u>See</u> [19, Exhibit C] at 11.  Consideration of

various procedural options is quintessentially predecisional and deliberative and is protected by the privilege.

**Document 000018:** This document is a draft entitled ".xxx Top Level Domain (TLD) Q & A (August 12, 2005)" and does not represent a final agency decision as to the appropriate content for the document. See [19, Exhibit C] at 11. Draft recommendations as to the appropriate answers to questions about the .xxx domain are not final agency policy, and instead contribute to a healthy deliberation about what the agency's position on various matters related to .xxx should be. They are protected by the privilege.

**Document 000019:** This is a draft entitled "The Department of Commerce's Role in Additions to the Internet Domain Name System Authoritative Root Zone File." Again, it does not contain final agency decisions on this point. See [19, Exhibit C] at 11. As discussed above, the agency could have legitimately deliberated over its proper role in the process of adding new domains to the authoritative root zone file. So long as this document does not represent the agency's final position as to its authority in this regard – and the government avers that it does not – it is protected as a deliberation over final agency policy.

**Documents 000020-000021:** These are e-mail messages containing an identical redaction. The redacted material reflects the opinions of a Commerce employee on issues likely to

be raised at a future ICANN meeting.  <u>See</u> [19, Exhibit C] at 13.
Opinions about matters likely to be raised at a meeting make
plain contributions to preparations for that meeting, and to
ongoing agency deliberations regarding ICANN matters.

　　　　**Document 000025:** This is an e-mail with the subject
line "Q & A for ICANN/GAC" with five paragraphs redacted.  The
redacted material reflects the author's opinions and
recommendations regarding questions that might arise over the
.xxx application.  <u>See</u> [19, Exhibit C] at 14.  Opinions regarding
the appropriate response to hypothetical questions are clearly
deliberative and predecisional, and thus protected.

　　　　**Documents 000028-000033:** These are e-mails from which
the attachments have been withheld.  The attachments are various
drafts of a document entitled "GAC meeting in Vancouver – Key
Issues."  <u>See</u> [19, Exhibit C] at 14-15.  A draft document
commenting on the key issues to be addressed at an upcoming
meeting is deliberative and predecisional, because it informs the
positions to be taken at that meeting.

### Confidential Commercial Information

　　　　Two additional documents were withheld by the State
Department as confidential commercial information within the
exemption provided by 5 U.S.C. § 552(b)(4).  I determined in a
prior memorandum that the information in these documents was
"commercial," <u>see</u> [16] at 16-18, but required the government to

introduce further evidence as to whether the information was "submitted voluntarily" and if so, whether it is the type of information that is not customarily publicly disclosed by the submitter.  See Critical Mass. Energy Project v. NRC, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).

        The government's current submission as to documents E2 and E71 establishes that the information was passed to the government voluntarily.  Under the test in Critical Mass, such information is protected if not customarily publicly disclosed by the submitter, id., and the government's current affidavit fully establishes this fact with respect to both documents as well. See [19, Exhibit A] at 11-13.  The withheld information is thus protected by the (b)(4) exemption, and properly excluded from FOIA discovery.

        An appropriate order accompanies this memorandum.


                        JAMES ROBERTSON
                  United States District Judge